# EXHIBIT 3

IN THE CIRCUIT COURT
OF THE EIGHTH JUDICIAL CIRCUIT
IN AND FOR ALACHUA COUNTY, FLORIDA

*Exactech Master Case*

Master Case No. 2022 CA 002670
*Applies to All Cases*

## STIPULATED ORDER RE: DISCOVERY OF ELECTRONICALLY STORED INFORMATION

**1.   PURPOSE**

This Stipulated Order ("Order") will govern the discovery and use of electronically stored information ("ESI") in this case as a supplement to the Florida Rules of Civil Procedure and any other applicable orders and rules. The parties each reserve the right to seek exceptions, amendments, or modifications to this Order from the Court for good cause shown.

**2.   COOPERATION**

The parties are aware of the importance the Court places on cooperation and commit to cooperate in good faith throughout the matter.

**3.   E-DISCOVERY LIAISONS**

Each party will identify an E-discovery Liaison who will be primarily responsible for meeting and conferring on issues concerning ESI. Each E-discovery Liaison will:

  I.   be knowledgeable about the party's e-discovery efforts;

  II.  be, or have reasonable access to those who are familiar with the party's electronic systems and capabilities in order to explain those systems and answer relevant questions; and

  III. be, or have reasonable access to those who are knowledgeable about the technical aspects of e-discovery, including electronic document storage, organization, and

format issues, and relevant information retrieval technology, including search methodology.

Each party will notify the other of any changes of its designated E-discovery Liaison.

**4.     MEET-AND-CONFER**

The parties have and will continue to meet-and-confer to discuss and attempt to reach an agreement on the appropriate scope and limitations of ESI to be produced. The parties will discuss possible options for ensuring an efficient discovery process, such as the possible use of search terms or technology assisted review, the possible use of testing and sampling, relevant date ranges, possible custodians that may have potentially discoverable information, any obstacles to accessing and producing ESI, information demonstrative of adequate quality controls, and the timing of productions.

**5.     ESI SEARCH**

Electronic discovery shall be produced to the requesting party in a commercially reasonable manner or in the manner kept in the Producing Party's ordinary course of business, whichever is less burdensome and economical for the Producing Party.  The parties will discuss and attempt to reach an agreement on search methodologies with the goal of limiting the scope of review for production, minimizing the need for motion practice, and facilitating production in accordance with the deadlines set by the Court or agreed upon by the parties. No responsive document shall be intentionally withheld from production, or, if claimed to be privileged, not logged as such, solely on the basis that it was not within an agreed-upon custodial or non-custodial data source, or did not contain an agreed-upon search term, or was otherwise not identified as responsive by TAR or any other identification process hereunder.

I.     <u>Search Terms</u>:

2

1. If search terms are used by a producing party to identify responsive documents and information, the producing party will provide a list of proposed search terms to the requesting party. Within 21 days after receiving the producing party's terms, the requesting party shall identify in writing any challenges to that list, identifying specific search terms it believes should be searched or not searched, or request a meet and confer for same. If the requesting party does not provide such notice within the time specified, no additional search terms will be required for the referenced data sets. The parties will meet and confer regarding additional terms proposed by the requesting party. No search term will be added to the list if it generates an unreasonable number of nonresponsive documents or creates an undue burden. If the producing party claims that a term generates an unreasonable amount of hits or an undue burden, it will share the specific metrics behind their claim, for example sharing the number of documents that hit on a term and the number of hits with families. In addition, the producing party agrees to tell the requesting party if any of their suggested hits generate less than 100 hits per term exclusive of family members. The parties agree to meet and confer regarding the application of additional terms if the Receiving Party timely identifies such terms and can show that the previous terms were inadequate.

2. If a party disputes a specific term or terms as being overly broad, the producing party may choose to review a statistically valid sample (using a

    benchmark of 98% confidence level with an error rate of 2%) of documents from that term, or terms, to determine if the term is accurately returning documents. The producing party agrees to share the results of that review and any responsive documents located during such sample review, which results may be used by the parties to modify the specific term in dispute.

3. If the parties are unable to resolve disputes over search terms through the meet and confer process, the parties will submit the dispute to the Court in the form of a joint discovery letter.

4. The producing party agrees to quality check the data that does not hit on any terms (the Null Set). If responsive documents are found during the Null Set review, the producing party agrees to produce the responsive documents. The parties agree to continue to meet and confer as to the parameters of such a null set review.

