# Exhibit 5

1

```
 1              UNITED STATES DISTRICT COURT
                EASTERN DISTRICT OF NEW YORK
 2     - - - - - - - - - - - - - - - X
                                     :
 3                                   :   22-MD-03044(NGG)
          In Re: Exactech           :
 4        Polyethylene Orthopedic    :
          Products Liability         :
 5        Litigation                 :   United States Courthouse
                                     :   Brooklyn, New York
 6                                   :
                                     :
 7                                   :   May 19, 2023
                                     :   11:00 a.m.
 8                                   :
                                     :
 9     - - - - - - - - - - - - - - - X

10          TRANSCRIPT OF CIVIL CAUSE FOR STATUS CONFERENCE
            BEFORE THE HONORABLE NICHOLAS G. GARAUFIS
11               UNITED STATES DISTRICT JUDGE

12
                    A P P E A R A N C E S:
13
     For the Plaintiffs:      POPE MCGLAMRY, P.C.
14                            3391 Peachtree Road, NE, Suite 300
                              Atlanta, Georgia 30326
15
                              BY:  N. KIRKLAND POPE, ESQ.
16
                              WEITZ & LUXENBERG, P.C.
17                            700 Broadway
                              New York, New York 10003
18
                              BY:  ELLEN RELKIN, ESQ.
19
                              ROBINS, KAPLAN LLP
20                            1325 Avenue of the Americas
                              Suite 2601
21                            New York, New York 10019

22                            BY:  RAYNA KESSLER, ESQ.

23                            BURG SIMPSON
                              201 E Fifth Street, Suite 1340
24                            Cincinnati, Ohio 45202

25                            BY:  DAVID C. HARMAN, ESQ.
```

*Proceedings*                                                          2

1                    A P P E A R A N C E S:  (Continued.)

2   For the Plaintiffs:      LIEFF CABRASER
                             HEIMANN & BERNSTEIN, LLP
3                            One Nashville Place
                             150 Fourth Avenue, North, Suite 1650
4                            Nashville, TN 37219

5                            BY:  MARK P. CHALOS, ESQ.

6   For the Defendant:       KIRKLAND & ELLIS
                             601 Lexington Avenue
7                            New York, NY 10022

8                            BY:  JAY P. LEFKOWITZ, ESQ.
                                  CHRISTA C. COTTRELL, ESQ.
9
                             FAEGRE DRINKER BIDDLE & REATH LLP
10                           25 Oak Ridge Avenue
                             Summit, NJ 07901
11
                             BY:  SUSAN M. SHARKO, ESQ.
12
    Court Reporter:          DENISE PARISI, RPR, CRR
13                           Official Court Reporter
                             Telephone: (718) 613-2605
14                           E-mail:  DeniseParisi72@gmail.com

15  Proceedings recorded by computerized stenography.  Transcript
    produced by Computer-aided Transcription.
16

17                      *    *    *    *    *

18

19            (In open court.)

20            THE COURTROOM DEPUTY:  This is an MDL matter.

21            Beginning with the plaintiffs, please state your

22   appearances for the record.

23            MS. RELKIN:  Good morning, Your Honor.

24            Ellen Relkin from Weitz & Luxenberg for the

25   plaintiffs.

*Proceedings*                                                                  3

1             THE COURT:  Good morning.  Nice to see you again.

2             MR. POPE:  Good morning, Your Honor.

3             Kirk Pope for plaintiffs.

4             THE COURT:  Good morning.

5             MS. KESSLER:  Good morning, Your Honor.

6             Rayna Kessler on behalf of plaintiffs MDL liaison

7    counsel.

8             THE COURT:  Good morning.

9             MR. HARMAN:  Good morning, Your Honor.

10            David Harman with Burg Simpson on behalf of

11   plaintiffs.

12            THE COURT:  Good morning.

13            Is that it for the plaintiffs?

14            MR. CHALOS:  Mark Chalos, Your Honor, for plaintiffs

15   as well.

