# Exhibit B

```
 1    UNITED STATES DISTRICT COURT
      EASTERN DISTRICT OF NEW YORK
 2
      --------------------------------x
 3                                        22-MD-3044(NGG)(MMH)
      IN RE:
 4                                        United States Courthouse
      EXACTECH POLYETHYLENE               Brooklyn, New York
 5    ORTHOPEDIC PRODUCTS LIABILITY
      LITIGATION
 6                                        November 16, 2022
                                          2:30 p.m.
 7    --------------------------------x

 8          TRANSCRIPT OF CIVIL CAUSE FOR STATUS CONFERENCE
             BEFORE THE HONORABLE NICHOLAS G. GARAUFIS
 9              UNITED STATES SENIOR DISTRICT JUDGE

10    APPEARANCES

11    Attorney for Plaintiffs: WEITZ & LUXENBERG, P.C.
                               700 Broadway
12                             New York, New York 10003
                               BY:  ELLEN RELKIN, ESQ.
13
                               POPE MCGLAMRY, P.C.
14                             3391 Peachtree Road NE, Suite 300
                               Atlanta, Georgia 30326
15                             BY:  N. KIRKLAND POPE, ESQ.

16                             WEISMAN KENNEDY & BERRIS
                               2900 Detroit Avenue, 2nd Floor
17                             Cleveland, Ohio 44113
                               BY:  ROBERT ERIC KENNEDY, ESQ.
18
                               ROBINS, KAPLAN LLP
19                             1325 Avenue of the Americas,
                               Suite 2601
20                             New York, New York 10019
                               BY:  RAYNA KESSLER, ESQ.
21
      Interested Party:        RIVERO MESTRE LLP
22                             2525 Ponce De Leon Boulevard,
                               Suite 1000
23                             Miami, Florida 33134
                               BY:  JORGE ALEJANDRO MESTRE, ESQ.
24

25    (Continued)
```

2

```
 1    APPEARANCES CONT'D

 2

 3    Attorney for Defendant:   BOWMAN AND BROOKE LLP
                                41000 Woodward Avenue,
 4                              Suite 200 East
                                Bloomfield Hills, Michigan 48304
 5                              BY:  JODI MUNN SCHEBEL, ESQ.
                                     SHERYL A. BJORK, ESQ.
 6                                   KIM M. SCHMID, ESQ.

 7                              FAEGRE DRINKER BIDDLE & REATH LLP,
                                320 South Canal Street, Suite 3300
 8                              Chicago, Illinois 60606
                                BY:  MICHAEL J. KANUTE, ESQ.
 9                                   SEAN J. POWELL, ESQ.
                                     SUSAN M. SHARKO, ESQ.
10

11

12    Court Reporter:          AVERY N. ARMSTRONG, RPR
                                Phone:  718-613-2419
13                              Fax:    718-613-2639
                                Email:  Aarm.edny@gmail.com
14

15    Proceedings recorded by mechanical stenography.  Transcript
      produced by computer-aided transcription.
16

17

18

19

20

21

22

23

24

25
```

PROCEEDING                                    3

1          (In open court.)

2          THE COURTROOM DEPUTY:  Okay, everyone.  This is a

3    status conference in the MDL matter.

4          Beginning with the plaintiffs, please state your

5    appearances for the record.

6          MR. POPE:  Kirk Pope, Pope McGlamry, out of

7    Atlanta, Georgia.

8          Good afternoon, Your Honor.

9          MS. RELKIN:  Good afternoon, Your Honor.

10         Ellen Relkin from Weitz and Luxenberg of New York.

11         JUDGE GARAUFIS:  Joseph H. Saunders, Saunders and

12   Walker, Saint Petersburg, Florida.

13         MR. KENNEDY:  Eric Kennedy, Weisman and Kennedy,

14   Cleveland, Ohio.

15         JUDGE GARAUFIS:  Welcome.

16         MS. KESSLER:  Good afternoon.

17         Rayna Kessler from Robins, Kaplan in New York.

18         MR. MESTRE:  Good morning, Your Honor.

19         Jorge Mestre from Rivero Mestre in Miami.  We filed

20   a third-party claim last night, I just wanted to make an

21   appearance.

22         JUDGE GARAUFIS:  Oh.  Welcome.

23         Yes, for the defense.

24         MR. KANUTE:  Good afternoon Your Honor.

25         Mike Kanute from Faegre Drinker for the defendants,

PROCEEDING                                    4

1    Exactech.

2              MS. SCHEBEL:  Jodi Schebel from Bowman and Brooke in

3    Detroit, also on behalf of the defendants.

4              MS. SHARKO:  Susan Sharko, also from Faegre Drinker

5    for the defendants.

6              MR. BENNETT:  Steve Bennett, Faegre Drinker for the

7    defendants.

8              MR. POWELL:  Sean Powell, Faegre Drinker, for the

9    defendants.

10             MS. SCHMID:  Good afternoon, Your Honor.

11             Kim Schmid from Bowman and Brooke in Minneapolis.

12             MS. BJORK:  And Sheryl Bjork, Bowman and Brooke

13   Minneapolis.

14             JUDGE GARAUFIS:  Please be seated, everyone, and

15   welcome.

16             First of all, I'd like to introduce Magistrate Judge

17   Marcia Henry.  Judge Henry will be primarily handling the

18   discovery issues in this case.  In the Eastern District of New

19   York, the district judges and the magistrate judges work

20   together on cases.  And while I'll be handling some of the

21   organizational issues and the motion practice, and if there

22   are Bellwether trials, the Bellwether trials.  The discovery

23   is expertly handled by the magistrate judges of our district

24   for most of the district judges.  There are some district

25   judges who do everything themselves, but they few and far

PROCEEDING                                    5

1    between.  And I think it's important to just mention that it's

2    a much more efficient system for us, and it will probably be a

3    much more efficient system for all of you, as well.  So I

4    welcome Judge Henry to the case, and I know that you will be

5    helpful to her, and she's going to go over a lot of the

6    discovery issues with you today.  And I think we ought to all

7    begin.

