**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**(BROOKLYN)**

| | |
|---|---|
| IN RE: EXACTECH POLYETHYLENE ORTHOPEDIC PRODUCTS LIABILITY LITIGATION | ) MDL No. 3044 (NGG) (MMH) ) ) ) Case No.: 1:22-md-3044-NGG-MMH ) ) District Judge Nicholas G. Garaufis ) Magistrate Judge Marcia M. Henry ) |
| THIS DOCUMENT RELATES TO: ALL CASES AGAINST TPG DEFENDANTS | |

**DEFENDANTS TPG INC.; OSTEON HOLDINGS, INC.; OSTEON MERGER SUB, INC.; AND OSTEON INTERMEDIATE HOLDINGS II, INC.'s**
<u>**REPLY IN SUPPORT OF MOTION TO DISMISS**</u>

**Opening Brief Served: June 9, 2023**

**Reply Brief Filed: July 28, 2023**

## **TABLE OF CONTENTS**

**Page**

I. PLAINTIFFS' VEIL-PIERCING CLAIMS AGAINST TPG CANNOT SURVIVE .......................................................................................................... 2

    A. No Choice-Of-Law Analysis Is Warranted ............................................... 2

    B. All Relevant States Apply "Consistent" Factors That "Forbid" Veil-Piercing Except In "Extraordinary" Circumstances .............................. 2

    C. Subsidiaries' States Of Incorporation Implicate Delaware And Florida Law .................................................................................................... 3

    D. Plaintiffs' Cursory Treatment Of The Veil-Piercing Factors Highlights Their Failure To Plead Exclusive Domination And Control ................. 4

        1. Factors #1, #2, and #4: No Allegations That TPG Left Exactech Undercapitalized And Insolvent By Siphoning Exactech's Funds. ............ 4

        2. Factor #3: No Allegations That TPG And Exactech Ignored Corporate Formalities. ................................................................ 5

        3. Factor #5: No Allegations That Exactech Is A Façade. .............................. 6

    E. No Allegations Of Corporate Form's Use For Injustice Or Unfairness ................. 7

II. PLAINTIFFS' SUCCESSOR LIABILITY THEORY REMAINS IMPLAUSIBLE .......................................................................................................... 8

III. PLAINTIFFS' PROCEDURAL ARGUMENTS FAIL ............................................... 8

IV. CONCLUSION ....................................................................................................... 10

i

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ali v. Fed. Ins. Co.*,
  719 F.3d 83 (2d Cir. 2013) ............................................................................................2

*In re Allergan Biocell Textured Breast Implant Prods. Liab. Litig.*,
  537 F. Supp. 3d 679 (D.N.J. 2021) ...............................................................................9

*In re Alta Mesa Res., Inc.*,
  2022 WL 7750353 (Bankr. S.D. Tex. Oct. 13, 2022) ...................................................3

*Austin v. Camping World of Memphis*,
  2023 WL 1880129 (W.D. Tenn. Feb. 10, 2023) ...........................................................2

*In re Avandia Mktg., Sales Pracs. & Prods. Liab. Litig.*,
  2012 WL 3205620 (E.D. Pa. Aug. 7, 2012) .............................................................9, 10

*Bass v. World Wrestling Fed'n Ent., Inc.*,
  129 F. Supp. 2d 491 (E.D.N.Y. 2001) (Garaufis, J.) .....................................................2

*In re Biomet M2a Magnum Hip Implant Prods. Liab. Litig.*,
  2019 WL 1077291 (N.D. Ind. Mar. 7, 2019) ................................................................9

*Bristol-Myers Squibb Co. v. Matrix Lab'ys Ltd.*
  655 F. App'x 9 (2d Cir. 2016) .......................................................................................9

*Church Joint Venture v. Blasingame*,
  2016 WL 3248044 (W.D. Tenn. Jan. 13, 2016) ............................................................2

*Classic Soft Trim, Inc. v. Albert*,
  2020 WL 6734402 (M.D. Fla. Aug. 13, 2020) .............................................................6

*Erben v. Raymond James Eur. Holdings, Inc.*,
  2012 WL 12874586 (M.D. Fla. Apr. 10, 2012) ............................................................3

