**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**(BROOKLYN)**

| | |
|---|---|
| IN RE:  EXACTECH POLYETHYLENE ORTHOPEDIC PRODUCTS LIABILITY LITIGATION | Case No.:  1:22-md-03044-NGG-MMH |
| | District Judge Nicholas G. Garaufis<br>Magistrate Judge Marcia M. Henry |
| *This Document Relates to All Cases* | MDL No. 3044 |

## JOINT STATUS REPORT

Pursuant to the Court's Minute Entry & Order dated August 22, 2023 (Dkt. 398), and in anticipation of the October 12, 2023, Status Conference, Co-Lead Counsel for the Plaintiffs ("Plaintiffs"), the Exactech Defendants, and the TPG Defendants (collectively, the "Parties") jointly submit the following report regarding the status of discovery and the litigation generally.

### I.    Current Federal and State Court Case Count & State Court Coordination

There are currently 984 cases pending in or being transferred to this multidistrict litigation ("MDL"), 811 of which involve knee products, 164 of which involve hip products, and 9 of which involve ankle products. There are 327 state court cases pending in the Florida consolidated proceedings in the Eighth Judicial Circuit of Florida, Alachua County ("Florida MCL"), 233 of which involve knee products, 90 of which involve hip products, and 1 of which involves ankle products. There are 17 cases pending in state court in Cook County, Illinois which are the subject of a pending motion for coordination.  The Parties have identified an additional 23 cases pending in other state courts.[1]

---

[1] A list of all state court cases other than the cases pending in Florida is attached as Exhibit A.

The Parties continue to believe that discovery across federal and state court actions should be coordinated to the extent feasible and will continue to seek the assistance of the Court in accomplishing that goal.

### A. The Plaintiffs' Position on Coordination

Plaintiffs have worked extensively with Defendants in order to obtain a coordination order with regard to the Florida litigation. It has been Plaintiffs' position all along that, where feasible, coordination is preferred for efficiency and consistency. However, where there are issues that cannot be coordinated due to positions taken by Defendant that would deny the rights of litigants, Plaintiffs cannot and will not waive such rights for the sake of Defendants' workload.

Exactech insists on rehashing its position on coordination and invoking co-lead counsel's representation of Nancy Collum-Bradford yet again. *See* ECF 151 p. 2; ECF 193; ECF 347; Status Conference Tr., March 23, 2023, ECF 182 at p. 7-8; Exhibit B, Status Conf. Hrg. Tr. (Aug. 22, 2023) 39:10—40:24.  In response, Plaintiffs have informed the Court why it is not feasible to coordinate the *Collum-Bradford* matter that has been pending since 2019.  (ECF 371). However, Exactech fails to inform the Court that, with respect to coordination, the Discovery Special Master in granting Plaintiffs' Motion to Compel ruled that coordination "would cede away a right they now have in their case in San Joaquin County."  Recommended Ruling on Plaintiffs' Motion to Compel at 4:1-2.[2]  The Discovery Special Master further recognized "that as non-members of either the MDL group or the Florida group, the Plaintiffs have no way to argue to either Judge Garaufis or Keim in making their motions such as here, and further, as to that discovery ordered by either of those judges, Defendants have shown no means by which Plaintiffs will have access

---

[2] Plaintiffs can provide the Court with a copy of the Discovery Master's Recommended Ruling on Plaintiffs' Motion to Compel upon the Court's request.

to any of such." *Id*. 5:9-11.  The *Collum Bradford* trial date was extended to May 2025 following Plaintiffs filing a Motion to Compel due to Exactech's refusal to produce requested documents, which had been pending prior to the formation of the MDL.

### B.  The Exactech Defendants' Position on Coordination

The above statement has been included in this and prior Joint Status Reports, and the Exactech Defendants fully support and subscribe to the notion of discovery coordination.  But Plaintiffs' Co-Lead Counsel, Kirk Pope, continues to seek expansive, expensive, and duplicative discovery in one of his state court cases in San Joaquin County, California (the *Collum-Bradford* case), including pursuing a motion to compel against Exactech, despite the fact that the case has a 2025 trial date.  It continues to unnecessarily consume valuable time and resources from the Exactech Defendants.  Mr. Pope's refusal to coordinate, despite months of requests by Exactech and attempts to offer him accommodations and concessions to support coordination, runs contrary to this statement which is included in the Joint Status Report by agreement of the Parties.  In fact, the letter motion to compel that Mr. Pope filed with this Court on September 27, 2023 seeks various categories of documents but most notably (1) the *qui tam* documents; (2) foreign regulatory documents; and (3) "cloned discovery" from other cases that are also the subject of his motion to compel in the *Collum-Bradford* case in California.  It is not proper for Plaintiff's counsel to file the same motion in two separate courts in what amounts to forum shopping on discovery issues.  And as a further point of clarification, the Exactech Defendants note that the Special Master's finding referred to by Plaintiffs above is a *recommended ruling* that at this point is not binding and has neither been accepted nor adopted by the Court.  Exactech will be timely objecting to that recommendation since it is in many respects an inaccurate recitation of the events that transpired in that case.  Regarding the *Collum Bradford* plaintiffs' ability to be heard by the MDL Court,

their counsel is Co-Lead Counsel for the Plaintiffs in this MDL, and if their case was coordinated with the MDL, the benefit of which is jointly expressed above, Mr. Pope would certainly have the opportunity to be heard on their behalf. In fact, given Mr. Pope's position as Co-Lead Counsel in this MDL, it is difficult to imagine a state court litigant more advantageously positioned to coordinate his or her case than his client, Ms. Collum-Bradford.

