**Exhibit D**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
BROOKLYN DIVISION

……………………………………………X

| | |
|---|---|
| IN RE: EXACTECH POLYETHYLENE ORTHOPEDIC PRODUCTS LIABILITY LITIGATION | Case No.: 1:22-md-03044-NGG-MMH<br>MDL No. 3044<br>**[Proposed] STIPULATED PROTOCOL REGARDING THE USE OF TAR 2.0**<br><br>Judge Nicholas G. Garaufis<br>Magistrate Judge Marcia M. Henry |
| *This Document Applies To*:<br><br>*All Cases* | |

……………………………………………X

1. **PURPOSE**

Federal Rule of Civil Procedure 34 permits the Parties to specify the form or forms in which electronically stored information ("ESI") is to be produced. Pursuant to Rule 34, this TAR 2.0 Protocol shall govern the review of electronically stored information collected from custodians in this litigation. The parties each reserve the right to seek exceptions, amendments, or modifications to this Order from the Court for good cause shown.

2. **GENERAL**

Exactech, Inc. and Exactech U.S., Inc. (the "Exactech Defendants") together with Plaintiffs (collectively, the "Parties") have negotiated and hereby agree that following a TAR 2.0 workflow ("TAR REVIEW") aims to achieve the speedy, just, effective, and cost-effective resolution of the discovery process to identify relevant electronically stored information ("ESI") for subsequent rounds of custodian collections. This does not include documents already collected or to be collected as (1) responsive to requests for production, (2) as Readily Segregable Documents as defined in the ESI Protocol Order (Dkt. 88, at p. 7), or (3) by search terms. The Parties agree that the method used to identify potentially relevant documents should be reasonable and proportionate.

Unless explicitly stated, nothing in this Protocol supersedes any rights or obligations of the Parties under the existing to the ESI Protocol Order or Protective Orders.

3. **DEFINITIONS**

    a. **ESI UNIVERSE** – ESI collected from the custodians identified in **Appendix B** prior to any culling. The Parties will meet and confer regarding the treatment of documents later added to the TAR REVIEW SET if such documents are of a significantly different technical nature than the existing documents.

    b. **TAR REVIEW SET** – The review universe subject to TAR REVIEW less any documents within the review universe excluded from TAR REVIEW, which is the universe surviving the application of culling methodologies outlined in Section 4(a)(i)-(iii) on the ESI UNIVERSE. The Exactech Defendants will disclose to Plaintiffs the total number of documents in the TARREVIEW SET, as well if documents are added to or deleted from the TAR REVIEW SET later, the number of documents added or deleted, and the reason for the addition or deletion.

    c. **TAR REVIEW EXCLUSIONS** – Documents which are unsuitable for TAR REVIEW, but which are otherwise within the TAR REVIEW SET based on custodian restrictions. TAR REVIEW EXCLUSIONS shall be excluded from the processes applied to the TAR REVIEW SET and dispositioned by manual review, with the exception that TAR REVIEW EXCLUSION documents that are part of a TAR REVIEW family (for example, attachments to e-mails) shall be produced at the time the TAR REVIEW SET documents are produced. These EXCLUSIONS will include any documents lacking adequate text, or containing text in a quantity exceeding the TAR Review text limit of the eDiscovery platform, to the extent such a limit exists.

    d. **TAR 2.0** – Technology that enables machine training to predict how documents should be coded based on human review.  Human review and machine training occur

concurrently, and the machine re-trains and scores the document population based on the human reviewers' responsiveness coding. TAR 2.0 continuously presents additional high-scoring documents (i.e., most likely to be responsive) to the human reviewers during the review. All tag decisions are made by human intervention only; TAR 2.0 never applies a tag to a document by itself. The relevant software is cloud-based eDiscovery platform, DISCO eDiscovery.

  e. **ESTIMATION SAMPLE** – A random sample of documents from the TAR REVIEW SET that reviewers code and the results are used to estimate the number of responsive documents ("**PREVALENCE**") within the TAR REVIEW SET, at a 95% confidence level plus or minus a 5% margin of error.

  f. **DISCARD PILE** – The set of uncoded and not predicted responsive documents that remain from the TAR REVIEW SET, once the review has attained the TARGET RECALL (defined in Section 3(k) below).

  g. **VALIDATION TEST** – A test used to validate the accuracy of the TAR REVIEW. The goal of the VALIDATION TEST is to estimate the prevalence of responsive documents within the DISCARD PILE, and thereby calculate the recall as described herein.

  h. **VALIDATION SAMPLE** – The simple random sample taken from the DISCARD PILE to run the VALIDATION TEST.

  i. **CONFIDENCE LEVEL** – The probability that the responsiveness rate in the Sample Set will be representative of the responsiveness rate in the document set from which it is drawn.

  j. **CONFIDENCE INTERVAL** – The range of values represented by the results from a sample set. For example, a 95% +/- 5% confidence interval means that the true value will be within 5% of the value found in the sample set, with 95% confidence.

  k. **RECALL** – A measure of how many responsive documents the TAR

REVIEW model identified, compared to how many responsive documents exist in the TAR REVIEW SET.