  II. <u>Technology Assisted Review (TAR)</u>: Prior to using predictive coding/technology-assisted-review solely for the purpose of identifying or culling the documents to be reviewed or produced, the producing party will notify the opposing party with ample time to meet and confer in good faith regarding a mutually agreeable protocol for the use of such technologies or alternatives. This discussion will include:

1. The vendor being used to manage the application of the technology, if any;

2. The method(s) used to derive the seed or exemplar set, if a seed set is being used. The requesting party also reserves the right to submit

4

      exemplar documents that the producing party will use as part of their exemplar or training set. The producing party reserves their right to object to Plaintiff exemplars;

3. The method for validating the computer decisions;

4. The party employing TAR agrees to a goal of 85% stabilization rate for its process, meaning that of a hundred random documents sampled from the reviewable set, 85% would be accurately coded by the computer. If the 85% stabilization rate is not reasonably achievable, the parties agree to meet and confer to adjust this number. The Parties agree that if they cannot come to agreement on any of the terms above, they will seek court guidance.

**6. READILY SEGREGABLE DOCUMENTS**

ESI or categories of ESI that are easily identifiable and segregable shall be collected without the use of search terms or other agreed-upon advanced search methodology (e.g., analytics, predictive coding, technology assisted review). This shall include responsive ESI that is kept together in the normal course of business (e.g., regulatory files, design history files, etc.) The producing party will indicate which categories of ESI will be produced with and without the use of search terms or other advanced search methodology.

**7. ESI PRODUCTION**

a. The parties agree that attending to issues relating to form of production at the outset of discovery facilitates the efficient and cost-effective conduct of discovery. Appendix A sets forth technical specifications that the parties propose to govern the form of production of ESI in this litigation, absent other agreement by the parties. Among other things, the proposed

technical specifications provide that a party need not produce ESI in more than one form in cases wherein this ESI protocol is entered, unless otherwise agreed to in limited circumstances (as contemplated in the technical specifications). The parties agree to produce in native format all Excel, Access, csv or other data files and audio/video files and to produce all other file types in TIFF as set forth in Appendix A. For any PowerPoint files, Defendants must identify, at the time of production, any files containing animations. Plaintiffs may then request such PowerPoint files in native format. For good cause, a requesting party may request the production of specifically identified documents in a format other than as specified in this Protocol. The parties shall thereafter meet and confer, and the producing party shall not unreasonably deny such requests. The parties agree to use their best efforts not to degrade the searchability of documents as part of the document production process.

>   i. A producing party may deduplicate a production vertically (*i.e.*, within individual custodians) or horizontally (*i.e.*, across different custodians).
>
>   ii. A producing party may also choose to produce only the most inclusive e-mail threads and eliminate non-inclusive threads where the non-inclusive thread is completely encompassed in the inclusive thread. If a thread has unique documents attached, that thread will be considered non-inclusive.
>
>   > i. With any such produced e-mails, the metadata for each suppressed e-mail is to be produced in "other" fields, as detailed in the Appendix A.

b. The parties recognize that certain, limited ESI may not be amenable to the proposed technical specifications and/or may not be producible in a reasonable TIFF format. The parties will meet and confer in good faith to reach agreement regarding such documents and the appropriate form of production, and will seek Court intervention if necessary.

6

**8. REDACTIONS**

    a.    Privacy and Security of Information

        i.    Documents and ESI produced in this case may include Personally Identifiable Information ("PII") of its/their customers and/or employees, and protected health information, or other information subject to federal, state, or foreign Data Protection Laws. At the Producing Party's discretion, such PII may be redacted from produced documents or produced in unredacted form subject to a claim of confidentiality.

            (1)    Any PII redaction based on federal, state, or foreign Data Protection Laws requires the concurrent production of metadata identifying the basis for each redaction or a redaction log provided within 30 days of the production. For example, if a foreign Data Protection Law or any other privacy obligation is alleged to apply, the specific law or obligation must be cited.

        ii.    Irrelevant attachments to relevant documents may be withheld from production. Irrelevant information contained within relevant documents may be withheld from production if such information is both irrelevant and confidential business information which, if known by the Receiving Party, would be damaging to the Producing Party's business interests. This subparagraph does not provide the Producing Party with blanket authority to redact all irrelevant information as that would create inefficiencies, increase litigation costs, and could render documents illegible or unusable.