16            THE COURT:  All right.  Good morning, sir.

17            For the defendants, TPG, et cetera?

18            I think you are on mute, Mr. Lefkowitz.  There you

19   go.

20            MR. LEFKOWITZ:  My apologies.

21            Jay Lefkowitz on behalf of the TPG defendants.

22            THE COURT:  Good morning.

23            MS. COTTRELL:  Good morning, Your Honor.

24            Christa Cottrell also on behalf of the TPG

25   defendants.

*Proceedings*                                                          4

1          THE COURT:  Good morning.

2          MS. COTTRELL:  Good morning.

3          MS. SHARKO:  And Susan Sharko for the Exactech

4   defendants.

5          THE COURT:  Good morning.

6          All right, is that everyone?  Okay.

7          I just had a question for Mr. Lefkowitz as we start.

8          In your letter requesting this pre-motion

9   conference, you indicate that you're located in New York City

10  and that there are other lawyers who are at 300 North LaSalle,

11  but it doesn't say where 300 North LaSalle is.

12         MR. LEFKOWITZ:  Sure.  Thank you, Your Honor.  It's

13  our Chicago office.  We have offices in New York and in

14  Chicago.

15         THE COURT:  I see.

16         MR. LEFKOWITZ:  My partner, Ms. Cottrell is, I

17  think, dialing in from Chicago, and I'm here in Manhattan.

18         THE COURT:  Yes, she's on the video.  I was just

19  curious because if -- for no other reason that I actually read

20  these letters.

21         MR. LEFKOWITZ:  Thank you, Your Honor.

22         THE COURT:  All right.

23         Well, then, let's move ahead.

24         This is a request to make a motion to dismiss

25  certain defendants from the case, so let me hear from you,

*Proceedings*                                                            5

1   Mr. Lefkowitz about this, why we should do this even though

2   we're in the middle -- or beginning of discovery, and whether

3   discovery is really needed before this motion should be heard.

4          MR. LEFKOWITZ:  Sure.  Thank you, Your Honor.  And I

5   will be very brief here.

6          The Delaware court, the Chancery Court, in a

7   decision last year by Chancellor McCormick made very clear --

8   and the case is *Verdantus Advisors vs. Parker*

9   *Infrastructure* -- and I will just give the cite -- I think

10  we're on the record, so I will give you the cite -- 2020

11  WestLaw 5951368.  That was a case where the chancellor made

12  very clear that there is an enormously high bar to pleading

13  successfully the factors necessary for veil piercing.  And, in

14  fact, the courts have a five-factor test, and it's not

15  sufficient to just plead one, or even two of the factors.  In

16  that case, in fact, there was an allegation that the company

17  was, in fact, inadequately capitalized.  There was an

18  allegation that there were funds that were siphoned out of the

19  company and that the company observed few, if any, of the

20  corporate formalities.  Those are three of the factors.  And

21  even in that case, where all three of those factors were, in

22  fact, pled, the Court said it's not sufficient because I don't

23  see allegations that the company is functioning simply as a

24  facade for the dominant shareholder; that this is essentially

25  a vehicle for fraud.

1          And in our case, Your Honor, we don't even have

2    allegations that -- in any of those five factors.  What we do

3    have are allegations of TPG having control over Exactech, or

4    over an agreement, but of course, as the Delaware Chancery

5    Court said in *Skouras vs. Admiralty*, which is at 386 A.2d 674

6    at page 681, quote:  Even total ownership of one corporation

7    by another is not sufficient to warrant the disregard of a

8    separate corporate entity.

9          And, likewise, we have allegations that there's

10   direct involvement in the operation and management of Exactech

11   and that's in the complaint, to be sure, but just recently --

12   well, actually, not quite so recently, but in the Eastern

13   District in *Ross Products Division vs. Saper* at 2007 WestLaw

14   1288125, dismissed a veil piercing claim even though the

15   plaintiff's allegation was that the defendant was directly

16   involved in the operation and management of the -- another

17   corporate entity.