8          I was called last month by the chair of the MDL

9    panel.  I completed an MDL, an antitrust MDL last year and

10   indicated a willingness to handle another MDL, and they found

11   me.  So I'll be handling this MDL and I'm happy to do so.

12         I thank the parties who have sent letters about some

13   of the initial issues, because that helped the Court to get,

14   at least, a sense of what we need to do at the initial stages

15   of the MDL.  And I think that what I'd like to know to start

16   is from the plaintiff's side, what has been done to coordinate

17   the leadership for the MDL?  Yes.

18         You don't have to stand up.  You can do everything

19   seated, just make sure you speak into a microphone, please.

20         MS. RELKIN:  So prior to the formation of the MDL, a

21   number of us, a lot of the folks in the room have had these

22   cases, and one counsel, he's not here today, created a, kind

23   of a periodic Zoom meeting where we would all talk.  Some of

24   our colleagues in Florida.  Mr. Saunders' co-lead in Florida.

25   We've communicated with them.  A lot of us know each other,

PROCEEDING                                          6

1    not just from MDL world, but there's been a series of hip

2    implant and knee litigations over the years, so we're kind of

3    the orthopedic wonks, so we kind of know each other.  So there

4    have been these periodic phone calls, Zoom calls, and we've

5    communicated, and then once I filed a petition for the MDL, we

6    held a meeting with -- invited counsel we knew who had cases,

7    to a meeting the day before the MDL hearing in Saint Louis,

8    and there were probably about 30 to 40 lawyers there, talked

9    substance, organizational structure, and then we have been

10   speaking since then, and we had another meeting yesterday at

11   my office, and I believe we have consensus on a proposed

12   slate, if that's something Your Honor would be agreeable to.

13          JUDGE GARAUFIS:  Well, there are two portions to

14   that structure, correct.  There would be co-lead counsel which

15   was what was in your letter, I think, and that would be two

16   law firms, right?

17          MS. RELKIN:  Correct.

18          JUDGE GARAUFIS:  And then there would be a steering

19   committee?

20          MS. RELKIN:  Yes.  But a little -- two other, kind

21   of, intermediate layers, a little more nuanced.  We thought an

22   executive committee.  We've done that before in a few hip

23   litigation --

24          JUDGE GARAUFIS:  What is an executive committee?

25          MS. RELKIN:  So it's a little larger.  So the

PROCEEDING                                    7

```
 1    proposal is Mr. Pope from Atlanta and myself as co-lead.  Then

 2    the executive committee would be the two of us, plus three

 3    other individuals, and then the plaintiff's steering

 4    committee.

 5              JUDGE GARAUFIS:  And how large would that be?

 6              MS. RELKIN:  The plaintiff's steering committee

 7    would be 12.

 8              JUDGE GARAUFIS:  In addition to the five?

 9              MS. RELKIN:  Yes.  And then we also thought there

10    should be some subcommittees.  Many of the folks on all

11    these -- the PSC and the PEC would also, of course, be working

12    on in different substance, but some subcommittee members --

13    and I think we have the proposed Bellwether committee with

14    three individuals, discovery --

15              JUDGE GARAUFIS:  Go slowly, please.

16              MS. RELKIN:  Bellwether committee to help go through

17    cases to suggest nominees.  That's usually how this works for

18    the Bellwether committee.  And then we have three individuals

19    for discovery committee, and two individuals for science slash

20    expert committee.  And there -- certainly many of the people

21    in the PSC will be working on the same subject matter.  But in

22    terms of how, you know, why do you have these subcommittees as

23    well as the PSC, financially, just to, you know, generally to

24    fund a litigation like this, it's going to be very expert

25    intensive, firms participate and make financial contribution
```

PROCEEDING                                          8

1   and folks on the co-leads pay more into it than the -- you

2   know, it's a sliding scale, so to speak.  So this is a way to

3   have --

4               JUDGE GARAUFIS:  That's something within your

5   internal activity, right?

6               MS. RELKIN:  Right.  The idea is just to have more

7   involvement to have people who have cases and have an

8   interest, work on it and we need a lot of people because we

9   have knees, hips and a few ankles.

10              JUDGE GARAUFIS:  And a few ankles, okay.

11              And I would just point out before we go further,

12  that the MDL panel has indicated a preference for being

13  inclusive on these committees and subcommittees of younger or

14  newer lawyers who are learning the trade, so to speak, and

15  persons of diverse backgrounds, persons of diverse parts of

16  the country, I would add.  We already have plenty of

17  diversity, at least east coast diversity here.  But, you know,

18  to be more sensitive to those objectives, as we train lawyers

19  to take on these kinds of massive cases, and this case is not

20  that large yet.  It may never be that large, but you would

21  have a better sense of that, you and your colleagues.  Even

22  so, I think it's very important that whatever you propose

23  reflect those kinds of objectives.

24              MS. RELKIN:  Yes, Your Honor, and we are very

25  mindful of that and appreciate that and have endeavored to do

*AVERY N. ARMSTRONG, RPR*
*OFFICIAL COURT REPORTER*

PROCEEDING                                                    9

1   that.  I mean, I could discuss the backgrounds of the

2   different individuals or we could do that in a submission.