*First Bank of Delaware v. LeanSpa LLC*,
  2012 WL 924877 (D. Del. Mar. 19, 2012) ....................................................................7

*Guinan v. A.I. duPont Hosp. for Child.*,
  597 F. Supp. 2d 485 (E.D. Pa. 2009), *rev'd on other grounds*, 393 F. App'x
  884 (3d Cir. 2010) .........................................................................................................6

*In re Hillsborough Holdings Corp.*,
  166 B.R. 461 (Bankr. M.D. Fla. 1994), *aff'd*, 176 B.R. 223 (M.D. Fla. 1994) ............5

*In re Land Rover LR3 Tire Wear Prods. Liab. Litig.*,
   2011 WL 13225296 (C.D. Cal. Dec. 12, 2011) ...................................................................9

*In re Maxus Energy Corp.*,
   641 B.R. 467 (Bankr. D. Del. Jun. 22, 2022) ......................................................................3

*Miami Prods. & Chem. Co. v. Olin Corp.*,
   449 F. Supp. 3d 136 (W.D.N.Y. 2020) ...............................................................................7

*Nieves v. Insight Bldg. Co., LLC*,
   2020 WL 4463425 (Del. Ch. Aug. 4, 2020) ........................................................................6

*In re Paraquat Prods. Liab. Litig.*,
   2023 WL 3948249 (S.D. Ill. June 12, 2023) ...................................................................8, 10

*Riad v. Porsche Cars N. Am., Inc.*,
   2023 WL 2227692 (E.D. Pa. Feb. 24, 2023) .......................................................................6

*In re Samsung DLP Television Class Action Litig.*,
   2009 WL 3584352 (D.N.J. Oct. 27, 2009) .......................................................................8, 9

*Taser Int'l, Inc. v. Phazzer Elecs., Inc.*,
   2023 WL 2523447 (M.D. Fla. Mar. 14, 2023) ..................................................................3, 4

*Tomlinson v. Combined Underwriters Life Ins. Co.*,
   2009 WL 2601940 (N.D. Okla. Aug. 21, 2009) ..................................................................3

*In re Trasylol Prods. Liab. Litig.*,
   2009 WL 577726 (S.D. Fla. Mar. 5, 2009) .........................................................................8

*United States v. Bestfoods*,
   524 U.S. 51 (1998) ..............................................................................................................6

*Verdantus Advisors, LLC v. Parker Infrastructure Partners, LLC*,
   2022 WL 611274 (Del. Ch. Mar. 2, 2022) .......................................................................1, 4

*In re Welding Fume Prods. Liab. Litig.*,
   2010 WL 2403355 (N.D. Ohio June 11, 2010) ..........................................................2, 8, 10

*Wright v. Ernst & Young LLP*,
   152 F.3d 169 (2d Cir. 1998) ................................................................................................5

Tellingly, Plaintiffs spend the majority of their response brief asking this Court not to decide the issue. In fact, Plaintiffs do not even discuss the alleged facts supporting their veil-piercing or successor liability theories until page 17 of their brief. Instead, Plaintiffs claim the instant motion is "premature" and "inappropriate." They argue the choice-of-law issues are too complicated to be decided now (Opp. 7-10), ignoring the caselaw dismissing veil-piercing claims on far more robust allegations than those they plead. And they ask this Court (again) to delay ruling and order more discovery. Plaintiffs' attempts to push off a decision fail—and, if anything, implicitly concede that the Amended Complaint falls short of the demanding applicable standards.

Indeed, Plaintiffs do not dispute that they failed to plead *any* of the basic, necessary facts to veil pierce. That is true no matter what state law applies. *Infra* § I.C-I.D. For example, Plaintiffs do not dispute Exactech and TPG maintain corporate formalities—they have different purposes, management teams, and headquarters. Plaintiffs admit, as they must, that TPG paid a significant amount for Exactech and that both are solvent today. Put simply, Plaintiffs come nowhere close to meeting the "extraordinary" burden to pierce the corporate veil.

Plaintiffs' successor liability claim fares no better. Plaintiffs, who give this doctrine short-shrift in their response, do not even plead the bare minimum. Namely, they have not pled, as is required, that Exactech no longer exists. Without an allegation that there is a *successor* who assumed Exactech's liabilities, this doctrine is wholly inapplicable. *Infra* § II.