We ask that the Court address the increasingly challenging situation of Plaintiffs' Co-Lead Counsel pursuing discovery in the MDL and a state court at the same time for the same materials and potentially thwarting the discovery orders entered by this MDL Court. If Co-Lead Counsel refuses to coordinate discovery in a related state court case without an imminent trial date, it sets a precedent that any plaintiffs' lawyer who disagrees with one of this Court's discovery rulings can and will simply file a state court action in a forum he or she deems more favorable in an attempt to secure discovery this Court deems improper. Such forum-shopping – particularly by leadership – threatens the very efficiencies and fairness that the MDL process and state-court coordination exists to prevent.

## II.  Bellwether Plan

On September 1, 2023, the parties in the Florida MCL submitted a Revised Joint Bellwether Plan and supporting brief to Judge Keim. Plaintiffs' Lead Counsel and the Exactech Defendants sent this Court a copy of the Revised Joint Bellwether Plan and supporting brief on September 5, 2023. (Dkt. 414.) On September 27, 2023, Judge Keim held an in-person hearing in Gainesville, Florida regarding the Revised Joint Bellwether Plan. After hearing oral argument, Judge Keim accepted the Revised Joint Bellwether Plan. An Order will be entered shortly. The Parties now jointly request that the MDL Court accept the Revised Joint Bellwether Plan which was submitted to the Court on September 5, 2023 (Dkt. 414).

### III. Process for Submission of Discovery Disputes

#### A. The Plaintiffs' Position

Plaintiffs have utilized E.D.N.Y. Local Civil Rule 37.3 to raise proper discovery disputes and will continue to do so should it become necessary.

#### B. The Exactech Defendants' Position

At the outset, the Exactech Defendants suggest that the Joint Status Report is for the purpose of providing the Court with brief updates and issue identification, not to raise discovery issues for the first time or present discovery arguments supported by legal authority. The Court has a separate procedure for fairly and consistently resolving discovery disputes (*see* Joint Local Rules, S.D.N.Y. and E.D.N.Y., Local Civil Rule 37.3). The Exactech Defendants believe that it is neither productive nor consistent with the spirit of discovery to use the Joint Status Report as an opportunity to air purported discovery grievances for the first time and bypass the Court's regular procedures for dealing with discovery motions.  Yet the Personal Injury Plaintiffs continue to make a choice between following this Court's regular procedure (which calls for meeting and conferring *in good faith*) or blatantly disregarding this Court's regular procedure. The Plaintiffs have chosen the latter, again.   In this status report, the Personal Injury Plaintiffs raise issues for the first time without meeting and conferring *in good faith*, and they present issues that essentially amount to a motion to compel without following the dictates of Local Rule 37.3, all purportedly to paint Exactech in an unfavorable light with the Court.  Dealing with so-called discovery disputes in this manner has made the negotiation and drafting of these Joint Status Reports needlessly arduous, and the tone of these Joint Status Reports is beginning to chill otherwise productive collaboration and cooperation in this litigation. Nevertheless, the Exactech Defendants must address, concisely, Plaintiffs' positions stated below.

IV.   **Discovery from the Exactech Defendants**

A.      **The Plaintiffs' Position**

1.      **Non-Compliance with Court Order Granting Plaintiffs' Motion to Compel**

The original Discovery Case Management Order Governing Master Discovery ("Discovery CMO") required Exactech to make its initial production of the 10 [now 12] agreed upon custodial files by August 18, 2023. *See* ECF 291 at B(10). The Parties were to agree upon the final list of Exactech custodians by September 1, 2023. *Id*. at B(11).

For several months Exactech disregarded the ESI Order's search term provisions and refused to provide any analysis regarding the number of responsive vs. unresponsive documents that a given search term hit on that Exactech had objected to. *See* ECF 88 at p. 4-5. As a result, Plaintiffs could not engage in productive negotiations to modify search terms. On June 27, more than two months after agreeing to produce a Hit Report, and three days before the Court's deadline to finalize search terms, Exactech produced a Hit Report that indicated that 123,321 unique documents contain Plaintiffs' search terms in the custodial email files collected. Exactech refused to provide an analysis regarding the number of responsive vs. unresponsive documents. Accordingly, Plaintiffs submitted a discovery dispute letter on July 21, 2023. (ECF 371). Plaintiffs requested the Court "order Exactech to produce documents that are responsive to Plaintiffs' revised search terms," in other words, compel documents that hit or contained (responded to) Plaintiffs' search terms as reflected in the Hit Report.  ECF 371 at 3.