   **l.**  **PREVALENCE** – An estimate of the total number of responsive documents in the TAR REVIEW SET, i.e., the percentage of responsive documents within the Estimation Sample.

**4.**  **CULLING AND TAR REVIEW PROCESS**

The parties agree to a review process as follows below:

   **a.**  **Culling and Identification of TAR REVIEW SET.**

The criteria used to establish the TAR REVIEW SET consists of the following culling methodologies, which will be applied to the ESI UNIVERSE prior to application of TAR REVIEW:

    **i.**  <u>Custodians to Be Searched</u>. Appendix A lists the first 12 Custodians referenced by the Court's Order in Dkt. 399 for which search terms will be used for the search and collection methodology. The Exactech Defendants will review the ESI for the custodians listed in APPENDIX B as agreed by the Parties or ordered by the Court, that will be subjected to the TAR REVIEW process.

    **ii.**  <u>Global De-duplication Across Custodians</u>. The Exactech Defendants will run global de-duplication across all custodians and include in the production an identification of all relevant custodians for a produced document (the "Custodians" field), as detailed in the ESI Protocol Order.

    **iii.**  <u>Threading</u>. The Exactech Defendants will run threading to reduce the e-mails in the TAR REVIEW SET to only the most inclusive e-mails and attachments as described in the ESI Protocol Order (Dkt. 88). Threading will be performed on the family-inclusive population after the steps listed in 4(a)(i) – 4(a)(ii) have been completed. Threading will be used only to exclude non-inclusive and duplicative e-mails and attachments. The ESI Protocol Order (Dkt. 88) requirements

4

regarding most inclusive email threads will apply.

    iv. <u>TAR REVIEW SET</u>. The universe (families) surviving the culling methodologies in the entirety of Section 4(a)(i)-(iii) will result in the final TAR REVIEW SET on which TAR REVIEW will be applied.

  b. **ESTIMATION SAMPLE.**

    i. <u>Parameters</u>. After the Exactech Defendants perform the culling in Sections 4(a)(i)-(ii), the Exactech Defendants will review an ESTIMATION SAMPLE. The Exactech Defendants will review the ESTIMATION SAMPLE and code these documents for responsiveness. Responsiveness coding will be document-level, based on a four-corners review (i.e., no family coding for responsiveness).

    ii. PREVALENCE CALCULATION. The Exactech Defendants will calculate the estimated PREVALENCE using the ESTIMATION SAMPLE. PREVALENCE will be calculated by dividing the number of responsive documents by the total number of documents in the Estimation sample.

    iii. The Exactech Defendants will disclose to Plaintiffs the metrics used to calculate the PREVALENCE.

  c. **Review of TAR REVIEW SET.**

    i. Once the ESI UNIVERSE is culled, the Exactech Defendants will begin reviewing documents in the TAR REVIEW SET following the TAR REVIEW process. Responsiveness coding will be document-level, based on a four-corners review (i.e., no family coding for responsiveness). The Exactech Defendants agree to perform quality control reviews during the TAR REVIEW.

    **d.    VALIDATION TEST.**

        i.    <u>PARAMETERS</u>. When the Exactech Defendants finalize their review and have coded enough documents to have met the TARGET RECALL. The Exactech Defendants will run a VALIDATION TEST in accordance with the ESI Protocol Order based on the following parameters:

        1)    Level of Confidence – 95%

        2)    A Margin of Error ("MOE") of plus or minus 2.5%

        3)    Validation Sample– Simple random sample drawn from the Discard Pile

        4)    Target Recall Rate: 75%

        ii.    The Exactech Defendants will review the Validation Sample and code the Validation Sample documents as Responsive or Not Responsive to see if responsive documents remain, which ultimately result in the elusion calculations. Responsiveness coding will be document-level, based on a four-corners review (i.e., no family coding for responsiveness).