7

iii. All such redactions shall be clearly marked on the document or slipsheet, ensuring the reason for the redaction is made clear (e.g., "non-responsive material redacted" or "PII redacted").

**IT IS SO STIPULATED, THROUGH COUNSEL OF RECORD.**

**Dated:** September 13, 2022

**By:** /s/ Ilyas Sayeg
*Counsel for Plaintiffs*

**By:** /s/ **Jodi Munn Schebel**
*Counsel for Defendants*

**PURSUANT TO STIPULATION AND FOR GOOD CAUSE SHOWN, IT IS SO ORDERED**.

DONE AND ORDERED in Chambers, Gainesville, Alachua County, Florida on this Tuesday, September 20, 2022.

01-2022-CA-002670 09/20/2022 08:05:17 AM

_____
Donna M. Keim, Circuit Judge
01-2022-CA-002670 09/20/2022 08:05:17 AM

## CERTIFICATE OF SERVICE

I DO HEREBY CERTIFY that a true and correct copy of the above has been e-filed through the e-portal and a copy of same has been provided to the below parties on this Tuesday, September 20, 2022.

Ilayas Sayeg
ISayeg@mctlaw.com
mpowell@mctlaw.com
lwilliams@mctlaw.com

Bradley Shapiro
aimee.adams@bowmanandbrooke.com
christina.berrios@bowmanandbrooke.com
bradley.shapiro@bowmanandbrooke.com
estela.martinez@bowmanandbrooke.com

Kirk Carter
kirk.carter@bowmanandbrooke.com
sheryl.bjork@bowmanandbrooke.com
gina.sinn@bowmanandbrooke.com
lauren.russ@bowmanandbrooke.com

Joseph Saunders
joe@saunderslawyers.com
carol@saunderslawyers.com

Michael Sechrest
emesin@fbswlaw.com

Steve Rothenburg
steve@rothenburglaw.com

8

sechrest@fbswlaw.com
ltraino@fbswlaw.com

Joseph Johnson
johnsonteam@searcylaw.com
jjohnson@searcylaw.com
kaguilera@searcylaw.com
eacosta@martinbaughman.com
moden@martinbaughman.com

George T Williamson
gwilliamson@farr.com
jbradsher@farr.com
ctout@farr.com
kbuchanan@hmglawfirm.com
nsmith@hmglawfirm.com

Andrew G Moore
andrewmoore@forthepeople.com
dmanos@forthepeople.com

Aimee Adams
aimee.adams@bowmanandbrooke.com

dawn@rothenburglaw.com

Scott Orsini
gwilliamson@farr.com
jbradsher@farr.com
ctout@farr.com

Calvin Warriner
ccw@searcylaw.com
clb@searcylaw.com
 ccwteam@searcylaw.com

Michael Goetz
mgoetz@forthepeople.com

Jodi Munn Schebel
jodi.schebel@bowmanandbrooke.com

01-2022-CA-002670 09/20/2022 08:09:28 AM

*[signature]*

Theresa Hall, Judicial Assistant
01-2022-CA-002670 09/20/2022 08:09:28 AM

9

**Appendix A**

**Technical Specifications for Production**

To the extent it is possible, each production of data should be consistent with earlier productions meaning that the format of images, the bates label format and metadata field order should remain the same.

PRODUCTION OF DOCUMENTS ORIGINATING AS PAPER

Paper documents should be produced in such a fashion as to identify the location where the documents were located or stored and, where applicable, the natural person in whose possession they were found.

For documents that have originated in paper format that the producing party choses to produce in electronic form after scanning, the following specifications should be used for their production. The producing party may also choose to produce paper in paper format. The production of paper in paper format should mimic the physical form that the documents were kept in the normal course of business, including physical bindings, post it notes or other physical specifics.

- Images should be produced as black and white single page TIFF group IV format imaged at 300dpi.

- Each filename must be unique and match the Bates number of the page. The filename should not contain any blank spaces and should be zero padded (for example ABC00000001).

- If documents are stored in a file folder, binder or other container, the cover, spine and\or label should be scanned as the first page of the document.

- If the document has post-it notes or other removable markings or tags, the document should be scanned first with the post-it note or marking in place and then a second time with the post-it note or marking removed.

- Media may be delivered on CDs, DVDs, or External USB hard drives. Each media volume should have its own unique name and a consistent naming convention (for example ZZZ001 or SMITH001).

- Each delivery should be accompanied by an image cross reference file that contains document breaks.