18         And, finally, we also have allegations in the

19   complaint that the officers are identical, the directors are

20   identical.  Actually, they don't allege that all of them, just

21   that there's overlapping.  But, in fact, the cases made

22   clear -- and this is a Delaware Chancery decision from 2020,

23   *Nieves vs. Insight Building*, 2020 WestLaw 4463425, that even

24   if all of the officers and directors were identical, that

25   would not be enough to state a claim.

*Proceedings*                                                           7

1        The fact is, Your Honor, that the kinds of

2   allegations that you need to get past a motion to dismiss --

3   and I will give just one example where the Delaware Chancery

4   Court did deny a motion to dismiss -- that is *Manichaean Cap*

5   *vs. Exela Techs Incorporated* --

6        THE COURT:  Can you spell that for the court

7   reporter?

8        MR. LEFKOWITZ:  Yes.  M-A-N-I-C-H-A-E-A-N,

9   *Manichaean Cap vs. Exela*, E-X-E-L-A, *Techs*, T-E-C-H-S,

10  Incorporated, and that's at 251 A.3d 694, and the relevant

11  page in that case is 708.  That's a case where the Delaware

12  Chancery Court did, in fact, deny a motion to dismiss, because

13  it found that the plaintiff had pled a combination of

14  insolvency intentional under capitalization and a lack of

15  corporate formalities coupled with valid claims of fraud and

16  injustice.

17       We just don't have any of those types of allegations

18  here.  What we have is allegations that Exactech, which is a

19  fully functioning company that was purchased with $700 million

20  of infused capital, is simply a subsidiary, or an affiliate of

21  a larger private equity firm, and that has simply not been and

22  never been sufficient for veil piercing.

23       So we would like the opportunity, Your Honor, to

24  file an appropriate motion.  We think the motion obviously has

25  good grounds and is well-founded, and we would like the

*Proceedings*                                                                                  8

1    opportunity to file the motion.

2              Now, if I may, I can go into your second part of the

3    question, because it relates to this issue of, is it premature

4    or not, or should we have discovery, and I'm happy to just

5    flow into that and just take a minute or two.

6              THE COURT:  Take a minute or two and then I will

7    turn to the plaintiff.

8              MR. LEFKOWITZ:  Sure.

9              The courts both in the Eastern and the Southern

10   District of New York looking at these issues have made clear

11   that it's perfectly appropriate to consider a motion to

12   dismiss veil piercing just based on the pleadings itself.

13             Now, often what happens is the defendant is moving

14   both to dismiss on corporate veil, but also to dismiss on lack

15   of personal jurisdiction.  And in that situation, when courts

16   take those motions together, they often say, well, maybe we

17   should have some jurisdictional discovery because we always

18   put a thumb on the scale in favor of jurisdictional discovery

19   if there's a good faith basis to tee that up.  Just to be

20   clear, we are not seeking to get out of the case on

21   jurisdictional grounds; we're not saying we're not subject to

22   the jurisdiction here.

23             And, in fact, earlier this week, literally just a

24   couple days ago, Magistrate Judge Aaron, in the Southern

25   District of New York, denied a veil piercing request for veil

1   piercing discovery precisely because the plaintiff did not --

2   and I quote -- "have a viable well piercing theory that was

3   pled."  That's Wilson & Wilson 2023 WestLaw 3449163.

4            And I just want to make one final point.

5            We hear it a lot in the opposition letter to a case

6   called *Blockchain*, and that was a case where what was argued

7   was, well, the Court allowed discovery to proceed based on

8   alter ego.  But if you read the case carefully, what you

9   realize is, alter ego is being used there in two different

10  context:  One, for purposes of the personal jurisdiction

11  motion to dismiss, and, in fact, the judge did in that case

12  allow some jurisdictional discovery to take place.  But at the

13  same time, critically, even in that case, the *Blockchain* case,

14  which plaintiffs rely on, where the Court allowed limited

15  pre-motion to dismiss discovery, it was limited to the

16  jurisdictional issues and it excluded the discovery tailored

17  only to the veil piercing claim, which is what we have here.