3   But we're mindful that we have several younger lawyers, a few

4   of the more senior lawyers we know from firms that have my

5   younger associate serve in lieu of me.  We were looking for,

6   you know, racial and ethnic diversity and we have some.  We

7   would have liked to have gotten more, but that's the universe

8   of who has these cases right now.  But if you want, I could

9   give you a break down.

10          JUDGE GARAUFIS:  It would be useful for us to get a

11  written submission on that.  And I'm not going to make any

12  decision this instant, but I would like to have the leadership

13  and the committee and the subcommittees in place before the

14  Christmas holiday.

15          MS. RELKIN:  Yes.  We would hope as soon as, you

16  know, possible just because we do want to catch up with

17  Florida.  And I've spoken with defense counsel, who I know

18  well from other litigations, and while they're prepared to

19  chat, they won't negotiate until we have some authority to do

20  that.

21          JUDGE GARAUFIS:  I understand that.

22          MR. MESTRE:  Your Honor, I think it's important to

23  add -- this is George Mestre from Rivero Mestre.  We represent

24  the third-party payers.

25          The submissions that are being made right now don't

PROCEEDING                    10

1   include the third-party payers.  The representations that were

2   made to this Court were correct when they were made.  We just

3   filed our complaint yesterday.  But it's a class action for

4   third-party payers, and we don't have to do this now, but we

5   want to make sure that the interest of the third-party payers

6   are represented in this MDL and we'll coordinate with

7   plaintiff's counsel.

8              JUDGE GARAUFIS:  Yeah.  And how would they

9   represented?  They would be separate and apart from these two

10  sides; is that it?

11             MR. MESTRE:  Well, there are different interests for

12  the -- the third-party payers have, as opposed to the

13  individuals, and how ever this litigation is to proceed which

14  is going to be up to Your Honor to coordinate, I just want to

15  make sure those interests of the third-party payers are, in

16  fact, represented.  And we are also, being in Miami, keenly

17  aware of the need for diversity and think that we can be

18  helpful with that, as well.

19             Thank you, Your Honor.

20             JUDGE GARAUFIS:  Thank you very much.  Appreciate

21  it.

22             Let me -- yes.  Go ahead, ma'am.

23             MS. RELKIN:  I was going to ask for a little

24  clarification on the process for submission since we feel like

25  we've -- you know, do have a consensus.

PROCEEDING                                          11

1            Do want us to submit, everybody submits a two-page

2    submission, résumé?

3            JUDGE GARAUFIS:  Well, I think what I would like to

4    have is I would like to have a coordinated submission with

5    attachments of the qualifications of each of the people who

6    are part of the coordinated submission.

7            And when I say, coordinated submission, you know,

8    the submission should basically say what the -- how this --

9    how each of the members of these entities complement the

10   overall picture, and so we have a record before we make a

11   discussion here.

12           MS. RELKIN:  Of course.

13           JUDGE GARAUFIS:  And you seem to have a pretty good

14   understanding of where the Court is and where the MDL panel is

15   on the importance of diversity, inclusion, and bringing people

16   into -- bringing lawyers, newer lawyers into the process.  So

17   all of that should be delineated in your submission, and we

18   will have -- we'll be able to look at the CVs or résumés of

19   the individuals.

20           MS. RELKIN:  Okay.  Great.

21           JUDGE GARAUFIS:  How soon can we do this?

22           MS. RELKIN:  We can do this very soon.  Can we do it

23   by next Monday or Tuesday.

24           JUDGE GARAUFIS:  That would be fine.  Let's do it

25   by -- I'll give you until the 30th of November.  And we can

PROCEEDING                                          12

1  resolve this very quickly once we have the paperwork in.  If

2  you get it in before that, we can deal with it before that.

3          MS. RELKIN:  Perfect.  Thank you, Your Honor.

4          JUDGE GARAUFIS:  All right.  I'd very much like to

5  have you off and running with this process, okay.

6          I would also like to mention that I've reached out

7  to Florida circuit judge Donna Keim -- is it Keim?  And I

8  haven't heard back yet.  But there's a premium on a

9  coordination of the discovery and other activities in the

10  intrastate litigation.

11          Is Exactech a Florida corporation?

12          MR. KANUTE:  It is, Your Honor.

13          JUDGE GARAUFIS:  So the cases brought in Florida

14  again Exactech are not subject to diversity of jurisdiction of

15  this Court.

16          MR. KANUTE:  This is Mike Kanute for Exactech.

17          That's correct, Your Honor.  Those cases are filed

18  in Alachua County which is where Exactech is located.

19          JUDGE GARAUFIS:  Gainesville?

20          MR. KANUTE:  Yes, sir.

21          JUDGE GARAUFIS:  Well, I'm not that familiar with

22  Gainesville.  I'm a South Florida kind of guy when I'm there.

23  But I'm looking forward to some coordination which would

24  benefit everyone especially once Judge Henry begins with the

25  discovery process.  But some of you are obviously involved in

*AVERY N. ARMSTRONG, RPR*
*OFFICIAL COURT REPORTER*

PROCEEDING                                    13

1    the Florida litigation.  I know you were, but also on the

2    other side, so I'm hoping that we can be efficient in that

3    sense, as well.

4              MR. KANUTE:  Your Honor, if I might.  Mike Kanute

5    for Exactech.

6              I'm very encouraged to hear that you are being on

7    proactive on coordination.  We feel that's very important and

8    there are a few other state court cases as well and other

9    jurisdictions that, at some point, we would appreciate your

10   assistance in coordination of those, as well.

11             JUDGE GARAUFIS:  Yes, I think you submitted some

12   information in your letter to the Court, and I appreciate

13   that, as well.