Plaintiffs chose to file indirect liability claims—"a tough thing to plead and a tougher thing to get"—against TPG. *Verdantus Advisors, LLC v. Parker Infrastructure Partners, LLC*, 2022 WL 611274, at *2 (Del. Ch. Mar. 2, 2022). These claims must be tested now. Plaintiffs' Amended Complaint showcases a typical owner-portfolio company relationship, "not the exceptionally rare" case where indirect liability applies. *Id*. It should be dismissed accordingly.

I. **PLAINTIFFS' VEIL-PIERCING CLAIMS AGAINST TPG CANNOT SURVIVE**

    A. **No Choice-Of-Law Analysis Is Warranted**

Of the 20 states now implicated by Plaintiffs' claims, 18 look to the state of incorporation for substantive veil-piercing law, Rev. App'x A & B, which plainly dictates application of Florida and Delaware law here. While Plaintiffs spill a lot of ink about other states' law, they fail to identify *any* conflict in *any* of the substantive veil-piercing laws. And where "there is no conflict … we dispense with any choice of law analysis." *Ali v. Fed. Ins. Co.*, 719 F.3d 83, 90 n.12 (2d Cir. 2013). This Court has held the same before and should do so again here. *Bass v. World Wrestling Fed'n Ent., Inc.*, 129 F. Supp. 2d 491, 504 (E.D.N.Y. 2001) (Garaufis, J.) (finding "***no choice of law analysis need[ed]***" where the party urging it "***fails to demonstrate a true conflict***").[1]

    B. **All Relevant States Apply "Consistent" Factors That "Forbid" Veil-Piercing Except In "Extraordinary" Circumstances**

Even were the Court to undertake a choice-of-law analysis, the same substantive principles apply in the end. And no "detailed, case-specific, factual" analysis is required to get there. Opp. 11, 12. Plaintiffs' brief focuses on four states' laws: Florida, South Carolina, Georgia, and Tennessee. While Plaintiffs are wrong that Delaware law is inapplicable (*see infra* § I.C), wrong about Tennessee's choice-of-law test,[2] and wrong that Georgia applies to any pending case against TPG,[3] *it does not matter*. Each state's law is as stringent as the next (*see* App'x C), allowing veil piercing only in "extraordinary" cases where the same factors are satisfied:

---

[1] All emphases have been added unless otherwise indicated. *See also In re Welding Fume Prods. Liab. Litig.*, 2010 WL 2403355, at *1, 3, 8 (N.D. Ohio June 11, 2010). Plaintiffs argue *In re Welding* is inapplicable because the veil-piercing claim there was raised late. Opp. 11 n.4. But the MDL court reached the merits, holding plaintiffs had "no factual allegations to support veil piercing." *In re Welding*, 2010 WL 2403355, at *8.

[2] Courts since *Church Joint Venture v. Blasingame*, 2016 WL 3248044 (W.D. Tenn. Jan. 13, 2016) (*see* Opp. 12) reaffirm that "Tennessee[] … ***mandates*** the use of the state of incorporation's law in resolving … corporate veil-piercing [claims]." *Austin v. Camping World of Memphis*, 2023 WL 1880129, at *3 (W.D. Tenn. Feb. 10, 2023).

[3] The one Plaintiff who originally filed in Georgia voluntarily dismissed "all claims asserted against" TPG. *See Lawrence Berger v. Exactech, Inc., et al.*, Case No. 1:22-cv-06449-NGG-MMH, ECF 33 (Jan. 26, 2023) (Order). ***As a result, Georgia is no longer relevant to the choice-of-law analysis.***

2

- *All* of these jurisdictions require, to quote Plaintiffs, the same "***two consistent elements***": (1) "domination and control" to (2) commit "fraud[] … or otherwise unjust acts." Opp. 13.

- *All* of these jurisdictions apply a multi-factor test to evaluate domination and control that looks to the *same* elements TPG identified in its brief. *Compare* Br. 10 *with* App'x C (collecting cases, including those from Plaintiffs' brief, weighing the same factors).

- *All* of the jurisdictions require Plaintiffs to plead "[s]ome combination of" the domination and control factors since "no single factor" is sufficient. Br. 10; App'x C (collecting cases).