Exactech did not produce any documents on the August 18, 2023 Court deadline. At the August 22, 2023 hearing, Exactech's counsel asserted that the 123,321 unique documents that Plaintiffs' search terms hit on had not been fully reviewed other than a small sampling despite the fact that they were collected by Exactech in April. *See* Exhibit B, Status Conf. Hrg. Tr. (Aug. 22,

2023) 23:3-4. When Exactech's counsel requested a rolling production, Your Honor reminded him that he had already missed that date and requested for Exactech to provide "a finite time period" "to produce these documents. *Id.* at 23:11-17. Exactech's counsel asked for 30 days, and based on these representations, the Court set a September 22 deadline to produce the 123,321 non-privileged documents. The Court also modified the deadline to finalize custodians to October 6, 2023 so Plaintiffs could have two weeks to review the 123,321 documents to determine which additional custodians need to be searched. *Id.* at 25:21-25.

Following the August 22, 2023 hearing, the Court entered an Order stating in relevant part:

> ORDERED that Plaintiffs' Motion to Compel at ECF No. 371 is **granted.** By **September 22, 2023,** the Exactech Defendants shall produce the 123,321 non-privileged documents from 12 agreed-upon custodians that are responsive to Plaintiffs' revised search terms, as listed in ECF No. 371-5. (*See* ECF No. 392 at 11.)

ECF 399 (emphasis provided). At no point during the hearing or in the Court's Order did the Court permit Exactech to review the 123,321 documents for relevancy or withhold documents for relevancy.

As noted in Plaintiffs' discovery dispute letter dated September 27, 2023 (ECF 434), Exactech failed to comply with the Court's Order requiring it to produce 123,321 non-privileged documents from the 12 agreed-upon custodians on September 22, and did not seek relief from the Court. On September 22, Exactech produced 17,269 documents. On October 2, Exactech produced approximately 38,420 documents. Exactech has represented herein that it withheld documents from the 123,321 based on its determination that withheld documents are "simply not responsive to Plaintiffs' requests."[3] Plaintiffs would submit that such a determination and refusal

---

[3] To the extent that Exactech is attempting to graft a term of art used in TAR 2.0 to excuse production as ordered, Plaintiffs submit that responsiveness is even broader than relevance, to which this Court has overruled Defendants' objections sounding in same.

to produce is contrary to this Court's Order overruling Exactech's objections as to relevance. Exactech did not produce a privilege log so Plaintiffs are unable to ascertain how many documents were withheld for privilege. If Exactech withheld documents for relevance, the documents Exactech unilaterally determined were irrelevant must be produced.

As the Court may remember, Exactech collected the 12 custodial email files in April 2023. The only production to Plaintiffs from these files was five months later on September 22 after being compelled by the Court. Initial analytics show that Exactech did not include any email attachments in this production and as required by the ESI Order. Plaintiffs are actively investigating the extent and scope of the attachment issue with their eDiscovery vendor. Plaintiffs will discuss this issue with Exactech and provide an update to the Court at the Status Conference.

Because of Exactech's failure to meet the Court's September 22 deadline and comply with the ESI Order, Plaintiffs are unable to review the documents with their attachments, impacting Plaintiffs ability to take certain depositions.  Plaintiffs request the Court to extend the custodian deadline to two weeks after Exactech fully completes its production of the 123,321 documents.

**2.    Motion to Compel Foreign Regulatory, Other Similar Litigation, and Exactech-TPG Merger Due Diligence Documents**

As outlined in Plaintiffs' discovery dispute letter dated September 27, 2023 (ECF 434), Plaintiffs seek an order overruling Exactech's objections to three categories of requested information (1) foreign regulatory, (2) other similar litigation, and (3) Exactech-TPG merger due diligence documents. The requested information bears directly on the products, claims, and defenses in the MDL, especially Exactech's notice and knowledge regarding the risk the products posed and Exactech's conduct regarding what it did with that information and when it made certain decisions. Exactech's responded on October 4, 2023.

3.    **TAR 2.0 Protocol**

The Court directed the Parties to submit a Joint Status Report "regarding progress with discovery and the litigation generally".  *See* ECF 398.  Additionally, the Court ordered that the Parties agree upon a proposed TAR 2.0 protocol for production of the remaining custodian files by September 22.  *See* ECF 400 at B(11)(a). The Parties agreed to extend the deadline to September 29 to narrow disputed issues. On September 29, the ESI Liaisons for Exactech and Plaintiffs decided to submit the remaining issue to the Court via the Joint Status Report. Specifically, it was further agreed that the Parties would attach their respective proposed TAR protocols.  Plaintiffs are confused as to Defendants' grievance. Plaintiffs will be prepared to submit these issues to the Court under E.D.N.Y. Local Civil Rule 37.3 should the Court so instruct.