        iii.    <u>Recall Calculation</u>. At the conclusion of the VALIDATION TEST, the Exactech Defendants will calculate the RECALL VALUE. The RECALL VALUE will be calculated by dividing the number of documents in the TAR REVIEW set coded as responsive by reviewers ("FOUND RESPONSIVE") by the sum of FOUND RESPONSIVE and the estimated number of responsive documents in the DISCARD PILE calculated by multiplying the number of documents in the DISCARD PILE by the percentage of documents in the Validation Sample coded as responsive in the VALIDATION TEST. The Parties agree that if the RECALL VALUE meets or exceeds the TARGET RECALL RATE set for in 4(d)(i)(4), then the review will be presumptively adequate and complete and the Exactech Defendants will stop the review and finalize its production. Responsive

documents coded during the VALIDATION TEST will be produced.

      iv. If the VALIDATION TEST has not resulted in meeting the TARGET RECALL RATE, the Exactech Defendants will resume their TAR REVIEW until the Exactech Defendants are confident that they have met their intended TARGET RECALL RATE. At such point, the Exactech Defendants will run a second VALIDATION TEST in accordance with Section 4(d)(i). At a minimum, Exactech Defendants will review 2,000 additional documents between the first and the second validation test.

      v. After the second VALIDATION TEST, if the recall is lower than the TARGET RECALL RATE, the Exactech Defendants will provide metrics regarding recall level pursuant to the ESI Protocol Order (Dkt. 88). The parties will then meet and confer to address the need for additional review considering burden, proportionality, and the needs of the case, but the baseline presumption is that the review will continue, and the steps described in (d) (iii)-(v) will be repeated, until the TARGET RECALL RATE is met or exceeded during a VALIDATION TEST.

      vi. At the conclusion of the review, the Exactech Defendants agree to make available to Plaintiffs the non-privileged, documents from the VALIDATION SAMPLE to be viewable in the Exactech Defendant's eDiscovery platform. The Exactech Defendants reserve the right to withhold from review within the VALIDATION SAMPLE any non-responsive privileged documents and any non-responsive documents with the potential to be protected by Rule 26(c) of the Federal Rules of Civil Procedure.  Should a disagreement arise regarding the responsiveness of certain documents within the sample, the parties will meet and confer to resolve the disagreement. In no way will such a disagreement require the Exactech Defendants to review the DISCARD PILE, as long as the Exactech Defendants met the recall threshold as noted in 4(d)(iii) - (v).

      vii. For the avoidance of any doubt, the Exactech Defendants will have no obligation to review any documents remaining in the DISCARD PILE once the review has

7

concluded in accordance with Sections 4(d)(i) – (v) above, subject to the negotiations between the parties described in this Protocol, the ESI Protocol Order, or as ordered by the Court.

    **5.** **MISCELLANEOUS**

        **a.** **Additional Considerations**

            i.    To the extent either Party can show that the TAR REVIEW is potentially systematically missing such documents, the Parties shall meet and confer regarding documents systematically left out of the review.

            ii.    Any responsive documents identified by the Defendants, subject to any privileges, protections or other basis exempting the document from discovery, will be produced, regardless of how the document was identified.

            iii.    The Parties understand that this is a cooperative process. The Parties undertake this process to obtain relevant documents as efficiently as can be achieved. The Parties should meet and confer as necessary to achieve those ends.

        **b.** **Variations and Modifications**

Variations from this Agreement may be required. Any practice or procedure set forth herein may be varied by agreement of the Parties, providing that such is confirmed in writing. In the event a Party determines that a variation or modification is appropriate or necessary to facilitate the timely and economical production of documents or ESI, the Party requesting modifications will notify the other Party of the variation or modification. Upon request by either Party, the Parties will meet and confer to address any issues in a reasonable and timely manner. No variations or modifications will be made without agreement or Court Order.

**Appendix A**
**Agreed Exactech Defendants' Custodians Referenced in the August 22, 2023 Court Order**
**(Dkt. 399)**

1. Alvarez, Luis
2. Angibaud, Laurent
3. Barnes, Braden
4. Catanzarite, Josh
5. Crader, Michael
6. Davisson, Dawn
7. Jacobson, Kate
8. Kusuma, Sharat (MD)
9. Loftus, Edmund
10. Sarabia*, Xavier
11. Sosa, Miguel
12. Thompson, Bruce

**Appendix B**
**Exactech Defendants' Custodians**

1. Miller, Gary
2. Petty, Bill
3. Phillips, Jody
4. Szabo, Steve