- A delimited text file that contains available fielded data should also be included and at a minimum include Beginning Bates Number, Ending Bates Number, Custodian and Number of Pages. The delimiters for that file should be:

10

>Field Separator, ASCII character 020: "¶"
>Quote Character, ASCII character 254 "þ"
>Multi-Entry Delimiter, ASCII character 059: ";"

- To the extent that documents have been run through an Optical Character Recognition (OCR) Software in the course of reviewing the documents for production, full text should also be delivered for each document. Text should be delivered on a document level in an appropriately formatted text file (.txt) that is named to match the first bates number of the document.

- A text cross reference load file should also be included with the production delivery that lists the beginning bates number of the document and the relative path to the text file for that document on the production media.

PRODUCTION OF EMAIL AND ELECTRONIC DOCUMENTS

Electronic documents should be produced in such fashion as to identify the location (i.e., the network file folder, hard drive, back-up tape or other location) where the documents are stored and, where applicable, the natural person in whose possession they were found (or on whose hardware device they reside or are stored). If the storage location was a file share or work group folder, that should be specified as well.

The Parties will make reasonable efforts to ensure that all Documents and ESI they produce are legible. If a copy is not legible and it is possible to produce a legible copy, such a legible copy will be produced (subject to relevant general and specific objections) within five (5) business days of a request from a receiving Party, or as mutually agreed upon by the Parties. But if no legible copy can be made, then the original will be made available for inspection and copying within ten (10) business days of a request from a receiving Party, or as mutually agreed upon by the Parties.

- Attachments, enclosures, and/or exhibits to any parent documents should also be produced and proximately linked to the respective parent documents containing the attachments, enclosures, and/or exhibits.

- If an attached file is connected or references another file with a hyperlink as opposed to embedded to the original file, the referenced file should be retrieved and included as if the file were directly attached.  Links should not be broken, and their referenced files should not be separated for production purposes.  To the extent the linked files are part of a standard signature block or other non-substantive, pre-formatted email template, like a company's website, the links do not need to be retrieved or produced.

- Each file should be named with a unique Bates Number and the files confidentiality designation.  The filename should not contain any blank spaces and should be zero padded (for example ABC00000001-CONFIDENTIAL).

11

- If the parties have the ability to redact files natively, then they should do so. If the parties do not have the ability to redact natively, the files should be converted to either TIFF or PDF format, and redacted before production.

- Provide a delimited text file (using the delimiters detailed above) containing the following extracted metadata fields where they exist in the file being produced:

    Beginning Production Number
    Ending Production Number
    Beginning Attachment Range
    Ending Attachment Range
    Custodian
    Other Custodian (custodians who had duplicate copies of the document but were deduplicated using horizontal deduplication)
    Other File Path (location path of deduplicated versions of the produced file)
    Confidentiality Designation
    Original Location Path
    Email Folder Path
    Document Type
    Redacted (the reason a document contains a redaction, i.e., Privileged, HIPAA, PII)
    File Name
    File Size
    Page Count
    Title (from the document properties)
    Hash Value
    Date Last Modified
    Date Created
    Date Last Accessed
    Date Sent
    Other Date Sent (Date Sent information from suppressed e-mail chains)
    Date Received
    Other Date Received (Date Received information from suppressed e-mail chains)
    Author (either email or lose file)
    Other From (Author information from suppressed e-mail chains)
    Recipients
    Other Recipients (Recipient information from suppressed e-mail chains)
    Copies
    Other Copies (Copies information from suppressed e-mail chains)
    Blind Copies
    Other Blind Copies (Blind Copies information from suppressed e-mail chains)
    Email Subject
    Email Importance
    Path to Native File
    Production Volume

- Extracted full text (not OCR text) should also be delivered for each electronic document. The extracted full text should be delivered on a document level according to the specifications above similar to paper documents.

- Foreign language text files and metadata should be delivered with the correct encoding to enable the preservation of the documents' original language.

PRODUCTION OF DATABASES AND OTHER STRUCTURED DATA

Where possible, the producing party will produce structured data in Excel format to the extent such format will not decrease the usability of the data. To the extent that the conversion will degrade the usability, or should the limits of Excel cause the data to be truncated, the parties agree to meet and confer regarding an alternative production format.

The production of structured data should also identify the source of the data, and should be formatted so that each column of data has a column header. Explanations of headers should be provided upon request.

13