18  You can't quite find it just by reading the opinion, but if

19  you actually look at the docket, which I did, and you pull up

20  the document requests and then you compare what the judge did

21  in that case in terms of which discovery he allowed and which

22  discovery he disallowed, it's absolutely clear that he denied

23  request for information about shared services, about transfer

24  of assets, about finance of the subsidiary, selection of the

25  subsidiaries' executives, and involvement of the parent in the

1    subsidiary operations generally.

2              So I would submit, Your Honor, that even the

3    *Blockchain* case, which the plaintiffs are relying on here,

4    actually supports our request entirely.

5              And so, Your Honor, the last thing I would just say

6    from the equities perspective is, Exactech has received

7    discovery requests, and of course discovery is proceeding

8    against Exactech, they're not going to be asking for a stay of

9    discovery pending our motion to dismiss, and I have matched up

10   several of the RFPs that are being submitted to us, and they

11   are entirely duplicative -- at least six of the RFPs to us --

12   things like all the due diligence documents related to the

13   merger, all the documents related to the purchase price, all

14   the minutes between Exactech and TPG entities, all the

15   partnership agreements of all the TPG entities.  Those are all

16   part of the Exactech discovery that Exactech is going to be

17   producing in this case.

18             So I would submit, Your Honor, that given that they

19   have not pled any of the five specific elements necessary for

20   veil piercing, that both -- that we be permitted to file a

21   motion to dismiss, which we are happy to do expeditiously, and

22   that discovery against TPG be stayed until that motion is

23   decided.

24             THE COURT:  All right.

25             Thank you.

1          Ms. Relkin or Mr. Pope?  Who would like to speak?

2          MR. CHALOS:  Me, Your Honor.  Mark Chalos, if that's

3   okay.

4          THE COURT:  Mr. Chalos, sorry about that.

5          MR. CHALOS:  Certainly.

6          So I guess it's a good thing we are not in the

7   Delaware Chancery Court here.  The cases that Mr. Lefkowitz

8   mentioned I don't think really have much relevance here, at

9   least with respect to the pleading itself.  We are under

10  Rule 8; a short and plain statement of the claim showing the

11  pleader's entitled to relief is what we need to do at this

12  point, but let me back up and try to address the bigger

13  picture issue.

14         Does it make sense to do this motion now?  And we've

15  had some discussions with the defendant, and -- defendants,

16  and they say this is a Rule 12(b)(6) motion, it is going to

17  solely test the sufficiency of our allegations here, and if

18  that's true, then that's one set of -- that's one set of

19  circumstances.

20         But these issues -- these alter egos issues, and we

21  also have a successor liability claim here -- they are

22  inevitably very fact-intensive, and where we find ourselves at

23  this point is we are limited in what we have access to.  We

24  have access to public records, because at one time there were

25  a couple entities that were publicly traded here, so we have

*Proceedings*                                                    12

1    some of their publicly filed documents, but really the core of

2    what we need to establish our claim at trial is information

3    they have but are refusing to give to us.

4            So what we're left with is seeing the smoke here

5    without having access to the fire.

6            Judge, your camera went off.

7            Does that mean he's gone?

8            THE COURT:  He's here.

9            MR. CHALOS:  Okay.  I just wanted to make sure you

10   didn't get disconnected.

11           THE COURT:  No.  I heard every word.  Go ahead.

12           MR. CHALOS:  So to the extent their motion is, well,

13   they didn't plead this element, they didn't plead that

14   element, you know, that's one set of circumstances -- what

15   they're going to say is, well, you don't have enough facts

16   here; you haven't pleaded a fulsome set of facts that will get

17   you to a jury necessarily -- then we think that would be an

18   unfair motion at this point.  That's a motion that should be

19   made after we've gotten the discovery that we're going to need

20   to prove our claims.