14             And as we go along at the early stage of this

15   litigation, if you will advise the Court of all of those

16   proceedings and who they're before, and the Court will reach

17   out to the judges who are handling those cases in those other

18   state courts to see how we can establish some efficiencies in

19   handling the litigation in other states.

20             MR. KANUTE:  We will be happy to get you that

21   information, Judge and, in fact, from the time that you

22   received these initial letters, there be have been a handful

23   other cases filed, so we'll get you up-to-date information on

24   those other state court cases, where they are and who the

25   judges are.

PROCEEDING                                    14

1        JUDGE GARAUFIS:  Can I ask just a broad question

2   here as to what the potential size of this MDL is.  I guess I

3   should ask the plaintiffs at this point.  I'm not going to

4   hold you to a number, but I'd like to get a sense, because as

5   we go along -- and there may be more cases -- it's going to

6   effect our ability to handle discovery motion practice and so

7   forth.

8        MS. RELKIN:  Sure.  With a certain degree of a

9   guesstimate, we know that there's a couple hundred thousand

10  recalled devices.  That does not mean that there's going to be

11  that many plaintiffs by any means because, of course, not

12  everyone needs a revision surgery just because they have the

13  device.

14        Right now we're at 100 in the MDL.  Mr. Saunders'

15  report in Florida, a little bit less.  But I would expect,

16  once there's a direct file order and the form complaint, that

17  we will see a good number of other cases.  So I would think

18  we're going to be high hundreds, if not low thousands.  So

19  whether it's 700 or 1300, I may be off.  But what we do know

20  is since the recall, the medical facilities, the doctors, or

21  the hospitals were supposed to send letters to their patients

22  saying, please be advised.

23        There's been --

24        JUDGE GARAUFIS:  When did those letters go out?

25        MS. RELKIN:  Well, it varies based on the

PROCEEDING                         15

1    institution.  So for example, HSS, New York Hospital of

2    Special Surgery, the recall was February.  My understanding is

3    they had to hire a vendor to go through every medical record

4    to figure out who got that device because they didn't track in

5    it in that way.  Those letters didn't go out until April.  And

6    then I understand it wasn't that -- then there was, you know,

7    I know my clients, you know, had to, kind of, get on a wait

8    list to be seen because they've been swamped with bringing in

9    the patients, x-rays, MRIs, aspirations to check the fluid.

10   So it's -- there's a lot of -- I have clients who are still

11   waiting for appointments or for revision surgery.

12          Some surgeons, I think, have passed away and it's

13   not clear whether those patients were advised.  I learned

14   about one hospital where they've recently started sending out

15   letters.  So I think it's going to be staggered, and if

16   someone has moved and they never got the letter, they might

17   not know they have a case until their knee or hip starts

18   hurting them and they go for follow up and then it's

19   discovered that they have this presentation of Polyethylene

20   wear.  So I think it's -- we have the initial burst, but there

21   will be, kind of, a steady flow of cases.

22          Also, some people, if they had the device put in two

23   years ago, if they go for a checkup now, their x-ray may not

24   show any bone loss, hopefully, for them.  So the doctor's,

25   like, okay, you're good, but come back in six months.  Next

PROCEEDING                              16

1   six months, they may have the problem, you know, and they got

2   followed.  So we've seen this history with some other recalled

3   orthopedic products where there's the initial large number,

4   but the later implants fail over time, and some doctors are

5   conservative understandably and say, let's not take it out

6   because it's okay now.  Whether that's the conservative

7   treatment, as opposed to, uh oh, you've got a problem here,

8   let's get it out before you lose bone, is a medical judgment I

9   think the surgeons are grappling with.  So I think we're going

10  to see cases for a while.

11          Does that help?

12          JUDGE GARAUFIS:  Thank you.

13          Mr. Kanute, do you have anything to add?

14          MR. KANUTE:  Yes, I do Your Honor.  I think it's

15  important to note that this MDL was formed because of the

16  issue of premature wear of some of these polyethylene

17  components.  Really, the recall that Ms. Relkin is talking

18  about relate to a packaging nonconformity, that's packaging

19  that's been used by Exactech since 2004.  And it's very

20  important to note that overall, as a family of products, these

21  products have had an excellent clinical history, they've been

22  used successfully by surgeons in patients with very low

23  revision rates.  So just because a particular polyethylene

24  component is subject to this voluntary recall that was done

25  because of the packaging nonconformity, it does not

1  necessarily mean, and in most cases it does not mean that

2  there is wear or more specifically, premature wear of the

3  component or any patient symptoms, for that matter.  So I

4  don't have anything to add as far as the number of cases you

5  might see.  But I do think it does highlight an issue which is

6  we are going to have to look at these cases as they come in,

7  because wear of these polyethylene components is a known risk,

8  no matter who makes them or whether it's a hip or knee or

9  ankle or any other orthopedic implant.  It is always a

10 potential risk for cause of revision surgery.  So just because

11 there is wear does not necessarily mean that the case may fit

12 into this MDL.  We have to examine these cases for premature

13 wear, and wear can be caused by a number of reasons, as well,

14 not an alleged defect but can be due to surgical factors like

15 positioning of the implants or surgical approach or patient

16 characteristics, like, body mass index and activity level, and

17 things like that.  So every case is different, and that's why

18 I think we need to try to get some screening mechanism in

19 place here too, and we can talk to Ms. Relkin or whoever the

20 leadership is about that at the appropriate time.

21         JUDGE GARAUFIS:  Right.  You can meet and confer

22 about that.

23         MR. KANUTE:  Yes.

24         JUDGE GARAUFIS:  All right.  At the appropriate

25 time.