### C.  Subsidiaries' States Of Incorporation Implicate Delaware And Florida Law

In an attempt to avoid Delaware law, Plaintiffs argue that because one subsidiary, Exactech, is incorporated in Florida, only Florida law applies. Opp. 11-12. But Exactech is not the only subsidiary at issue. Plaintiffs cannot jump from Exactech to TPG, Inc.—they must pierce each corporate entity's veil up the "chain." *Erben v. Raymond James Eur. Holdings, Inc.*, 2012 WL 12874586, at *4 (M.D. Fla. Apr. 10, 2012).[4]

The other subsidiaries in the chain—including, but not limited to, Osteon Intermediate Holdings II, Inc. and Osteon Holding, Inc.—are incorporated in Delaware (AC ¶¶ 32, 35), making Delaware law applicable. *Tomlinson v. Combined Underwriters Life Ins. Co.*, 2009 WL 2601940, at *1 (N.D. Okla. Aug. 21, 2009) (holding claims to "pierce the corporate veils of [subsidiaries incorporated in Colorado] are governed by Colorado law" and the same claim against "[a Texas subsidiary] is governed by Texas law"). Plaintiffs offer no on-point authority otherwise.[5]

---

[4]   Nothing in *Taser Int'l, Inc. v. Phazzer Elecs., Inc.*, 2023 WL 2523447 (M.D. Fla. Mar. 14, 2023) holds otherwise. *Taser* does not address the stacked corporate structure at issue here. Opp. at 23 (explaining *Taser* dealt with whether a "family patriarch" "could be liable … despite not officially owning the company").

[5]   Plaintiffs argue that Delaware law doesn't apply yet cite a Delaware case to argue the veil need not be pierced at every level. Opp. at 23 (citing *In re Maxus Energy Corp.*, 641 B.R. 467 (Bankr. D. Del. Jun. 22, 2022)). In *In re Maxus*, the court found that "sequential veil piercing was not required ***under the facts and theories of this case***" where there was enough fodder to survive summary judgment including, for example, that the grandparent entity "transferred or sold" the subsidiary's assets. *Id*. 552, 557. No such allegations exist here. The general rule continues to stand: "when dealing with multiple layers of parents and subsidiaries, the corporate veil likely ***must be pierced at each level***." *In re Alta Mesa Res., Inc*., 2022 WL 7750353, at *6 (Bankr. S.D. Tex. Oct. 13, 2022) (Delaware law).

3

As noted above, Plaintiffs' fight against Delaware law is a bridge to nowhere. They admit Delaware law is not a "good thing" for their claims. Br. Ex. 5 at 11:6-7. Neither is any other state's law; their veil-piercing claims fail regardless. *See supra* § I.B; Rev. App'x A; App'x C.

### D. Plaintiffs' Cursory Treatment Of The Veil-Piercing Factors Highlights Their Failure To Plead Exclusive Domination And Control

Plaintiffs save their substantive defense of their veil piercing claim for the last third of their brief. Opp. 17-20. For good reason. The law requires Plaintiffs to plead "some combination" of the relevant factors, *Verdantus*, 2022 WL 611274, at *2-3 n.14, but they fail to plead even a single one applies. Plaintiffs cannot dispute these basic truths, which are fatal to their veil-piercing claim:

- **Typical Private Equity Relationship.** Plaintiffs do not dispute that TPG has an ownership stake in 300-plus portfolio companies and that its relationship with Exactech is no different than that between any PE fund and its portfolio company. *Compare* Br. 3-4 *with* Opp.

- **Fully Capitalized.** Exactech was infused with $737 million in the merger transaction and has "received substantial revenue" at "all" "relevant" times. Opp. 4; AC ¶¶ 21, 102.

- **Corporate Formalities.** Both Exactech and TPG maintain corporate formalities: they have different headquarters, management teams, and purposes. Br. 5-6; AC ¶¶ 18, 24, 154.

- **Operating Company.** Exactech is not a façade: it is an operating company that conducted business "at all times relevant," both pre- and post-merger. *See, e.g.*, AC ¶¶ 20-23.

- **No Fraud or Injustice.** TPG never siphoned off funds from Exactech so that Plaintiffs have no "hope of being made whole" as they claim. Opp. 22.