The Parties have a remaining issue regarding Plaintiffs' participation in the mutual determination of responsiveness for purposes of guiding TAR 2.0 and receipt of a log of documents withheld from that review of the ESTIMATION SAMPLE and VALIDATION SAMPLE.

Plaintiffs' Proposed TAR 2.0 Protocol is attached hereto as Exhibit C. In dispute is the highlighted language in Sections 4(b)(ii) – (iii):

> ii.    Following this review of the ESTIMATION SAMPLE, the Exactech Defendants agree to make available to Plaintiffs the non-privileged documents coded as non-responsive in the ESTIMATION SAMPLE to be viewable in the DISCO platform. For any documents withheld as privileged, the Exactech Defendants will provide to Plaintiffs a log of the documents withheld for privilege that will allow for the identification of the subject matter, date, persons associated with the document, and basis for privilege within 30 days of making the

9

ESTIMATION SAMPLE documents available for review. Should a disagreement arise regarding the responsiveness of certain documents within the sample, the Parties will meet and confer to resolve the disagreement.

iii.      PREVALENCE CALCULATION. The Exactech Defendants will calculate the estimated PREVALENCE using the ESTIMATION SAMPLE after completing the process described in Section 4(b)(II). PREVALENCE will be calculated by dividing the number of responsive documents by the total number of documents in the Estimation sample.

Also in dispute is the highlighted language in Section 4(d)(vi):

For any documents so withheld, the Exactech Defendants will provide to Plaintiffs a log of the withheld documents that will allow for the identification of the subject matter, date, persons associated with the document, and basis for protection beyond that of the Court's Protective Order within 30 days of making the VALIDATION SAMPLE documents available for review.

As agreed in the Proposed TAR 2.0 Protocol, the ESTIMATION SAMPLE is "[a] random sample of documents from the TAR REVIEW SET that reviewers code and the results are used to estimate the number of responsive documents ("**PREVALENCE**") within the TAR REVIEW SET, at a 95% confidence level plus or minus a 5% margin of error." THE PREVALENCE, in turn, is used in the calculations to determine when to stop the document production, known as the RECALL VALUE. Based on the confidence level and margin of error in the Protocol, the ESTIMATION SAMPLE will be composed of 394 documents.

Exactech opposes allowing Plaintiffs to review the small number of non-privileged documents coded as Non-Responsive in the ESTIMATION SAMPLE by Exactech. Plaintiffs' understand Exactech's position to be that (1) Plaintiffs cannot dictate how Defendants conduct their document review, (2) that such involvement by Plaintiffs is not allowed in manual review (i.e. linear or traditional document review) and should not be allowed here, and (3) Exactech has already agreed to allow Plaintiffs to view some documents after the fact, during the VALIDATION TEST stage once the RECALL VALUE has been reached at the end of review and this process, and contends this is sufficient to identify any issues with  the TAR REVIEW and concepts of responsiveness.

Plaintiffs disagree with Exactech's position. What is or is not responsive is a core issue in any litigation. Even without considering the technical aspects of TAR, it is easier to litigate disagreements about the fundamental issue of responsiveness at the beginning of the process rather than the end. This is especially true when the TAR process and its ability to perpetuate issues throughout the review of millions of pages of documents is considered. Plaintiffs' role in reviewing non-responsive documents at the end during the VALIDATION TEST stage, while a necessary quality control step, is insufficient protection against an inefficient and flawed document production process.

Should an issue regarding responsiveness be discovered at the end of production, extensive remedial measures with significant time, money and resource costs would be required to address the issue. It would put into jeopardy all litigation work completed prior to the discovery of the dispute, potentially requiring that months of work, including depositions, be repeated.  In other words, an after-the-fact dispute over the scope of what is responsive could derail the Court's case schedule even more than it already has been.

The alternative proposed by Plaintiffs, while not a total guard against production disputes, is an efficient method in terms of both time and cost to help ensure an efficient and productive production. There is virtually no risk of prejudice to Exactech in Plaintiffs' proposal, as Exactech will have already removed the privileged documents, and the small number of documents for Plaintiffs to review will not delay Exactech's production efforts. The risks and balances of the Parties' proposed processes weigh in favor of Plaintiffs' proposal.

Furthermore, Exactech's references to linear review or the standard document production process are flawed. First, TAR is intrinsically a different approach to discovery.  Courts have encouraged transparency and cooperation in the TAR process,[4] ordering plaintiff involvement to avoid unilateral imposition of a TAR process.[5]  It is also not unprecedented for Plaintiffs to review non-privileged documents in the initial stages of a TAR process.[6] Second, Exactech is incorrect; plaintiffs do, in fact, have a say in what is deemed responsive in manual document review. Whether it is through the request for production or negotiation of search terms, plaintiffs always have a role in defining what is "responsive" in a given litigation. For the custodial documents to which TAR will be applied in this case, there is no such substantive metric against which the documents will

---

[4] *See In re Valsartan, Losartan, & Irbesartan Prods. Liab. Litig.*, 337 FRD 610, 622 [DNJ 2020])("A long line of cases holds that **TAR** requires, "an unprecedented degree of transparency and cooperation among counsel in the review and production of ESI responsive to discovery requests.")