21           We, in our view, have met the Rule 8 standard.

22   We've pleaded adequately causes of action against these

23   various alterego and successor liability defendants, and if

24   that's the motion they're going to file, then so be it.  If

25   the motion they're going to file is fact-intensive, we may be

1  right back here.

2          Now, let me say a word about discovery.

3          We've asked for discovery, we've asked for

4  documents, and they've refused to give us the documents.  They

5  just filed, I think yesterday afternoon, a motion to stay

6  discovery, I'm sure in anticipation of the discussion today.

7          We have -- it is true we've asked for this

8  information from Exactech as well.  Exactech filed an answer

9  to our master complaint and it's docket, I think 204, and with

10  respect to a lot of these core issues -- Exactech doesn't deny

11  the substance of most of our allegations regarding TPG and the

12  interrelationship and the control and the flow of power and

13  money through the organizations, but they do say they don't

14  have information about a lot of the core issues that go to

15  both the veil piercing and the successor liability, and they

16  respond in a pleading where they list our allegations and they

17  list their answers, so Your Honor can see that they say they

18  don't have the information.

19          So I'm not expecting that we're going to get a lot

20  of the core information from Exactech.  I think much of this,

21  if not all of it, is in the possession of the TPG entities in

22  terms of the flow of money, the flow of control, the

23  overlapping in the relationship of the entities.  So to the

24  extent that we can get some of this information from Exactech,

25  that might be true, but I think for most of it, that's

 1    probably not going to prove to be the case.

 2            So to sum it up, Your Honor, if what they're filing

 3    is a true 12(b)(6) motion -- we're not considering materials

 4    outside the pleadings; they're not attaching declarations;

 5    they're not contesting our facts; they're not saying, well,

 6    you need to consider these other facts, Judge; and if you look

 7    at all these other facts outside of the pleadings, then you

 8    will see that their pleadings are insufficient -- if it's not

 9    that motion, if it's just a straight 12(b)(6) on the

10    allegations, then I think we can deal with that.

11            Let me make one last point about the Delaware law.

12    That touches on a bigger issue, which is they are presenting

13    this as a clean shot where they can come to Your Honor and

14    make a motion and then all the TPG entities, again, that are

15    out of this, I think it's going to be a little more

16    complicated than that.

17            Among other things the question of choice of law is

18    going to be complicated.  I think it's in this Circuit based

19    on the GM ignition switch case and some cases cited within

20    that, including the *Anschutz Corp. vs. Merrill Lynch* case from

21    2012, Your Honor may have Oto engage in a fairly complex

22    choice of law analysis here because we do have plaintiffs who

23    have filed and transfer reports all around the country.  So it

24    may not be that Delaware laws, they I guess seem to think,

25    would apply necessarily to all of the claims.  So it may be a

1  little more complicated than, here's our motion, here's what

2  the Delaware Chancery Court says, we're out of here and we're

3  done.  I don't think it will be that simple.  So that may be a

4  battle for another day, but I wanted to point that out to Your

5  Honor.

6          THE COURT:  All right.

7          MR. LEFKOWITZ:  Your Honor, may I have just about a

8  minute?

9          THE COURT:  Yes, sure, a minute.

10         MR. LEFKOWITZ:  Sure.  Perfect.

11         First of all, on the Delaware point, I just want to

12  make clear that Florida and Delaware law are going to apply --

13  most states, frankly, other than about eight states in the

14  country -- apply the Delaware standard, which would be

15  appropriate since Delaware and Florida are the same standard

16  as well.  The other eight states in the country simply apply

17  blackletter hornbook law on veil piercing.  I don't think

18  there's going to be an issue there.