PROCEEDING                        18

1              Which raises a question that Judge Henry and I had

2     in our initial review of your submissions and the assignment

3     of the MDL.  And that is, neither of us have graduated from

4     medical school and done a 12-year residency in orthopedic

5     surgery, so we're not exactly an expert on these types of

6     issues that have you delineated in your comments.  And so it

7     would be useful to us -- and I don't know how other MDLs have

8     done this or whether they've done it -- for us to receive some

9     technical information that doesn't go to liability or to reach

10    conclusions as to whether there's premature wear of a

11    particular device, but what are these devices and what are

12    they advertised for or intended to do.

13              Now, this can be done -- you can provide this to us

14    in one of two ways.  Either can you agree to provide us

15    jointly with certain information, or if you can't agree, you

16    can separately provide us with that kind of information in a

17    submission that is not evidence, that will not be used at

18    trial, that we will only use to get some basic information

19    about what the subject matter is of this MDL.  And if you

20    object to that, let me know, but I think it would be useful

21    since especially for Judge Henry, in the initial stages, so

22    that she has, you know, a certain amount of information about

23    what we're dealing with here.

24              So you can meet ask confer about that and we'd

25    appreciate whatever you can to in that regard, because we want

PROCEEDING                                    19

1    to know more.  You have had, I'm sure, a lot of experience

2    dealing with these technical matters as lawyers, but we have

3    not.  So that's our request, and let us know.  Okay.  And we

4    look forward to seeing whatever you have to say.

5            So I think we're in a position now where we should

6    go over since there is -- we haven't -- I haven't had a

7    conversation yet with Judge Keim about coordination of the

8    discovery, the state discovery with the MDL, that we talk

9    about a few things.

10           One of the issues that was raised in your

11   submissions was on the question of master pleadings.  And I

12   think that it was the defense that asked that we arrange for a

13   master long form complaint and answer, along with short-form

14   pleadings.

15           Can you explain why you believe that is useful in

16   this MDL?

17           MR. KANUTE:  Yes, Your Honor.  Mike Kanute for

18   Exactech.

19           A master long-form complaint will be useful because

20   it will serve as the operative pleading on behalf of the

21   plaintiffs in these cases, allowing other plaintiffs to simply

22   file the short-form complaint, that way we get a multitude of

23   different complaints with different counts filed by different

24   plaintiffs' lawyers.  In prior MDLs, we found that provides

25   for very orderly procedure, rather than just having no master

PROCEEDING                                    20

1    complaint in place.

2              JUDGE GARAUFIS:  And let me hear from plaintiff,

3    because I think there's a difference of opinion here.

4              MS. RELKIN:  Yes.  We do not oppose doing that.  Our

5    only concern is we don't want it to delay discovery.  So we're

6    fine working on a long form and short-form complaint, but you

7    know, that can take when, all said and done, 45 days, and then

8    they have time to answer.  So what we would -- we're amenable

9    to doing it if we can, in parallel, catch up with Florida and

10   the other state courts --

11             JUDGE GARAUFIS:  Well, they're not really that far

12   ahead, are they?

13             MS. RELKIN:  Mr. Saunders will speak to that.  They

14   actually are, you know, reasonably further ahead, yes.  So we

15   want to, at minimum, get the documents that they've been

16   produced, some of these structure type of orders, the ESI, the

17   kind of issues we'll deal with the magistrate.  Those take

18   time and, you know, we can jumpstart if we adopt --

19             JUDGE GARAUFIS:  Well, I'm more than happy to

20   operate on two tracks here.  So why don't you get started on

21   getting it put together.  In the meantime, you'll be working

22   with Judge Henry on discovery.

23             MS. RELKIN:  Terrific.  And we are fine with doing

24   the long form and short form.  It's very commonplace in MDLs.

25   I think defendants, they don't have to waste money answering

PROCEEDING                                    21

1   individual complaints which doesn't get us very far, and we're

2   hoping -- and I've had some preliminary discussions -- that,

3   you know, we're not going to get bogged down in global motions

4   to dismiss at this juncture.  Unlike some litigations which

5   may have an issue with could arguably take out a litigation, a

6   preemption issue, we don't have that in these devices.  You

7   know, there's different FDA regulatory processes and in sum

8   that go through this premarket approval, defendants may have

9   an argument on preemption Which could theoretically wipe out a

10  litigation, that was not in through process.  So we don't have

11  any global issues that warrant initial motion practice.  So my

12  hope is, we do the long form and short form, it makes

13  everyone's life simpler, and we proceed with discovery, and

14  when they're ready to make whatever other motions down the

15  road, that would be appropriate.

16              MR. KANUTE:  Mike Kanute, again.

17              Your Honor, I can represent to the Court that if we

18  pursue that process, we're certainly not interested in

19  dragging things out with motions like that.  In fact, as we

20  proceed, we can probably suggest to the Court a procedure

21  where, as long as we can table, for example, 12(b)(6) motions

22  until Bellwethers are selected at some point down the road, we

23  don't have to address that then in the master complaint, and

24  that I think that will be efficient and not slow things down

25  for the Court.

PROCEEDING                                    22

1          JUDGE GARAUFIS:  I'm delighted to hear that, so

2     let's proceed with that in mind.  All right.

3          MR. KANUTE:  Yes.  Thank you, Your Honor.

4          JUDGE GARAUFIS:  At this point, I think we ought to

5     move to the issue of discovery, and I'm going to ask Judge

6     Henry to lead that discussion.

7          JUDGE HENRY:  Thank you.

8          Thank you, Judge Garaufis.  And so I do appreciate

9     the updates on discovery that were provided in the various

10    letters, including flagging, not only the progress that has

11    been made in the Florida action, but also potential issues

12    that may have already arisen as part of the, sort of, initial

13    discussions that counsel have been having.