### 1. Factors #1, #2, and #4: No Allegations That TPG Left Exactech Undercapitalized And Insolvent By Siphoning Exactech's Funds.

Under any relevant state's law, Plaintiffs must allege specific facts showing that TPG undercapitalized or left Exactech insolvent by "***funnel[ing] monies up***" from Exactech to itself. *Verdantus*, 2022 WL 611274, at *3. Plaintiffs' own case makes this point: a parent only "dominate[s] and control[s]" where it "siphon[ed] … assets for [] personal use." *Taser*, 2023 WL 2523447, at *2; *see also* App'x C (collecting cases). Plaintiffs' allegations come nowhere close:

- Exactech's **recall** caused some "financial difficulty," Opp. 20;

4

- Exactech's SEC filings "**prior to being acquired**" routinely disclaimed that if "[its] inventory becomes obsolete, it would have a material adverse effect," *id.* 5, 19; and;

- **This lawsuit** may lead to a payout of $200 million before insurance coverage, *id.* 20.

None of these facts establish that "TPG left Exactech undercapitalized and on the brink of insolvency." Opp. 20.[6] Especially so in light of Plaintiffs' allegation that "TPG purchased Exactech for $737 million." *Id*. 25. Plaintiffs try instead to flip the standard—suggesting TPG had an affirmative duty to flood money *in* during the recall to avoid veil-piercing. *Id*. 20. Tellingly, Plaintiffs cite *no* case supporting their backward theory. *See id*. And in fact, the law says the opposite: there is "hardly any question" that a parent has "*no* legal obligation to assure [its subsidiary] had adequate [funding] to meet the projected … claims of [tort] victims." *In re Hillsborough Holdings Corp*., 166 B.R. 461, 471 (Bankr. M.D. Fla. 1994), *aff'd*, 176 B.R. 223 (M.D. Fla. 1994) (cited by Plaintiffs). Pleadings to that effect are "certainly insufficient" to "warrant piercing the corporate veil." *Id*. 470-71. Plaintiffs fail factors 1, 2, and 4 accordingly.

    2.    **Factor #3: No Allegations That TPG And Exactech Ignored Corporate Formalities.**

Plaintiffs similarly have not alleged a lack of corporate formalities. On this factor, courts (in all relevant jurisdictions Plaintiffs focus on, *see* App'x C) consider whether the parent and subsidiary were "headquartered at the same address," had "significantly overlapping personnel," or refer to themselves as "one combined enterprise." Br. 13. Plaintiffs do not dispute that Exactech and TPG maintained different principal places of business (*see generally* Opp.), or that TPG distinguishes itself from its 300-plus "portfolio companies" including Exactech (*id*. 17-20).

Plaintiffs make much of their allegation that "TPG hand selected" certain employees to sit on Exactech's board, including TPG's "highest-ranking members." *Id*. 4. No matter. Even

---

[6] This new claim is not alleged in the Amended Complaint and the Court should disregard it as Plaintiffs are "not entitled to amend" pleadings through briefing. *Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998).

"identical personnel" between entities "does not by itself warrant ignoring the corporate form." *Nieves v. Insight Bldg. Co., LLC*, 2020 WL 4463425, at *8 (Del. Ch. Aug. 4, 2020); App'x C (collecting cases). What's more, Plaintiffs do not dispute that of the *1,100* people TPG employs, they allege just *six* have served as an Exactech officer or director. Opp. 4-5; AC ¶ 154. Nor do they dispute that TPG advisors fill a *minority* of Exactech's board. Opp. 4; AC ¶ 155. Plaintiffs' Amended Complaint does not satisfy Factor 3.

3. **Factor #5: No Allegations That Exactech Is A Façade.**

Plaintiffs agree that "a parent company *is permitted to be directly involved with a subsidiary*" without risking veil piercing. Opp. 19. Plaintiffs' attempt to argue TPG was not just involved, but dominated control, falls flat. **First**, Plaintiffs contend that TPG imposed a policy "whereby board level decisions did not require unanimous consent" (Opp. 18) by way of TPG's "customary management agreement" (AC ¶ 126). For starters, the Supreme Court recognizes this sort of involvement as "acceptable." *United States v. Bestfoods*, 524 U.S. 51, 69 (1998); *see also Riad v. Porsche Cars N. Am., Inc.*, 2023 WL 2227692, at *5 (E.D. Pa. Feb. 24, 2023) (dismissing claim where the parent had "control over the [subsidiary's] corporate structure" and officer "duties and responsibilities" by agreement). What is more, that the agreement is "customary" highlights that this is a typical private equity to portfolio company relationship—nothing more.