[5] *Id.* ("The Court will not endorse a **TAR** protocol that was unilaterally adopted by a producing party without any input from the requesting party.")

[6] *See, e.g.*, *In Re 3M Combat Arms Earplug Prods. Liab. Litig.*, MDL NO. 2885, Pretrial Order No. 12 Protocol Relating to Use of Technology Assisted Review ("TAR Protocol"), ECF. 472 (N.D. Fl., July 1, 2019); *In Re: Volkswagen "Clean Diesel" Mktg, Sales Practices and Prods Liab. Lit.,* MDL No. 2672, Stipulation and Order: Protocol Relating to Use of Technology Assisted Review by the Volkswagen Defendants ("TAR PROTOCOL"), ECF 2173 (N.D. Calif., November 7, 2016).

be measured. Exactech's proposed process ensures that they alone will unilaterally determine what is "responsive" for those custodial documents until the end of production.

For these reasons, Plaintiffs' proposed protocol with the included Plaintiff review of ESTIMATION SAMPLE documents is the most efficient process for a productive review, particularly in light of the production issues to date in this litigation. As such, Plaintiffs respectfully request that Plaintiffs' Proposed TAR 2.0 Protocol, attached as Exhibit _C_ be adopted and ordered as the TAR 2.0 Protocol in this litigation.

### 4.      Substantial Completion of Non-Custodial Document Production

The Discovery CMO has an October 3, 2023 deadline for Exactech to have substantially completed its non-custodial document production. Exactech stated it could meet this deadline at the August 22, 2023 hearing. *See* Exhibit B, Status Conf. Hrg. Tr. (Aug. 22, 2023) 26:16—27:8. We are *status quo ante*. To the extent that Exactech is taking the new position that all responsive non-custodial documents have been produced, which seems at odds with statements made by Exactech during the August 22 hearing, the Parties need to finalize positions.

### 5.   30(b)(6) Depositions

Plaintiffs intend to serve 30(b)6) depositions notices to encompass several distinct subject areas.  Plaintiffs prefer to serve distinct notices for depositions they can move forward with now, in light of Exactech's incomplete and inadequate document production and to stay on track with the Court's Discovery CMO.  Plaintiffs are mindful that some courts require that all topics go in one omnibus notice. Plaintiffs are seeking agreement from the defense to proceed with separate notices, and defendants have indicated they want to see the universe of topics before agreeing to separate notices. The parties hope to have agreement on this prior to October 12. This section is to

simply alert the Court of this issue in the event the parties cannot reach consensus before the Status Conference.

### B. Exactech Defendants' Position

The Exactech Defendants have been working hard on all discovery fronts since the last time the Parties appeared before this Court. For example, in the MDL alone, the Exactech Defendants have accomplished the following:

- On August 15, 2023, the Exactech Defendants presented Exactech's Chief Information Officer to offer 30(b)(6) testimony on Electronically Stored Information at the Company. Plaintiffs deposed the witness for nearly 6 hours and the witness offered extensive and in-depth testimony on dozens of systems at Exactech.

- The Exactech Defendants have entertained nearly a dozen Meet and Confers with Plaintiffs on written discovery, Tar 2.0, and custodians in this MDL and many more with Plaintiffs' Co-Lead Counsel on many of the same discovery issues he is pursuing simultaneously in his case in state court in California.

- The Exactech Defendants initiated a Meet and Confer on custodians and offered additional custodians to Plaintiffs.  Plaintiffs have deferred further discussions on additional custodians until they complete the review of the documents that have been produced.

- In less than 30 days, the Exactech Defendants prepared a managed document review team and conducted a traditional linear document review of hundreds of thousands of pages of documents.

- On September 22, 2023, as a result of the Exactech Defendants traditional linear document review, the Exactech Defendants produced over 17,000 documents.

- On October 2, 2023, the Exactech Defendants produced an additional 38,000 documents.

- As of October 2, 2023, the Exactech Defendants have produced nearly 200,000 pages of documents.

- As of October 3, 2023, the Exactech Defendants have reviewed nearly 270,000 documents – more than **double** the number the Court asked Exactech to review for production at the last hearing.  Linear document review remains ongoing and rolling productions continue.

- The Exactech Defendants also prepared the first draft of a Tar 2.0 protocol and the Exactech Defendants have spent countless hours working with Exactech's vendor to address Plaintiffs excessive and unfounded concerns.