19         Number two, they say they don't have access to

20  records.  I actually think they've gotten quite a bit already

21  in the Florida litigation because they pled in this complaint

22  that there were seven different drafts of the merger

23  agreement.  That's certainly not publicly available.

24         But the most important thing I just want to close

25  with, Your Honor, is the Southern District of New York in a

*Proceedings*                                                      16

1    case called *Sabol vs. Bayer Healthcare* -- this is at 439 F.

2    Supp 3d, 131 at page 146 -- granted a motion to dismiss with

3    respect to veil piercing because it said that, quote:  An

4    allegation relying on a veil piercing theory is -- sorry, the

5    plaintiffs have said just what we've heard here, that an

6    allegation relying on veil piercing unsuited for resolution on

7    a pre-answer pre-discovery motion to dismiss, and the Southern

8    District court granted the motion and said:  Why?  Because the

9    defendant -- the allegations about the defendant's parent

10   company were simply conclusory allegations.  That is exactly

11   what we have here.

12            Even listening to counsel right now, he doesn't make

13   allegations that hit any of the five factors at all.  Simply

14   stated, there's no coherent theory of veil piercing here.

15   It's purely conclusory, and since we don't have well-pled

16   facts, at the very least, Your Honor, we would like the

17   opportunity, prior to the initiation of any discovery against

18   TPG, recognizing that a lot of the documents they're asking

19   for from TPG are actually going to come directly from

20   Exactech, but we'd like the opportunity briefly to brief and

21   then argue, or if the Court wants, to have it submitted on

22   paper.

23            THE COURT:  How much time would you need to make

24   this motion of yours?

25            MR. LEFKOWITZ:  Christa, I believe you've worked out

*Proceedings*                                                      17

1    a schedule with the plaintiff, correct?

2              MS. COTTRELL:  Yes.

3              Good morning, Your Honor.  Christa Cottrell.  I

4    believe we agreed on wit plaintiffs 21 days for opening

5    brief --

6              THE COURT:  Hold on.  I need dates, so just hold one

7    minute.  That's the 9th of June.

8              MS. COTTRELL:  I have the 9th of June, too.

9              THE COURT:  Next.

10             MS. COTTRELL:  And then this one is going to be

11   tricky for us to calculate, but 35 days is what we talked

12   about plaintiffs for their response.

13             THE COURT:  9th of June to the -- let's make it the

14   14th of July.  Let's round it off.

15             MS. COTTRELL:  Okay.  That sounds good here.

16             And we talked about 14 days for our reply.

17             THE COURT:  That's the 28th of July.

18             MS. COTTRELL:  Yes.

19             THE COURT:  And if we need oral argument, we'll

20   advise you.

21             MR. LEFKOWITZ:  Thank you, Your Honor.

22             THE COURT:  All right.  I'm going to refer your

23   request for the stay to Judge Henry so you can argue that

24   before her because I -- we've -- I think it's best since she's

25   overseeing discovery for the Court that you make that

18

1    application to her.

2            Anything further for today?

3            MR. LEFKOWITZ:  None from us, Your Honor.

4            THE COURT:  Anything else, Mr. Chalos?

5            MR. CHALOS:  No, Your Honor, not unless Mr. Pope or

6    Ms. Relkin have anything else.

7            THE COURT:  Yes, anything else from you, Ms. Relkin?

8            MS. RELKIN:  No, Your Honor.

9            THE COURT:  Mr. Pope?

10           MR. POPE:  No, Your Honor.

11           THE COURT:  It was good to see you all down in

12   Gainesville.  This was my first visit to Gainesville.  This

13   case has afforded me the opportunity to travel.  If you have

14   anything that I need to do in Paris or London, do let me know.

15           MR. LEFKOWITZ:  We'll do our best.  We appreciate

16   it.

17           THE COURT:  All right.  Have a good day.  Thank you.

18           (Matter concluded.)

19

20

21

22

23

24

25

Denise Paris, RPR, CRR
I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.
/s/ Denise Paris, June 1, 2023