14         One of the things that I wanted to address which I

15    think Judge Garaufis has helped along, was the fact that we

16    need lead plaintiffs' counsel in order to start negotiating

17    the sorts of discovery orders that need to be in place in this

18    case.  And I know that there is a very comprehensive case

19    management order in the Florida action, with all of the status

20    conferences scheduled out for the remainder of 2023.  What I

21    would need to do is once lead plaintiffs' counsel is in place

22    or whomever the lead is for plaintiffs that's going to

23    negotiate these sorts of orders, I would like to receive

24    proposed orders from the parties that you all have negotiated

25    amongst themselves, and then submit them to the Court for

PROCEEDING                              23

1    review.  I think we can then have a separate conference and it

2    would be a remote conference via Zoom for the purposes of

3    discussing those orders, confirming that there are no issues,

4    and then implementing those orders right away.  So that would

5    be the primary case management order, including deadlines for

6    various, sorts of, discovery-related actions.  The ESI

7    protocols, because I understand that there may have been

8    consensus for the purposes of moving the case along, but if

9    there are other issues that need to be discussed, we can

10   discuss them, as well as a protective order, which I

11   understand is something that Judge Keim may have ruled on

12   based on some disagreement with the parties in Florida action.

13          To the extent that you all can meet and confer about

14   these issues and submit for me, orders for review, that would

15   be most helpful.  And I think the deadline for those proposed

16   orders, so case management, ESI, and protective would be

17   pegged to the date on which lead plaintiffs' counsel is

18   appointed.  So let's say within 30 days after that, you are

19   submitting proposed orders for the Court to review.  What I

20   would like to do is schedule a conference for early January

21   for us to be able to review them and we can get 2023 off to a

22   good start in terms of getting discovery.

23          I don't think that the master pleadings process will

24   interfere with that.  I think we have a scope of what the

25   claims are, actually, in most of the cases, but we just need

PROCEEDING                                    24

1    to put the orders in place.

2              I was very happy to hear, Ms. Relkin, from you, and

3    as well, Mr. Kanute, that you are working together very well.

4    I think it bears saying that that is a very important

5    component of discovery for me.  To the extent that you all can

6    meet and confer and propose jointly, issues to the Court,

7    that's actually much easier in terms of getting decisions to

8    you as quickly as possible, that we don't delay the discovery

9    in this case.

10             I know that my individual rules indicate a procedure

11   for raising discovery motions with the Court.  I'm actually

12   overriding those provisions for the purposes of this case

13   only, because I think it's more beneficial for you to jointly

14   submit discovery disputes to me for review, and that, A,

15   forces you to meet and confer, even if you aren't, but also

16   helps you to synthesize what the issues are in order for me to

17   make a decision quickly.

18             Now, again, my practice is typically to have

19   conferences every six to eight weeks in a case like this.  I

20   would like to set the date for the discovery conference in

21   this case for early January today while counsel are here,

22   keeping in mind that the likely lead plaintiffs' counsel are

23   present and would be able to schedule that.  But I'm not going

24   to set a schedule for the remainder of 2023.  I think it's

25   important that we take the case as it comes.  I know that

PROCEEDING                               25

1   we'll be talking regularly, and we will certainly never end

2   one conference without setting a next one.

3            With respect to the discovery disputes that were

4   alluded to, I think in plaintiff's status report, the most

5   recent one at ECF 19, to the extent that you believe that

6   those issues are ripe for consideration, we'll implement the

7   new discovery dispute mechanism which is that joint letter is

8   filed 10 days in advance of the status conference that we're

9   going to set now.

10           Any questions about anything that I've described to

11  so far?

12           MR. POPE:  No, Your Honor.

13           MR. KANUTE:  No, Your Honor.

14           JUDGE GARAUFIS:  Okay.  I'm going to ask my deputy

15  who's sitting here to pass me a Post-it note with the proposed

16  conference.  He has all the scheduling.

17           So Wednesday, January 25th at 2:30 p.m., and again,

18  this would be a video conference.

19           Does that work for the defense?

20           MS. SCHEBEL:  Yes, Your Honor.  Jodi Schebel.

21           JUDGE GARAUFIS:  And for plaintiffs?

22           MS. RELKIN:  Yes, Your Honor.

23           Did you say 2:30?

24           JUDGE GARAUFIS:  2:30 p.m. Eastern Time.

25           MR. MESTRE:  Your Honor, just for clarification, is

PROCEEDING                                    26

1    the way that the Court wants to manage the third-party payer

2    claim part of this proceeding?  Would these orders also apply

3    to the third-party payers, because if so, we'd want to be

4    involved in this process which is part of what I meant about

5    having our interest protected.

6              JUDGE HENRY:  Certainly.  I think it would be

7    helpful to coordinate with, yes, counsel for plaintiffs and

8    defendants, because I don't want to have a separate separate

9    discovery track.

10             MR. MESTRE:  Thank you, Your Honor.

11             JUDGE HENRY:  Yes.  Ms. Relkin.

12             MS. RELKIN:  That's fine.  I mean, I think there may

13   be some distinct issues.  There will be certainly overlapping.

14   We're all trying to prove liability and defendants --

15             JUDGE HENRY:  I think it maybe the case that

16   co-counsel may need to move back a bit.

17             JUDGE GARAUFIS:  And speak directly -- turn the

18   microphone around a little.

19             MS. RELKIN:  Maybe this microphone is -- the light

20   is on.

21             Sorry.  So there will be different damage, entirely

22   different damage issues if those claims are third-party

23   payers.  So they may have their own discovery track with

24   defendants on that and whatever motion practice that does not

25   involve the personal injury plaintiffs.  But certainly, on the

PROCEEDING                                27

1   overall liability as to defendants, there's overlap.