**Second**, Plaintiffs assert that TPG "directed" and "controlled" the recall and its timing. Opp. 19; AC ¶¶ 157, 161, 163, 168. But this is of no moment: the veil cannot be pierced even if TPG was "directly involved" in the recall. *Classic Soft Trim, Inc. v. Albert*, 2020 WL 6734402, at *4-5 (M.D. Fla. Aug. 13, 2020) (dismissing alter ego claim as a parent's "direct involve[ment] in the activities of its subsidiaries" is "consistent with the parent's investor status"); *Guinan v. A.I. duPont Hosp. for Child.*, 597 F. Supp. 2d 485, 516 (E.D. Pa. 2009), *rev'd on other grounds*, 393 F. App'x 884 (3d Cir. 2010) (holding allegations that the parent "*directed, participated in, and*

6

*controlled*" the distribution of defective medical devices were not sufficient).[7] What is more, these allegations include *no* specific facts and are entitled no weight. *Miami Prods. & Chem. Co. v. Olin Corp.*, 449 F. Supp. 3d 136, 174 (W.D.N.Y. 2020).

*Last*, Plaintiffs claim that TPG "comingled [] liabilities with Exactech" by way of a vague reference to a "$235 million loan" that "Exactech became responsible for." Opp. 18, 25. This loan is not mentioned anywhere in the Amended Complaint and Plaintiffs provide zero factual support for it. Their assertion that this loan is a "comingling [of] funds and liabilities" is wrong and carries no weight. *See First Bank of Delaware v. LeanSpa LLC*, 2012 WL 924877, at *2 (D. Del. Mar. 19, 2012) (dismissing claim without "more than labels and conclusions").[8]

### E. No Allegations Of Corporate Form's Use For Injustice Or Unfairness

In addition to the requisite domination and control, Plaintiffs must allege that the corporate structure caused fraud or injustice. Plaintiffs cannot meet this high bar. In fact, Plaintiffs' allegations fall far short of the facts in the cases *they* cite for this necessary element. For example, in *Garcia v. Coffman*, the parent established a "treatment and diagnostic regime" the subsidiary "had no discretion to alter" and forced the subsidiary to use "inexperienced" doctors. 946 P.2d 216, 218 (N.M. Ct. App. 1997) (*see* Opp. 21). Nowhere do Plaintiffs allege that TPG required Exactech "to adhere" to, or denied Exactech "discretion to alter," the recall. Quite the contrary—they allege *Exactech* had plenty of say. *See* AC ¶ 9 ("*Exactech* quietly initiated a recall"); *id.* ¶ 619 ("*Exactech* recalled their" products). Plaintiffs' veil-piercing claim must be dismissed.

---

[7] Plaintiffs argue that the "Osteon Defendants were mere sham entities … created on the same day, lacked assets, shared officers and directors with TPG, and served as a funnel through which TPG's funds flowed to finance Exactech's acquisition." Opp. 17. But to pierce *Exactech*'s corporate veil, Plaintiffs must establish that *Exactech* was the sham entity. Plaintiffs have not pled *any* allegations to that end here.

[8] Plaintiffs also harp on the Merger Agreement, which gives "Parent"—*Osteon Holdings, Inc.*—"the opportunity to reasonably *participate in the defense or settlement* of any shareholder litigation against [Exactech] … relating to the Merger and the other transactions contemplated by this Agreement." Br. Ex. 2 § 6.05. This provision says nothing of *TPG Inc*. Nor does an "opportunity" to participate in a defense amount to assuming liabilities.