The Exactech Defendants have also been busy addressing discovery issues in non-coordinated cases across the country, including one such case led by MDL Co-Lead Counsel Kirk Pope. In the *Collum-Bradford* matter, the Exactech Defendants spent hours working to negotiate the production of select documents from the unrelated *qui tam* litigation in an attempt to secure coordination of the case with the MDL. Mr. Pope refused to negotiate a compromise and instead remained intransigent in his demand for production of all the *qui tam* documents, depositions, expert disclosures, written discovery exchanges, and more – the exact type of "cloned discovery" that is disfavored in federal courts for a host of reasons. He moved to compel and the California trial court referred the matter to a discovery referee. The Exactech Defendants spent the better of August and September briefing and re-briefing these issues in *Collum-Bradford*.

In Illinois, the Exactech Defendants answered nearly a dozen separate sets of written discovery. The lawyers there, like Mr. Pope in California (but who are not Co-Lead counsel in these proceedings), refuse to coordinate discovery with the MDL.

### 1. Exactech Did Not Violate the Court's Order.

Plaintiffs have completely mischaracterized this issue. The Court's August 23 order was clear – Exactech was to produce "the 123,321 non-privileged documents…that are responsive to Plaintiffs' revised search terms." ECF 399. Plaintiffs spend two pages of this Joint Status Report needlessly rehashing the argument that was made at the August 18 status conference, but they fail to point out the most critical part of the colloquy between the Court and counsel for Exactech:

MR. POPE: Your Honor, my understanding from the papers, I mean, again, reading where defendants are, these had been identified, they've been reviewed, so they should be fairly close to being able to be produced. I would suggest that those be produced within 15 days.

15

MR. GONZALEZ:  Your Honor, so let me correct that understanding.  Those documents have not been reviewed so one of the questions I have is I suspect that your order would not include documents that are privileged.

THE COURT:  Of course not.  I'm talking about non-privileged responsive documents.

MR. GONZALEZ:  So just to be clear, Your Honor, we would review the documents, we would have to review the documents for responsiveness or privilege, and then we could work to get those produced…I would ask Your Honor for at least 30 days.

\*        \*        \*

THE COURT:  So you would like 30 days to produce your 123,321 documents.

MR. GONZALEZ:  To review and produce, that's correct, Your Honor.

THE COURT:  And you have that, fine.

Not surprisingly, the review for responsiveness and privilege yielded a production of less than the 123,321 documents originally identified.  After the manual review of all 123,321 documents (which took dozens of hours to complete), the Exactech Defendants began with a production of over 17,000 documents on September 22 and an additional 38,000 documents on October 3, 2023. Plaintiffs' claims of non-compliance and violation of the Court's order are unfounded and unnecessary.

Plaintiffs state "If Exactech withheld documents for relevance, the documents Exactech unilaterally determined were irrelevant must be produced."  The documents that were not produced were simply not responsive to Plaintiffs' requests and therefore properly withheld. That is not surprising and was in fact predicted by Exactech during the many meet-and-confer calls on this issue.  Plaintiffs insisted on using broad search terms such as "wear" and "hip" without the use of terms and connectors and without tying those broad search terms to the actual medical devices at issue in this litigation.  Therefore, as expected, the search using Plaintiffs' search terms resulted in a collection of documents that were simply not at all related to the polyethylene implants at issue or the issues raised in Plaintiffs' Master Complaint.  For example, a document pertaining to "wear"

of a surgical instrument used to implant a shoulder replacement product would be non-responsive and not appropriate for production in this litigation.  But this is what Plaintiffs moved the court to compel – the production of all 123,321 documents. Now, Plaintiffs are trying to mischaracterize productions of documents from the 123,321 documents as a violation of the Court's order.  Instead, it is a direct result of the overbroad search terms which Plaintiffs selected which led to a large number of non-responsive and/or irrelevant documents, a result that is not surprising and which Exactech predicted.

The remaining set of unproduced documents fall into the following categories: (1) privileged; (2) foreign language documents; (3) and a smaller fraction of documents currently being manually reviewed for redaction. The Exactech Defendants have spent hundreds of hours collecting, processing, producing, and reviewing these documents and expect to be in a position to make further productions soon.

Additionally, Plaintiffs make the claim that "[i]nitial analytics show that Exactech did not include any email attachments in this production." As an initial matter, it is clear that Plaintiffs have not completed their review of the documents but nevertheless choose to raise this issue of "analytics."  Regardless, the Plaintiffs' complaint in this Joint Status Report regarding "analytics" **is the first time Plaintiffs have raised this particular issue with the Exactech Defendants.** Exactech submits that a Joint Status Report is not the appropriate vehicle for initiating an issue like this.  There has been no meet-and-confer, and in fact Plaintiffs do not even appear to understand whether there is an actual issue or not since they claim to be "actively investigating the extent and scope of the attachment issue." Let the Exactech Defendants be clear, there is no issue. The Plaintiffs continue to misunderstand and misconstrue these issues.