2           JUDGE HENRY:  Okay.  Thank you for clarifying,

3   Ms. Relkin.  And so as to Mr. Mestre's point, yes, you should

4   come to that conference, as well, and you should talk with

5   counsel in advance of that, and we can perhaps deal with that

6   in more detail at the next conference.

7           MR. MESTRE:  Thank you, Your Honor.

8           JUDGE HENRY:  All right.  And the order that will be

9   issued after this conference will clarify the dates for the

10  proposed order, et cetera, that I would like counsel to submit

11  in advance.  All right.

12          Any or questions regarding the overall discovery

13  process?  All right.

14          MS. RELKIN:  No, Your Honor.

15          JUDGE HENRY:  All right.  Thank you.

16          JUDGE GARAUFIS:  Now, there are several 12(b)

17  motions that are extant that have been identified by the

18  defense, and I assume that those would be stayed while we

19  engage in the immediate organization of the case.

20          MR. KANUTE:  Yes.  Mike Kanute, Your Honor.

21          Absolutely, we would agree to that and, in fact,

22  Your Honor, since you mentioned that, one thing I forgot to

23  mention previously, while we're working out the process for a

24  master complaint, there are these individual cases that have

25  been transferred to the MDL.  The defendants would ask for a

PROCEEDING                                    28

1   stay of those so that we don't have to answer all of the

2   complaints that are currently in the MDL in which the time is

3   running on that.  I don't think that's a controversial request

4   in connection with the claims.

5          MS. RELKIN:  We've discussed and that's fine with

6   the plaintiffs.

7          JUDGE GARAUFIS:  The application for a stay of all

8   answers is granted.

9          MR. KANUTE:  Thank you, Your Honor.

10          JUDGE GARAUFIS:  All right.  Okay.  Go on.

11          MS. RELKIN:  A few other infrastructure issues, if I

12   may.

13          Direct file order, I think that goes to your

14   question of how many cases.  I think once we have a direct

15   file order, we'll have a better handle on how many cases will

16   be coming and the rapidity in which they come.  So we would

17   like to, once we have the authority appointed to negotiate,

18   and I have no doubt that we'll be able to reach orders on

19   direct file order with the defendants.

20          MR. KANUTE:  We foresee no problem with that, Judge.

21          JUDGE GARAUFIS:  All right.  And the Court sees no

22   problem with that.  Just submit it.

23          MS. RELKIN:  Terrific.  And then one other question

24   that was raised about pro hac.  We read your order and your

25   rules.  And our understanding just for really clarification is

PROCEEDING                           29

1   if someone had a case already that got CTOed before the MDL --

2   had a case before the MDL was created, they're in.

3          JUDGE GARAUFIS:  Had a case, you mean in the Eastern

4   District of New York?

5          MS. RELKIN:  My understanding was -- or made maybe I

6   read it wrong, is if someone had filed one of these cases in

7   federal court --

8          JUDGE GARAUFIS:  Anywhere?

9          MS. RELKIN:  Anywhere, and then the MDL is created,

10  they do not need to do pro hac?

11         JUDGE GARAUFIS:  If they were admitted or did pro

12  hac in the other jurisdiction, that's correct.

13         MS. RELKIN:  So the question then becomes, for later

14  cases, if someone did not have a case before and now they want

15  to file a cases, do they need to do the pro hac?

16         I think I read it that they do.  But what that would

17  mean is that particular individual, if they're not admitted

18  which I guess they're not because that's why they would need

19  to do pro hac, would have to get local counsel first to get an

20  ECF so that it can be filed on ECF, unless we assigned sign

21  that to a liaison counsel who could file pro hac motions in

22  the general docket.  So either --

23         JUDGE GARAUFIS:  Well, I think that it would be

24  preferable to assign that to a liaison counsel.

25         You can identify a liaison counsel who is a member

PROCEEDING                                30

1    of the bar of the Court here, and we can do it that way.

2           MS. RELKIN:  Terrific.  And Ms. Kessler, Rayna

3    Kessler from Robins Kessler, our consensus group if it passes

4    the Court's approval --

5           JUDGE GARAUFIS:  I think that works.  And it's more

6    efficient than looking around for local counsel.

7           MS. RELKIN:  Great.

8           JUDGE GARAUFIS:  You're pretty local.

9           MS. RELKIN:  Thanks.

10          JUDGE GARAUFIS:  Okay.  What else do you have for

11   us?

12          MS. RELKIN:  Do you want an update from Mr. Saunders

13   on the little more granularity about Florida discovery where

14   they are?

15          JUDGE GARAUFIS:  Yes.  Absolutely.

16          MR. SAUNDERS:  This is Joseph H. Saunders for the

17   plaintiffs.

18          Judge, the first Florida case was filed about a year

19   and a half ago, a little bit before the recall.  Like this

20   summer, we got a coordination order from Judge Keim, and there

21   are now about 75 cases in her court, and in Florida, the

22   coordination rules only allow coordination within one county.

23   But I don't know that there are many, if any, other cases in

24   other counties in Florida.  If there are, there are not very

25   many.  So there are about 75 cases now before Judge Keim in

PROCEEDING                                31

1   Gainesville.  The company is based there.  It's where

2   University of Florida is, the basketball arena is the Exactech

3   arena, and so the courthouse is maybe five miles from the

4   company.  A lot of doctors in that area were friends or

5   related to the founders, so that's why there are a lot of

6   cases in Florida that, of course, don't have federal

7   jurisdiction.

8               We've worked out --

9               JUDGE GARAUFIS:  Well, there are a lot of retirees

10  in Florida too.