7

## II. PLAINTIFFS' SUCCESSOR LIABILITY THEORY REMAINS IMPLAUSIBLE

Plaintiffs spend less than a page defending their obviously inapplicable successor liability claim. Opp. 24-25. They argue TPG misunderstands their theory and that the TPG Defendants are successors to their "***prior corporate forms*** that were directly involved in the merger"—not successors to ***Exactech***. *Id*. That reconfiguration of their claim only removes it further from viability. Successor liability—which Plaintiffs do not dispute is "consistent across the states and federal courts" (Br. 21, *see* Opp. 24-25)—seeks to hold a new owner "vicariously liable for the alleged torts ***of [the company it purchased]***." *In re Welding*, 2010 WL 2403355, at *3, 7.

Here, the alleged tortfeasor is ***Exactech***, not any TPG Defendant's "prior corporate form." *See* AC. Whether Osteon Holdings, LP "became Defendant Osteon Holdings, Inc." (Opp. 24) is entirely irrelevant—neither is alleged to have committed any wrongdoing. TPG is not "seek[ing] to use these changes in corporate form as a defense" (Opp. 24)—it does not need to. Those changes do not weigh on whether any TPG Defendant assumed ***Exactech's*** liability.

Equally telling is what Plaintiffs do not dispute. Plaintiffs argue the Osteon Defendants are a "sham" or "mask" for TPG yet say ***nothing*** to address the many cases holding that the corporate stack structure and reverse triangular merger at issue here (and involving the Osteon Defendants) are commonly blessed by courts who find no successor liability in their wake. *See* Br. 24 (collecting cases). Plaintiffs' successor liability claims must be dismissed across the board.

## III. PLAINTIFFS' PROCEDURAL ARGUMENTS FAIL

Given Plaintiffs' weak allegations, they lead with three hyperbolized procedural hurdles. Opp. 7-8. Despite Plaintiffs' ***claim*** that these hurdles lead MDL courts to "routinely deny motions to dismiss" (*id.* 8), ***their cases*** had no trouble clearing them and ***granting*** such motions in part.[9]

---

9    *In re Trasylol Prods. Liab. Litig.*, 2009 WL 577726 (S.D. Fla. Mar. 5, 2009); *In re Paraquat Prods. Liab. Litig.*, 2023 WL 3948249 (S.D. Ill. June 12, 2023); *see also In re Samsung DLP Television Class Action Litig.*, 2009

8

Indeed, another MDL court took a choice-of-law analysis head on and then dismissed claims, finding courts "may properly determine choice-of-law issues at the pleading stage." *In re Land Rover LR3 Tire Wear Prods. Liab. Litig.*, 2011 WL 13225296, at *2 (C.D. Cal. Dec. 12, 2011).

*First*, Plaintiffs contend the choice-of-law inquiry is insurmountably fact intensive. Opp. 8. This concern is belied by the fact that Plaintiffs ***do not fundamentally dispute the state laws that apply***. *Id*. 11. Plaintiffs "analyze[d] the choice of law rules applicable to [] 18 states"—the *same* as Defendants. *Id*. 9. Not one of the fact questions Plaintiffs drum up (*id*.) gives rise to any additional state law's substantive application. In all events, the choice-of-law inquiry here is not "heavily fact intensive." *Id*. 8. It does not involve, *e.g.*, multiple agreements "about which [plaintiff] has only limited information," as was the case in *Bristol-Myers Squibb Co. v. Matrix Lab'ys Ltd.* 655 F. App'x 9, 13 (2d Cir. 2016). Opp. 10. All of the supposedly "complex[]" inquiries Plaintiffs identify (*id*. 8) require applying only very basic allegations to the law.

For example, determining each Plaintiff's transferring forum is simple.[10] For Plaintiffs who did not directly file in this MDL, the transferor forum is where they filed; for Plaintiffs who did, the transferor forum is the "Original District" identified in each Short Form Complaint. *See* Rev. App'x A n.2 (citing ECF No. 74). That Defendants "were required to make assumptions to determine" certain Plaintiffs' "Original District" (Opp. 9) because those Plaintiffs failed to fill out their Short Form Complaint properly does not render this an insurmountably "complex" inquiry. In those cases, TPG assumed the Plaintiffs' home state applied as other courts have done. *In re*

---

WL 3584352 (D.N.J. Oct. 27, 2009); *In re Allergan Biocell Textured Breast Implant Prods. Liab. Litig.*, 537 F. Supp. 3d 679 (D.N.J. 2021).