More important, despite at least four meet and confers and numerous separate phone calls and emails between Exactech's ESI liaison and Plaintiffs' ESI liaison counsel in the past two weeks, this alleged issue was not raised at all by Plaintiffs.  It was never mentioned.  Rather than ambushing Exactech with this issue in the Joint Status Report in an attempt to portray the company as non-compliant, this is the type of issue that could be easily resolved if there was an open and honest dialogue on discovery matters.  Exactech suggests that Plaintiffs engage in a good faith meet-and-confer process regarding this issue instead of burdening the Court.

### 2.  Plaintiffs' September 27, 2023 Discovery Dispute Letter

As this issue is being briefed pursuant to the Court's procedures, there is no need to discuss it in this Report.   However, the Exactech Defendants note that certain of the documents sought by Plaintiffs in their Discovery Dispute Letter are also the subject of a motion to compel filed by Co-Lead Plaintiffs' counsel Mr. Pope in his California state court case.  As noted above, it is improper for the Plaintiffs' Co-Lead in this MDL to forum shop on discovery issues like this.  The Exactech Defendants continue to advocate for coordination of Mr. Pope's California state court case with this MDL.

### 3.  TAR 2.0 Protocol

On September 29, 2023, pursuant to the Court's First Amended Discovery Schedule (Dkt. 400), Plaintiffs and the Exactech Defendants largely agreed upon a proposed TAR 2.0 protocol governing the review and production of the next set of custodians.

Nevertheless, Plaintiffs continue to exhibit a lack of trust in the TAR 2.0 process and are insisting on a "review of a limited set of non-privileged documents Exactech has coded as non-responsive to confirm the Parties have a mutual understanding of responsiveness."  It should be noted that Plaintiffs' drawn-out argument on this issue, set forth above, essentially amounts to a

motion to compel buried in a Joint Status Report, which is improper.  In fact, Plaintiffs have used four pages of this Report to make this argument which ignores the procedures set forth in Local Rule 37.3.  They should not be allowed to circumvent this Court's rules by improperly "loading up" the Joint Status Report with their disguised motion.

Further, Plaintiffs' argument attempts to turn the discovery process on its head.  The civil discovery process has always involved a determination of responsiveness made by the producing party.   The requesting party does not get both responsive and non-responsive documents in discovery.  That does not happen in a traditional linear review of documents, and it should not be permitted here.  If the Plaintiffs properly raise this issue (after exhausting good faith meet-and-confer discussions), then the Exactech Defendants intend to address it in more detail, including distinguishing the legal authority that Plaintiffs chose to include in this Report.  In any event,  the Exactech Defendant's proposed TAR 2.0 protocol is attached hereto as Exhibit D.

### 4.   Substantial Completion of Non-Custodial Document Production

The Exactech Defendants produced nearly 40,000 pages of "non-custodial documents" in December of last year, which Plaintiffs apparently did not review until sometime this past spring. Plaintiffs have not articulated nor identified nor met and conferred with the Exactech Defendants about any additional "non-custodial documents" that are either deficient or that Plaintiffs expect. As the Exactech Defendants outlined in their Responses to Plaintiffs' Requests to Produce, documents will be produced in ESI and through the Bellwether Fact Sheet Process. To the extent Plaintiffs believe productions of "non-custodial documents" remain deficient (or are not otherwise in dispute), the Exactech Defendants invite Plaintiffs to meet and confer regarding those alleged deficiencies.

### 5.  30(b)(6) Depositions

On September 27, Exactech's counsel spoke to Plaintiffs' counsel about this issue and invited Plaintiffs to submit their draft list of deposition topics.  To date, Plaintiffs have chosen not to provide any information on the areas in which they will seek deposition testimony.  It was communicated to Plaintiffs' counsel that it will take time to identify the appropriate witnesses for the topics Plaintiffs choose to designate, so it is in the interest of all parties that Plaintiffs provide those topics sooner rather than later.

### C.  Joint Positions

### 1.    Propounded Discovery

The Parties continue to meet and confer regarding Exactech's objections to Plaintiffs' requests for production and interrogatories and will raise those disputes with the Court if and when they are ripe.

### 2.    Ongoing Fact Sheets

Given that the Parties have a joint focus in the upcoming months in identifying appropriate bellwether cases and providing complete Plaintiff and Defense Fact sheets to enable each side to meaningfully select, strike and advocate appropriate bellwether selections, the Parties have agreed to a moratorium for a period of 90 days on production of PFS and DFS for any cases not eligible for bellwether selection if the Parties proposed bellwether plan is adopted.  This would include hip cases as well as any unrevised cases or bilateral knee cases filed after July 1, 2023 except for those unilateral knee cases where PFS were submitted by August 31, 2023 and are thus eligible for bellwether consideration per the proposed bellwether plan.  Now that Florida's related bellwether plan has been resolved, there are several hundred knee cases filed within that time period for the parties to focus on, while deferring the time consuming PFS and DFS process for later filed cases

until after the bellwether selection process is complete.  There would not be a moratorium on the Plaintiffs' Preliminary Disclosure Statements which provides the most essential information including implant and explant dates, product identification and the respective operative, radiology and pathology reports.