11              MR. SAUNDERS:  A lot of people who need hip implants

12  and Florida.

13              JUDGE GARAUFIS:  I'm happy to report that thus far,

14  I'm not a member of that fraternity.

15              MR. SAUNDERS:  Then you wouldn't have a conflict of

16  interest here.

17              JUDGE GARAUFIS:  That's right.  Go ahead.

18              But I think the defense would know about the number

19  of cases in Florida and how they're being handled outside of

20  that county, and so I would ask -- I would ask the defense to

21  provide the Court with the information that I think we all

22  ought to have on that.

23              MR. KANUTE:  Mike Kanute, Your Honor.

24              According to our numbers, there are 74 cases that

25  are part of the coordinated proceeding, and no other cases in

PROCEEDING                    32

1   other state courts in Florida, although I -- is that right?

2            I'm sorry, Judge, I misspoke.  My colleague here

3   told me there's one other case outside of Alachua County that

4   is in state court.

5            JUDGE GARAUFIS:  All right.  Thank you very much.

6   That answers the question -- that question.

7            I don't know how we would coordinate with a single

8   case, but certainly, if we're advised of the court and the

9   judge and the name of the case, I would reach out to that

10  judge and indicate that the MDL exists and that we're

11  attempting to coordinate discovery.

12           MR. KANUTE:  Mike Kanute, Your Honor.

13           I'm told also that we are working with the counsel

14  in that stray Florida case to try to get that moved into

15  Alachua County so that it can be part of the coordinated

16  proceeding, as well.

17           JUDGE GARAUFIS:  Okay.  Thank you very much.

18           Well, Alachua County is where the defendant is

19  located, so I assume there's jurisdiction --

20           MR. KANUTE:  Yes.

21           JUDGE GARAUFIS:  -- of the case in Alachua County.

22  But that's a problem that you can deal with.

23           MR. KANUTE:  Correct.

24           JUDGE GARAUFIS:  Thank you.

25           MR. SAUNDERS:  Joe Saunders here again.

PROCEEDING                            33

1          Discovery has been ongoing since March of this year,

2    so we've had rolling discovery, we've had regular meet and

3    confers, there have been a few disputes that we've had before

4    the judge, but overall, there's been a significant amount of

5    discovery produced in the knees and the hip cases.  We have a

6    protective order we've agreed to that allows for sharing.  So

7    it allows for sharing with lawyers with federal cases, and so

8    we're in the processes of establishing a depository that can

9    be accessed for the purposes of this proceeding and lawyers in

10   the federal courts as well.  That initial case filed in

11   Florida is now set for trial for November 2023, and so we --

12   the plaintiffs and the defense counsel, as well, have been

13   working towards, kind of, morphing the discovery going on in

14   the individual cases that preceded the formation of the

15   coordination, to morph that into more general discovery

16   applicable to all of the cases.

17          So there has been rolling discovery going on that is

18   taking place.  So that's where we are in the state court.

19          JUDGE GARAUFIS:  Thank you very much.

20          JUDGE HENRY:  Yes.  Thank you.

21          And I think that can be one of the things that you

22   include in your submissions with the proposed orders, and we

23   can talk about it further at the conference as to the best way

24   to coordinate the orders here with what's been going on in the

25   Florida cases.

PROCEEDING                                34

1          JUDGE GARAUFIS:  All right.  Thank you.

2          Ms. Relkin, another concept has come up in terms of

3    the MDL process.  And that is a way of keeping the plaintiffs

4    themselves advised of developments along the way.  And one

5    system is to set up a website that will provide that kind of

6    information.

7          Is this something that you've used in the past?

8          MS. RELKIN:  Yes.  We've seen be it where the

9    plaintiffs group does it and we've seen it where some courts

10   actually, if they have a good webmaster, the courts actually

11   have all the orders available easily.  We could do it either

12   way.

13         JUDGE GARAUFIS:  I think that what I'd like to do is

14   that I will check with our IT department as to how we could do

15   it.  But if plaintiffs are willing to do it, it would

16   facilitate having it done, and I'm just -- what I'm concerned

17   about is not who does it, but that there be a repository of

18   information that plaintiffs can access along the way so that

19   they're fully informed about proceedings that are going on and

20   outcomes.

21         MS. RELKIN:  Certainly.  We can do that.  That would

22   be come probably within the role of liaison counsel and we can

23   certainly do it.

24         JUDGE GARAUFIS:  All right.  Thank you very much.

25         I'm going to deputize liaison counsel to handle

PROCEEDING                                    35

1    that, unless you advise the Court that it doesn't work for

2    this case, in which case, I'll follow up with the Court's IT

3    director.  All right.

4                MS. RELKIN:  Certainly.  Thank you.

5                JUDGE GARAUFIS:  Good.  So do the plaintiffs have

6    anything more for the Court today?

7                MS. RELKIN:  No, Your Honor.  I think we've covered

8    the basics.

9                JUDGE GARAUFIS:  Okay.  Mr. Kanute, does the defense

10   have anything else to raise?

11               MR. KANUTE:  No, Your Honor.  This is very

12   productive.  Thank you.

13               JUDGE GARAUFIS:  Okay.  I'd like to thank everyone

14   for their attention, for their preparation, and for getting

15   the ball rolling in this litigation.

16               Have a nice day.

17               (Whereupon, the matter was concluded.)

18

19                        *     *     *     *     *

20

21

     I certify that the foregoing is a correct transcript from the
22   record of proceedings in the above-entitled matter.

23

24
          s/ Avery N. Armstrong              November 21, 2022
25          AVERY N. ARMSTRONG                     DATE


                        AVERY N. ARMSTRONG, RPR
                        OFFICIAL COURT REPORTER