[10] Determining the state where the injury occurred is also simple. Plaintiffs criticize TPG for concluding that, where the choice-of-law outcome depends on "where [the] injury" occurred, the law of the state where Plaintiffs received their implants applies. Opp. 8-9. But another MDL court reached the same conclusion. *In re Biomet M2a Magnum Hip Implant Prods. Liab. Litig.*, 2019 WL 1077291, at *5 (N.D. Ind. Mar. 7, 2019) (applying, in an MDL case involving hip implant devices, the law of the "state in which the devices were implanted").

9

*Avandia Mktg., Sales Pracs. & Prods. Liab. Litig.*, 2012 WL 3205620, at *2 n.18 (E.D. Pa. Aug. 7, 2012) (considering "'direct filed' cases … as if they were filed in the Plaintiffs' home states").[11]

***Second***, Plaintiffs suggest an MDL court's "duty to respect each member case's individuality," *In re Paraquat Prods. Liab. Litig.*, 2023 WL 3948249, at *2 (S.D. Ill. June 12, 2023), means the Court ***must*** engage in "***case-specific*** motion practice." Opp. 10. Not so. Indeed, in *In re Paraquat*, the MDL court dismissed dozens of cases as treating each as "a stand-alone action" would "thwart[] the efficiency benefits of MDL consolidation." 2023 WL 3948249, at *2; *see also In re Welding* 2010 WL 2403355, at *1, 3, 8 (explaining a plaintiff's right to have "her particular" case heard "***[o]f course***" does not require case-specific motion practice in an MDL).[12]

***Finally***, Plaintiffs worry that future filings may lead to "continuous rounds of briefing." Opp. 10. But that is not grounds to avoid deciding TPG's motion now. Plaintiffs' own case shows the proper path forward: dismiss existing unmeritorious claims, and if they are re-raised by future claimants without new allegations that change the outcome, dismiss again. *In re Paraquat*, 2023 WL 3948249, at *1, *8 (dismissing claim across dozens of plaintiffs, then dismissing a later-filed claim with an admonition that "hopefully [this Order] make[s] clear, the Court is skeptical").

## IV.  CONCLUSION

For the reasons set forth in TPG's brief and herein, Plaintiffs' veil-piercing and successor liability claims should be dismissed with prejudice.

---

[11] Plaintiffs complain about "significant errors" in TPG's Appendix B. Opp. 8. Plaintiffs identified one error and four omissions across 160-plus complaints. Tellingly, these updates (which add only Pennsylvania law to the choice-of-law matrix) make ***no substantive difference***: Pennsylvania law leads to the same outcome. Rev. App'x A. Appendices A and B have also been updated to reflect the most up-to-date information on all cases against TPG consolidated into the MDL by July 24, 2023. *See id.*; *see also* Rev. App'x B. These cases add two states (Missouri and Wyoming) to the choice-of-law matrix. Rev. App'x A. Neither state's substantive law makes a difference to the veil-piercing and successor liability claims. Rev. App'x A. ***For the purposes of TPG's motion to dismiss, the Court should consider Rev. App'x A and Rev. App'x B to supersede their prior versions.***

[12] Plaintiffs also ask for "substantial leniency." Opp. 7. Plaintiffs cite no case offering leniency in an indirect liability context, *id.*, and their own case proves an MDL court may grapple with insufficient allegations at the pleading stage and dismiss where those allegations do not satisfy Rule 12, *see In re Paraquat*, 2023 WL 3948249, at *8.

10

Dated: July 28, 2023                                  Respectfully submitted,

By:  /s/ Jay P. Lefkowitz
  Jay P. Lefkowitz
  Mark Premo-Hopkins (*pro hac vice*)
  Christa Cottrell (*pro hac vice*)
  Cameron Ginder (*pro hac vice*)
  **KIRKLAND AND ELLIS LLP**
  300 North LaSalle Street
  Chicago, Illinois 60654
  +1 (312) 862-2000
  +1 (312) 862-2200
  jay.lefkowitz@kirkland.com
  mark.premohopkins@kirkland.com
  ccottrell@kirkland.com
  cameron.ginder@kirkland.com

  *Counsel for TPG Defendants*