### 3.     Preservation Order Amendment Regarding Pathology

The Pathology and Medical Device Preservation Protocol, CMO 3 (ECF 268) has language that has been interpreted by some counsel in a manner that has resulted in numerous requests to the Hospital for Special Surgery ("HSS") that they deem very time consuming and disruptive to the pathology department. Some counsel interpreted the order to require them to ship the device and pathology from the hospital to a third-party medical storage company.  The parties are working out minor amendments to the order that should ameliorate the concerns of HSS and of the counsels' desire to be compliant with the Order. We expect to have an agreed upon amended order for submission at or before the October 12 conference.

### 4.     Exemplars

The Exactech Defendants have identified 131 GXL hip liners by model, lot and expiration date and over 7,000 knee and ankle devices that remain in Exactech's inventory.  The Parties continue to meet and confer to discuss the number and type of devices that will be preserved for testing and demonstrative purposes pursuant to an agreed upon protocol.

### D.  State Court Discovery Update.

On May 31, 2023, Plaintiffs in the *Collum-Bradford* case pending in California state court filed a motion to compel against the Exactech Defendants on 52 document requests. On July 11, 2023, after the motion was fully briefed, the presiding judge in *Collum-Bradford*, Hon. Erin Guy

Castillo, appointed a Special Discovery Master to hear Plaintiffs' motion. Judge Brian Van Camp was assigned as the Discovery Special Master and he issued his Ruling on October 2, 2023.

Plaintiffs in more than a dozen Cook County, Illinois cases have also served requests for production, interrogatories, and now discovery dispute letters on the Exactech Defendants. The most recent request was a "Consolidated Request to Produce Documents," requests which are largely duplicative of discovery requests served in this MDL, Florida, and California. On September 22, 2023, the Exactech Defendants amended written discovery requests in nearly a dozen of the Cook County requests.  MDL Plaintiffs are not privy to the positions being taken by the Illinois Plaintiffs and Defendant's representations are being made unilaterally.

### IV.    The TPG Defendants

A.    **Motion To Dismiss**: TPG Defendants served Plaintiffs with their motion to dismiss Plaintiffs' veil piercing and successor liability claims on June 9, 2023.  Plaintiffs served their opposition on July 14, 2023.  TPG Defendants filed their reply and all other briefing with the Court on July 28, 2023.  Plaintiffs moved for leave to file a sur-reply on August 3, 2023. TPG Defendants opposed on August 8, 2023.  TPG Defendants' motion is fully briefed.

B.    **Discovery**:  Magistrate Judge Henry granted TPG Defendants' motion to stay discovery on May 30, 2023 pending resolution of TPG Defendants' motion to dismiss.

*************************************

The Parties look forward to seeing Your Honors at the Status Conference scheduled for October 12, 2023.

Dated: October 5, 2023

Respectfully submitted,

**WEITZ & LUXENBERG, P.C.**

**FAEGRE DRINKER BIDDLE & REATH LLP**

*/s/ Ellen Relkin*
Ellen Relkin
700 Broadway
New York, NY 10003
T: 212-558-5500
F: 212-344-5461
erelkin@weitzlux.com

*/s/ Michael J. Kanute*
Michael J. Kanute
Sean J. Powell
320 South Canal Street, Suite 3300
Chicago, IL 60606
T: 312-212-6510
F: 312-569-3000
Mike.kanute@faegredrinker.com
Sean.powell@faegredrinker.com

**POPE McGLAMRY, P.C.**

*/s/ Kirk Pope*
N. Kirkland Pope
3391 Peachtree Road, NE
Suite 300
Atlanta, GA 30326
T:  404-523-7706
F:  404-524-1648
Kirkpope@pmkm.com

J. Stephen Bennett
110 West Berry Street, Suite 2400
Fort Wayne, IN 46802
T: 260-424-8000
F: 260-460-1700
Stephen.bennett@faegredrinker.com

Susan M. Sharko
600 Campus Drive
Florham Park, NJ 07932
T: 973-549-7000
F: 973-360-9831
Susan.sharko@faegredrinker.com

***Plaintiffs' Lead Counsel***

***Counsel for Defendants Exactech, Inc.
and Exactech U.S., Inc.***

**KIRKLAND & ELLIS LLP**

/s/ Jay P. Lefkowitz
Jay P. Lefkowitz
601 Lexington Avenue
New York, NY 10022
Telephone: +1 212 446 4800
Facsimile: +1 212 446 4900
lefkowitz@kirkland.com

Mark Premo-Hopkins
Christa C. Cottrell
Cameron Grinder

300 North LaSalle
Chicago, IL 60654
Telephone: +1 312 862 2000
Facsimile: +1 312 862 2200
mark.premohopkins@kirkland.com
ccottrell@kirkland.com
cameron.ginder@kirkland.com

**Counsel for TPG, Inc.,**
**Osteon Holdings, Inc., Osteon Merger Sub, Inc., and**
**Osteon Intermediate Holdings II, Inc.**