UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE: EXACTECH POLYETHYLENE ORTHOPEDIC PRODUCTS LIABILITY LITIGATION | **MEMORANDUM & ORDER** **22-MD-3044 (NGG) (MMH)** |

*This Document Relates to: All Cases Against*
*TPG, Inc.; Osteon Holdings, Inc.; Osteon Merger*
*Sub, Inc.; Osteon Intermediate Holdings II, Inc.*

NICHOLAS G. GARAUFIS, United States District Judge.

This consolidated products liability litigation concerns injuries caused by Defendant Exactech, Inc.'s ("Exactech") allegedly defective hip, knee, and ankle orthopedic implants. (*See generally* Amended Master Personal Injury Complaint ("Compl.") (Dkt. 164).) Plaintiffs are recipients of Exactech's implants and bring state tort claims against Exactech, its parent company, Osteon Holdings, Inc., and Osteon's affiliates, TPG Inc., Osteon Merger Sub Inc., and Osteon Intermediate Holdings II Inc. (collectively, excluding Exactech, "TPG Defendants"). Pursuant to the Judicial Panel on Multidistrict Litigation's October 7, 2022 Order, cases were assigned to this court for coordinated or consolidated proceedings. (*See* JPML Transfer Order (Dkt. 1) at 3.) For judicial efficiency, the court ordered Plaintiffs to file a master personal injury complaint that sets forth the factual and legal allegations common to all personal injury plaintiffs. (*See* Minute Entry for November 16, 2022 Status Conference.) Each individual plaintiff's short-form complaint incorporates by reference the common allegations in the master complaint and alleges individual circumstances and injuries. (*See* Compl. at 1-2.)

On June 9, 2023, TPG Defendants moved to dismiss Plaintiffs' claims for failure to state a claim under Fed. R. Civ. P. 12(b)(6). (Not. of Mot. to Dismiss (Dkt. 376).) The motion and Plaintiffs'

opposition were fully briefed on July 28, 2023. (*See* Mot. to Dismiss (Dkt. 376-1); Pl. Opp. to Mot. to Dismiss ("Pl. Opp.") (Dkt. 376-10).) TPG Defendants seek dismissal on the ground that Plaintiffs insufficiently pleaded "indirect liability, including corporate veil-piercing and successor liability theories" in their Amended Master Personal Injury Complaint ("Complaint"). (Not. of Mot. to Dismiss at 1; *see also* Compl. ¶ 15.)

For the following reasons TPG Defendants' motion to dismiss is GRANTED. TPG Defendants are DISMISSED from all personal injury actions filed from the states listed in this Order that named TPG, Inc. and its non-Exactech affiliates as defendants.

## I. BACKGROUND

Exactech, a medical device company, is a Florida corporation with its principal place of business in Gainesville, Florida.[1] (Compl. ¶ 18.) The company develops orthopedic implants and related surgical instruments and technologies. (*Id.* ¶ 68.) The claims in this litigation stem from Exactech's techniques for manufacturing and packaging the company's polyethylene implants. (*Id.* ¶¶ 1-8, 11, 14-15.) In short, because of the manufacturing and packaging processes that Exactech employed, Exactech's orthopedic implants were more reactive to the environment and susceptible to oxidative stress. (*Id.* ¶¶ 308, 422, 543, 603-614.) As a result, patients with the implants were at a higher risk of premature wear, which can cause device failure, implant loosening, and severe pain. (*Id.* ¶¶ 6, 333.) It can also trigger an immune response and corresponding swelling or tissue destruction. (*Id.* ¶¶ 308, 313-20, 363, 608.) When an insert fails, a patient may also be forced to undergo a "revision surgery" in

---

[1] The following facts are taken from the Amended Master Personal Injury Complaint, which the court accepts as true at the motion to dismiss stage. *See Louisiana Stadium & Exposition Dist. v. Fin. Guar. Ins. Co.*, 701 F.3d 39, 42-43 (2d Cir. 2012).

which the original device is removed and a replacement implant is inserted. (*Id.* ¶¶ 6, 11-12.)

On June 29, 2021, Exactech initiated a voluntary recall for certain hip implants based on premature wear. (*Id.* ¶¶ 9, 367.) Recalls of related devices followed shortly thereafter: in August 2021 Exactech recalled certain knee implants (*id.* ¶¶ 10, 497), and expanded the recall in February 2022 to "all knee and ankle arthroplasty polyethylene inserts packaged in non-conforming bags regardless of label or shelf life." (*Id.* ¶¶ 10, 507.) Finally, in August 2022, Exactech expanded the scope of the recall of hip implants to include all implants with a particular polyethylene liner. (*Id.* ¶¶ 9, 376.) The effect of the August 2021 recall alone "created significant financial difficulty for Exactech" and resulted in a $60 million cash burn in 2022. (*Id.* ¶ 164.)

TPG, Inc. is a publicly traded private equity company and owner, through its affiliates, of Exactech. (*Id.* ¶¶ 27, 102-07.) TPG, Inc. was created in January 2022 after its initial public offering; before then, and as relevant for its relationship with Exactech, its predecessor operated as TPG Capital, LP. (*Id.* ¶¶ 121-22.) As an "alternative asset manager," TPG, Inc. purchases companies and plays an active role in the creation of products and services in order to "build[] great companies." (*Id.* ¶¶ 28, 31.) In 2017, one of the companies that TPG Capital, LP sought to purchase and build into a great company was Exactech. (*Id.* ¶¶ 92-94, 98-99, 102-07.) At the time, Exactech was publicly traded and had been since 1996. (*Id.* ¶¶ 76, 102.)

In order to effectuate its purchase of Exactech, TPG Capital, LP created a host of wholly owned subsidiaries, including Osteon Holdings, LP, Osteon Merger Sub, Inc., and Osteon Intermediate Holdings II, Inc. (*Id.* ¶¶ 32-38, 98-99, 105-06.) Osteon Holdings, LP was formed as a subsidiary of TPG Partners VII, LP, a pre-existing wholly owned subsidiary of TPG Capital, and Osteon Merger Sub was created as a subsidiary of Osteon Holdings. (*Id.*

¶¶ 32-35, 38.) It is not clear what role Osteon Intermediate Holdings II played in the relevant acts or what its relationship is with the other TPG, Inc. affiliates, though the Complaint notes that Osteon Intermediate Holdings II and Exactech are the joint policyholders on a Certificate of Insurance.[2] (Compl. ¶ 153.)

TPG Capital, LP's purchase of Exactech through its affiliates closed on February 14, 2018, when Exactech merged with Osteon Merger Sub, Inc. and became a wholly owned subsidiary of Osteon Holdings, Inc. and an affiliate controlled by TPG Capital, LP.[3] (*Id.* ¶¶ 18, 94, 103, 107.) To consummate the merger, TPG Capital, LP, through its subsidiaries, paid holders of Exactech's common stock $49.25 per share, for a total of $737 million in equity financing. (*Id.* ¶ 102.)

After its purchase[4] of Exactech, TPG Capital, LP altered Exactech's management structure. Exactech operated under TPG Capital's "customary management agreement." (Compl. ¶ 126.)[5] Three of the nine seats on Exactech's Board were filled by TPG employees, and TPG employees served in three key officer roles, including CEO, CFO, and Senior Vice President of Business Development. (*Id.* ¶¶ 60-65, 154-55.)

---

[2] This insurance policy covers products liability claims, with a limit of $10 million and a self-insured retention of $250,000 per claim. (*See* Cert. of Liability Ins. (Dkt. 376-16).)

[3] Between the initial announcement of the plan for a merger and the final amendment to the closing transaction statement, Exactech's listed parent corporation was converted from Osteon Holdings, LP to Osteon Holdings, Inc. (*Id.* ¶¶ 115-16.)

[4] For simplicity, this Order refers to the merger which resulted in Exactech becoming an affiliate of TPG Capital, LP as a purchase. (*See* Mot. to Dismiss at 24.)

[5] Plaintiffs emphasize that the "customary management agreement" does not require unanimous consent (*see id.*), though they do not dispute that this management agreement still requires majority approval for Board decisions. (*See* Mot. to Dismiss at 18.)

Plaintiffs in these consolidated proceedings bring tort claims based on injuries that occurred after implanting artificial hip, knee, or ankle replacements with Exactech's allegedly defective orthopedic devices.[6] In their Complaint, Plaintiffs seek to hold Exactech and the TPG Defendants liable for their personal injuries. [7] (Compl. ¶¶ 634-790.) Plaintiffs argued that TPG Defendants were liable based on general concepts of successor liability and piercing the corporate veil. (*Id.* at nn. 11-21.) TPG Defendants move to dismiss Plaintiffs' claims against them for failure to state a claim of indirect liability based on a theory of piercing the corporate veil. (*See generally* Mot. to Dismiss.)

## II.  LEGAL STANDARD

"In deciding a motion to dismiss, the court must accept all allegations in the complaint as true and draw all inferences in the non-moving party's favor." *McGrath v. Bayer HealthCare Pharms. Inc.*, 393 F. Supp. 3d 161, 166 (E.D.N.Y. 2019).[8] Once the court has done so, the question is whether the complaint "contain[s]

---

[6] The Master Complaint includes allegations that are common to all plaintiffs, but it does not itself consolidate the distinct cases. (*See* Compl. at 1-2.) Instead, it is a tool for administrative efficiency; each individual plaintiff incorporates the Master Complaint in his or her Short-Form Complaint with the specific factual allegations that apply to the individual's case. *See id.; see also Gelboim v. Bank of Am. Corp.*, 574 U.S. 405, 413 & n.3 (2015). References to the Master Complaint are therefore a shorthand for the more than 1,400 Short-Form Complaints in individual cases that are being coordinated before this court. (*See* March 4, 2024 Joint Status Report (Dkt. 559) at 1.)

[7] Plaintiffs only name TPG, Inc. and certain of its non-Exactech subsidiaries as defendants for injuries that that stemmed from the implanted device on or after February 14, 2018, after Exactech's merger with Osteon Merger Sub. (*See* Short-Form Complaint (Dkts. 376-17, 175) at 3; Pr. & Proc. Order No. 4 ("Direct Filing Order") (Dkt. 194) ¶ B.)

[8] When quoting cases, and unless otherwise noted, all citations and quotation marks are omitted, and all alterations are adopted.

sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Although "detailed factual allegations" are not required, "[a] pleading that offers labels or conclusions or a formulaic recitation of the elements of a cause of action will not do." *Id.* Dismissal for failure to state a claim is appropriate if it is clear from the face of the complaint that a claim is barred as a matter of law. *Biocad JSC v. F. Hoffman-La Roche*, 942 F.3d 88, 93 (2d Cir. 2019).

## III. DISCUSSION

TPG Defendants move for dismissal on the grounds that Plaintiffs fail to sufficiently plead facts that warrant veil-piercing to hold a corporate parent liable for the conduct of its subsidiary. (*See generally* Mot. to Dismiss.) Plaintiffs respond that this motion is premature because the choice of law questions are fact-intensive and should be resolved after discovery is complete, and that their veil-piercing claims are well pled. (*See generally* Pl. Opp.)[9] The court first addresses why the choice of law inquiry does not make

---

[9] Plaintiffs also sought to hold TPG Defendants liable based on a theory of successor liability. Delaware law generally protects successor corporations from liability, with limited exceptions for: "(1) the buyer's assumption of liability; (2) de facto merger or consolidation; (3) mere continuation of the predecessor under a different name; or (4) fraud." *Magnolia's at Bethany, LLC v. Artesian Consulting Engineers, Inc.*, 2011 WL 4826106, at *2 (Del. Super. Ct. Sept. 19, 2011). Because TPG Capital, LP changed to TPG, Inc., if Plaintiffs succeed in piercing the corporate veil with TPG Capital, LP, they argue that TPG, Inc. should be liable under a theory of successor liability. Because Plaintiffs fail to sufficiently allege that justice requires disregarding corporate formalities to pierce the corporate veil such that TPG Capital, LP is liable, the court need not reach their successor liability claim.

this motion premature and then proceeds to the veil-piercing claims.

## A. Choice of Law

A federal court hearing a case in its diversity jurisdiction applies state substantive law. *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). This includes a state's choice of law rule—the "accident of diversity" jurisdiction should not change which law applies. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941); *see also Liberty Synergistics Inc. v. Microflo Ltd.*, 718 F.3d 138, 151-52 (2d Cir. 2013). The federal court applies the body of substantive law, choice of law included, that the state court across the street would apply.

*Which* state law a federal court should apply, however, depends in part on how the case arrived in the federal court. When a case is filed directly, the federal court applies the choice of law rules of the state in which the court sits. *Klaxon,* 313 U.S. at 496. But when cases are transferred from another federal court for consolidated proceedings under 28 U.S.C § 1407, a different logic applies. Transfers under § 1407 are made for judicial convenience and efficiency and should not change the substantive law that the parties face. *See In re Uber Techs., Inc., Passenger Sexual Assault Litig.*, No. MDL 3084, 2024 WL 41889, at *2 (J.P.M.L. Jan. 4, 2024). The transferee or multi-district litigation ("MDL") court therefore applies the choice of law rules of the transferor court in which the case was initially filed. *Van Dusen v. Barrack*, 376 U.S. 612, 638 (1964) (addressing choice of law under 28 U.S.C § 1404(a)); *Menowitz v. Brown*, 991 F.2d 36, 40 (2d Cir. 1993) (applying *Van Dusen* to transfers under § 1407). In an MDL in which pretrial proceedings are consolidated before one court, each case retains its individual nature, and so the court must individually apply the law that would apply as though the case were not transferred. *See Gelboim*, 574 U.S. at 413 & n.3; *In*

*re Gen. Motors LLC Ignition Switch Litig.*, No. 14-md-2543 (JMF), 2017 WL 3382071, at *8-9 (S.D.N.Y. Aug. 3, 2017).

In this case, there is a further complication: in the court's Direct Filing Order, the parties stipulated that any cases in which TPG, Inc. and its non-Exactech subsidiaries were named as defendants would be directly filed in the MDL. (*See* Direct Filing Order ¶ A.) When plaintiffs file directly in an MDL court pursuant to a court order, MDL courts follow the choice of law rules of the state of the federal court in which the plaintiffs would have filed had proceedings not been consolidated. *See, e.g., In re Yasmin & Yaz (Drospirenone) Mktg., Sales Pracs. & Prod. Liab. Litig.*, No. 09-md-02100 (DRH), 2011 WL 1375011, at *5-6 (S.D. Ill. Apr. 12, 2011).

Following the rules for determining choice of law rules as articulated in *Menowitz* (for transferred cases) and *Yasmin & Yaz* (for directly filed cases), the court is left to apply the choice of law rules of eighteen states.[10] Plaintiffs seek to hold TPG Defendants liable for Exactech's alleged tortious conduct. (Compl. at nn.

---

[10] In their Motion to Dismiss, TPG Defendants identified individual cases from 18 states. (Mot to Dismiss at 7.) In their reply, TPG Defendants identified an error and added Pennsylvania to the choice of law analysis. (*See* TPG Reply (Dkt. 376-10) at n.11.) Further, in between filing their motion on June 9, 2023 and filing their reply on July 28, 2023, plaintiffs filed cases from two new states (Missouri and Wyoming) against TPG Defendants, and a plaintiff from one state (Georgia) dismissed his claims, for a total of 20 states. (*See* Def. Rev. App'x A. (Dkt. 376-19) at 1, 3-4 & n.1.) Because Plaintiffs did not have an opportunity to brief the choice of law rules for Missouri and Wyoming, (*see* Pl. Prop. Sur-Reply (Dkt. 382-1) at ECF 2), the court reserves judgment on cases in which the original district was Missouri or Wyoming. Additionally, the sole plaintiff that had originally filed in the Northern District of Georgia, Lawrence Berger, dismissed his claims against TPG Defendants. (*See* Def. Rev. App'x A at 4; No. 22-cv-6449, Dkt. 33.) The court therefore does not make any decision about Georgia's choice of law rule at this time.

11-21.) Because Osteon Holdings, an affiliate of TPG, Inc., is Exactech's parent company and majority shareholder, (Compl. ¶¶ 35-38), Plaintiffs' allegations first must warrant "piercing the corporate veil" to hold Osteon Holdings liable for Exactech's conduct before ultimately holding the other TPG Defendants indirectly liable.[11] To determine whether Osteon Holdings can be held liable as Exactech's parent company, the court looks to the transferor court state's choice of law rule to assess which state's law governs veil-piercing claims in which corporate shareholders can be held liable for the corporation's conduct.

Plaintiffs argue that this choice of law analysis is fact-intensive and so TPG Defendants' motion to dismiss is premature. (*See* Pl. Opp. at 1.) Indeed, to argue this motion, TPG Defendants "were required to make assumptions to determine many plaintiffs' transferring/original forums." (Pl. Opp. at 9.) But TPG Defendants resorted to making assumptions about certain plaintiffs' respective transferor district because Plaintiffs failed to comply with the court's Order that "[a]ny Plaintiff who files a complaint directly in this Court pursuant to this Direct Filing order shall designate in the Master Short Form Complaint the federal district in which the complaint should be deemed to have otherwise been originally filed absent this Direct Filing Order." (*See* Am. Pr. & Proc. Order No. 2 (Dkt. 74) at 2.) The "heavily fact intensive"

Accordingly, the court addresses individual plaintiffs' cases against TPG Defendants that were originally filed or would have been filed in 18 states: Alabama, Arkansas, California, Colorado, Connecticut, Florida, Kentucky, Louisiana, Maine, New Jersey, New York, North Carolina, Ohio, Pennsylvania, South Carolina, Tennessee, Texas, and Virginia. (*See* Def. Rev. App'x B (Dkt. 376-20).)

[11] Plaintiffs also seek to hold TPG, Inc. and its chain of subsidiaries liable for the conduct of Exactech. Because Plaintiffs fail to allege that Osteon Holdings should be held liable for Exactech's liabilities, *see infra* III.B., the court does not reach the question of whether Osteon Holdings' shareholder—a TPG, Inc. affiliated fund—should be liable for Osteon Holdings' conduct. (*See* Compl. ¶¶ 38-39.)

inquiry of where Plaintiffs would have filed does not require plaintiff-specific discovery (Pl. Opp. at 8); it requires Plaintiffs to cure any still deficient Short Form Complaints. In this Order, the court decides TPG Defendants' motion to dismiss for all cases properly filed against TPG Defendants as of June 9, 2023, and will address cases with currently deficient Short Form Complaints, along with newly filed cases, in a future order.

Despite the potential complication that deciding the choice of law rules for eighteen states creates for judicial efficiency, this inquiry is a necessary consequence of a federal judicial system with courts of overlapping jurisdiction. *In re Gen. Motors*, 2017 WL 3382071, at *8-9. As the Judicial Panel on Multidistrict Litigation has noted, "it is within the very nature of coordinated or consolidated pretrial proceedings in multidistrict litigation for the transferee judge to be called upon to apply the law of more than one state." *In re Uber*, 2024 WL 41889, at *2 (quoting *In re CVS Caremark Corp. Wage & Hour Emp. Pracs. Litig.*, 684 F. Supp. 2d 1377, 1378 (J.P.M.L. 2010)). If the application of multiple states' laws overwhelms the benefits of consolidated action, the MDL court can decline to conduct such a case-by-case assessment. *See In re Paraquat Prod. Liab. Litig.*, No. 21-md-3004, 2023 WL 3948249, at *2 (S.D. Ill. June 12, 2023). And if the transferee judge determines that consolidated proceedings are no longer beneficial to judicial efficiency, "he or she may suggest to the Panel that we remand those actions to their transferor courts." *In re Uber*, 2024 WL 41889, at *2 (citing JPML Panel Rules 10.1-10.2); *see also* 28 U.S.C. § 1407 ("Each action so transferred shall be remanded by the panel at *or before* the conclusion of such pretrial proceedings") (emphasis added).

Following the Judicial Panel on Multidistrict Litigation's guidance, the court determines that deciding TPG Defendants' motion to dismiss, its eighteen-state choice of law inquiry included, is a fair and efficient way to advance this litigation. While choice of

law inquiries are often fact specific and not appropriate for reso-
lution at the pleading stage, *see In re Samsung DLP Television
Class Action Litig.*, No. 07-cv-2141, 2009 WL 3584352, at *3
(D.N.J. Oct. 27, 2009), that is not the case when considering the
TPG Defendants' motion for two reasons. First, as discussed be-
low, the majority of states follow the "internal affairs" doctrine
and look to the law of the state of incorporation for questions of
corporate governance, including shareholder liability. *See, e.g.*, 9
Fletcher Cyc. Corp. § 4223.50 ("The internal affairs doctrine pro-
vides that internal matters of corporate governance are governed
by the law of the state of incorporation, except in the unusual
case where application of the law of another state is required due
to an overriding interest of that other state in the issue to be de-
cided"); Restatement (Second) of Conflicts § 307 ("The local law
of the state of incorporation will be applied to determine the ex-
istence and extent of a shareholder's liability to the corporation
for assessments or contributions and to its creditors for corporate
debts."). Determining the proper state's law to apply to plaintiffs'
indirect liability claims involves no factual inquiry beyond estab-
lishing in which district the plaintiff originally filed (or in which
district the plaintiff would have filed if not for the Direct Filing
Order). And second, based on the allegations in the Complaint,
Plaintiffs are unable to demonstrate that veil-piercing is appro-
priate under the law of any state that they argue should apply.

The court's analysis is further aided by the fact that the
parties are largely in agreement about which state's law should
apply. TPG Defendants argue that all of the relevant states except
South Carolina look to the state of incorporation and would ap-
ply Florida law. (Mot. to Dismiss at 7-8.) [12] TPG Defendants

---

[12] TPG Defendants also argue that Delaware law applies because the Os-
teon entities and TPG, Inc. are Delaware corporations. (*Id.* at 8.) Because
Plaintiffs must first pierce Exactech's veil before piercing any Delaware en-
tity's corporate veil, the court starts (and as detailed below, ends) with
Florida law.

concede that South Carolina's choice of law rule points to South Carolina law. (*Id.* at n.7.) Plaintiffs largely agree, disputing only TPG Defendant's characterization of Tennessee's choice of law rule as pointing to Florida law (as the state of incorporation) rather than to Tennessee law. (*See* Pl. Opp. at 11-12.) In considering each relevant state's choice of law rules, the court ultimately finds that Florida law applies to each plaintiff's indirect liability claims.

    1.   "Internal Affairs" States

A majority of relevant states follow the "internal affairs" doctrine and apply the substantive law of the state of incorporation for matters of internal corporate governance, such as piercing the corporate veil and holding parent corporations liable. In Connecticut, Kentucky, Louisiana, Pennsylvania, Texas, and Virginia, the respective states' choice of law rule points to the state of incorporation for veil-piercing claims. *See, e.g., Haina Inv. Co. Ltd. v. InterEnergy Grp. Ltd.*, 2021 WL 4481204, at *5 (Conn. Super. Ct. Sept. 8, 2021); *Howell Contractors, Inc. v. Berling*, 383 S.W.3d 465, 467 (Ky. Ct. App. 2012); *Eddie Tourelle's Northpark Hyundai, LLC v. Hyundai Motor Am. Corp.*, No. 18-cv-11757, 2019 WL 6701305, at *5 (E.D. La. Dec. 9, 2019); *Milton Roy, LLC v. Ne. Pump & Instrument, Inc.*, No. 17-cv-5830, 2019 WL 2469795, at *5 n.9 (E.D. Pa. June 13, 2019); *Cali-Curl, Inc. v. Marianna Indus., Inc.*, No. 23-cv-00320, 2023 WL 6452379, at *5 (N.D. Tex. Oct. 3, 2023); *McCarthy v. Giron*, No. 13-cv-01559, 2014 WL 2696660, at *11 (E.D. Va. June 6, 2014).

In other states—Alabama, California, Florida, New Jersey, and Ohio—courts have applied the law of the state of incorporation for matters of internal corporate governance, even if not directly addressing veil-piercing claims. *See, e.g., Scrushy v. Tucker*, 70 So. 3d 289, 298 (Ala. 2011); *Wong v. Restoration Robotics, Inc.*, 293 Cal. Rptr. 3d 226, 247 (Cal. App. 2022); *Chatlos Found., Inc. v.*

*D'Arata*, 882 So. 2d 1021, 1023 (Fla. Dist. Ct. App. 2004); *Brotherton v. Celotex Corp.*, 202 N.J. Super. 148, 154 n. 1 (N.J. Super. Ct. Law Div. 1985); *Heine v. Streamline Foods Inc.*, 805 F. Supp. 2d 383, 389 (N.D. Ohio 2011).

In Maine, Colorado, Arkansas, and North Carolina, it appears that the respective state's courts have not conclusively determined a choice of law rule for veil piercing claims. However, courts in Maine and Colorado have applied the Restatement (Second) of Conflicts in different contexts, and the court presumes that they would do so here. *See Ashmore v. Ne. Petroleum Div. of Cargill, Inc.*, 843 F. Supp. 759, 772 (D. Me. 1994) ("The State of Maine generally follows the *Restatement (Second) of Conflicts in* determining choice-of-law issues."); *Jones v. Marquis Properties, LLC*, 212 F. Supp. 3d 1010, 1020-21 (D. Colo. 2016) ("Colorado courts generally follow the choice of law principles set forth in the Restatement (Second) of Conflicts of Laws."). The Restatement (Second) of Conflicts applies the local law of the state of incorporation to determine the existence and extent of shareholder liability. *See* Restatement (Second) of Conflict of Laws § 307. Therefore, the court predicts that the choice of law rules for Maine and Colorado would point towards the state of incorporation.

In Arkansas and North Carolina, the state's courts have not addressed the relevant choice of law question. But the court is persuaded by the analysis of the federal district courts that sit in the respective states that both would follow the majority rule and apply the law of Florida to Plaintiffs' veil-piercing claims here. *See SMD Software, Inc. v. EMove, Inc.*, No. 08-cv-403, 2013 WL 12167730, at *8 (E.D.N.C. Apr. 30, 2013) ("Federal courts have concluded that the North Carolina Supreme Court would likely apply the law of the state of incorporation of the entity whose veil a plaintiff is seeking to pierce should a choice of law question arise") (collecting cases)); *Container Life Cycle Mgmt. LLC v.*

*Safety Mgmt. Servs. Co.*, No. 6:20-cv-06001, 2020 WL 2843224, at *4-5 (W.D. Ark. June 1, 2020) (predicting that "Arkansas Supreme Court would likely apply the law of the state of incorporation in determining whether the corporate veil may be pierced" after analyzing Arkansas statutes and other states laws). Because the parties do not dispute that these states would follow the law of the state of incorporation for veil-piercing, (*see* Pl. Opp. at 11-12.)—and there is no indication from a review of the caselaw to the contrary—the court will apply the law of the state of incorporation.

### 2. New York

In New York, the Court of Appeals has "reject[ed] any automatic application of the so-called 'internal affairs' choice-of-law rule." *Greenspun v. Lindley*, 330 N.E.2d 79, 81 (N.Y. 1976). Instead, the internal affairs doctrine creates a rebuttable "presumption in favor of applying the law of the state of incorporation." *See In re MF Glob. Holdings Ltd. Inv. Litig.*, 998 F. Supp. 2d 157, 179 (S.D.N.Y. 2014). New York courts "take into account whether the corporate wrongdoer had contacts with its place of incorporation, and the nature of the contacts, and the location of the transactions of which the plaintiff complains." *UBS Sec. LLC v. Highland Cap. Mgmt., L.P.*, 924 N.Y.S.2d 312, 2011 WL 781481, at *3 (Sup. Ct. 2011). In the present case, Exactech is a Florida corporation with its principal place of business in Gainesville, Florida. Any control that TPG exerted over Exactech's Board of Directors occurred in Florida. The state of incorporation thus has a substantial relationship to the alleged wrongdoing and has an interest in regulating the liability of shareholders for a Florida corporation that does business in the state. Plaintiffs are therefore unable to rebut the presumption under New York's choice of law rule that the state of incorporation applies to Plaintiffs' veil-piercing claim.

14

3.   South Carolina

South Carolina's application of the internal affairs doctrine is similarly flexible. In *Pertuis v. Front Roe Restaurants, Inc.*, the South Carolina Supreme Court noted that "our Legislature has made clear that this state is not authorize[d] to regulate the organization or internal affairs of a foreign corporation." 817 S.E.2d 273, 278 (S.C. 2018). But the court created an exception for veil-piercing claims which involve an "assessment of whether [the relevant entities] actually operate as a single business enterprise, and thus should be treated as a single entity." *Id.* In *Pertuis*, the court concluded that South Carolina law would apply for determining whether the three corporations at issue—two of which were foreign—were actually a single enterprise. *Id.*

Contrary to Plaintiffs' contention (and TPG Defendants' apparent concession), however, *Pertuis* does not support application of South Carolina law here. (*See* Pl. Opp. at 12 & n.6; Mot. to Dismiss at n.7.) In *Pertuis*, the court applied South Carolina law in part because one of the sister corporations was incorporated in South Carolina, a minority shareholder was a South Carolina resident, and much of the relevant conduct at issue occurred in South Carolina. *Pertuis*, 817 S.E.2d at 278. Plaintiffs in this case point to no similar connections or activities that demonstrate a state interest that would warrant applying South Carolina law to the internal affairs of a foreign corporation. That South Carolina does not reflexively apply South Carolina state law to veil piercing claims is further supported by the Supreme Court of South Carolina finding that for matters not related to the single business enterprise theory, "the internal affairs doctrine precludes consideration of any remaining issues as to the [foreign] corporations." *Id.* at 281-282. The court therefore determines that South Carolina's choice of law rule applies the internal affairs doctrine and points to the state of incorporation for the veil piercing claims.

15

#### 4. Tennessee

The parties contest Tennessee's choice of law rule. Plaintiffs contend that Tennessee's choice of law rule defaults to Tennessee law. (*See* Pl. Opp. at 12 (citing *Church Joint Venture v. Blasingame*, No. 12-cv-2999, 2016 WL 3248044, at *5 (W.D. Tenn. Jan. 13, 2016)).) *See also Oceanics Schools, Inc. v. Barbour*, 112 S.W.3d 135 (Tenn. Ct. App. 2003) (applying Tennessee law to veil piercing claims). TPG Defendants point to cases stating otherwise. (*See* Def. Rev. App'x A at 4 (citing *United States ex rel. Fry v. Guidant Corp.*, 2008 WL 11510789, at *2 (M.D. Tenn. Aug. 27, 2008)).) *See also Hicks ex rel. Union Pac. Corp. v. Lewis*, 148 S.W.3d 80, 84 (Tenn. Ct. App. 2003) ("Tennessee has long adhered to the 'internal affairs' doctrine"); *Layne Christensen Co. v. City of Franklin, Tennessee*, 449 F. Supp. 3d 748, 756 (M.D. Tenn. 2020) ("Tennessee applies the 'internal affairs' doctrine, applying the law of the state of incorporation to determine whether to pierce the corporate veil.") (citing *Lewis*, 148 S.W.3d 80).

There appears to be a split between Tennessee's intermediate courts about the choice of law rule for veil-piercing claims. *Oceanics Schools* and its progeny look to Tennessee law, while *Lewis* looks to the state of incorporation. However, in reviewing the underlying analysis in both cases, the court finds it possible to reconcile the two and determines that Tennessee's choice of law rules also point to the application of Florida law in its veil-piercing analysis.

Plaintiffs rely on *Church Joint Venture* to stand for the proposition that "Tennessee applies its own law to determine whether to pierce the corporate veil regardless of the state of incorporation of a corporation." *Church Joint Venture*, 2016 WL 3248044, at *5 (W.D. Tenn. Jan. 13, 2016). *Church Joint Venture* derives Tennessee's rule against piercing the veil from the holdings of *Boles v. Nat'l Dev. Co.*, 175 S.W.3d 226 (Tenn. Ct. App. 2005) and *Oceanics Schools*. In *Oceanics Schools*, the court, without discussing

16

choice of law rules or Tennessee's general adherence to the internal affairs doctrine, applied Tennessee law to pierce the veil to enforce a judgment. *Id.* It did not apply Panamanian law, even though Panama was the state of incorporation. *Id.*; *see also Boles*, 175 S.W.3d at 237 (citing *Oceanics Schools* to enforce a Tennessee judgment against a foreign corporation and similarly applying Tennessee law).

This holding is in tension with a separate Tennessee court of appeals decision in *Lewis*, 148 S.W.3d 80. In *Lewis*, the court, while conducting a choice of law analysis, noted that Tennessee has long followed the internal affairs doctrine. *Id.* at 84 (citing *Bayberry Assocs. v. Jones*, 1988 WL 137181, at *4 (Tenn. Ct. App. Nov. 9, 1988)). Not only did this requirement come from case law—Tennessee's General Assembly recognized that Tennessee's corporation statutes "do not authorize this state to regulate the organizational or internal affairs of a foreign corporation authorized to transact business in this state." *Id.* at 84-85 (citing Tenn. Code Ann. § 48-25-105(c)). And, of particular relevance for this current inquiry, the *Lewis* court acknowledged that under the Restatement (Second) of Conflicts, Tennessee courts do not always so rigidly apply the internal affairs doctrine and instead apply the "significant relationship test." *Id.* at 86.

Notably, *Boles*, decided in 2005, did not cite to or acknowledge the line of cases that apply the internal affairs doctrine. But the outcome is consistent with an application of the "more significant relation" test outlined in the Second Restatement. In *Boles*, a foreign corporation held a tract of Tennessee real property and fraudulently induced buyers into developing the land. 175 S.W.3d at 231. In *Church Joint Venture*, the court applied Tennessee law to Tennessee residents of a trust that incorporated Tennessee law in describing the powers of the trustee. 2016 WL 3248044, at *5. And in *Oceanics Schools*, the court applied Tennessee law rather than Panamanian law for the enforcement of a

Tennessee judgment. 112 S.W.3d at 146. In each of these cases, Tennessee had a more significant relationship to the facts of the dispute than did the state of incorporation. After analyzing the case law, this court believes that Tennessee's choice of law rule follows a variation of the Second Restatement, in which the presumption that the internal affairs doctrine applies can be overcome if another state has a more significant relationship to the matter. *See* Restatement (Second) of Conflict of Laws §§ 6, 307. *See also Hataway v. McKinley*, 830 S.W.2d 53, 59 (Tenn. 1992) (reviewing favorably the Restatement (Second) of Conflicts).

Applying the Second Restatement to the facts of the present case, Tennessee does not have a more significant relationship to the corporate governance of a Florida corporation that primarily operates in Florida. Instead, the Restatement § 6 factors—justified expectations, policies of corporations law, certainty, predictability, and uniformity—all point towards applying Florida law. And under the "significant relationship test," the state of incorporation has a "unique interest" in regulating the internal corporate governance structure. *Lewis*, 148 S.W.3d at 86. The court finds the same to be true here. For cases filed in Tennessee, like the 16 other states analyzed above, the court applies Florida law for claims seeking to hold TPG Defendants indirectly liable.

### B.   Piercing the Corporate Veil

To pierce the corporate veil and hold TPG Defendants liable for Exactech's conduct under Florida law, Plaintiffs must establish: "(1) that the person dominated and controlled the corporation; (2) the corporate form was used fraudulently or for an improper purpose; and (3) the fraudulent or improper use of the corporate form caused injury to the plaintiff." *Est. of Jackson v. Schron*, No. 16-cv-22, 2016 WL 4718145, at *8 (M.D. Fla. Sept. 8, 2016). Plaintiffs' Complaint fails to plead each of these three elements.

1.   Domination and Control

To determine whether a shareholder dominated or controlled a corporation, Plaintiffs must allege that "shareholders were in fact alter egos of the corporation." *Gasparini v. Pordomingo*, 972 So. 2d 1053, 1055 (Fla. Dist. Ct. App. 2008). Domination requires more than complete ownership and financial control; domination also requires control over "policy and business practices in respect to the transaction attacked so that the corporate entity as to this transaction had at the time no separate mind, will or existence of its own." *In re Hillsborough Holdings Corp.*, 176 B.R. 223, 254 (M.D. Fla. 1994). In assessing domination, the court must "consider the cumulative effect" of the different instances of control and decide based on the totality of the circumstances. *Id.* Florida courts rely on a "laundry list of factors" to determine control that focus on financial dependency, shared operations, and corporate formalities. *Damian v. Yellow Brick Cap. Advisers (UK) Ltd.*, No. 19-cv-21538, 2019 WL 5887360, at *8 (S.D. Fla. Nov. 12, 2019).[13]

Plaintiffs allege that TPG, Inc., as the sole owner of Exactech through its subsidiaries, including Osteon Holdings, Inc., inserted board members and officers in the executive suite to direct Exactech to not issue a recall of its polyethylene implants.

---

[13] The full list of factors is: "(1) the parent and the subsidiary have common stock ownership; (2) the parent and the subsidiary have common directors or officers; (3) the parent and the subsidiary have common business departments; (4) the parent and the subsidiary file consolidated financial statements and tax returns; (5) the parent finances the subsidiary; (6) the parent caused the incorporation of the subsidiary; (7) the subsidiary operates with grossly inadequate capital; (8) the parent pays the salaries and other expenses of the subsidiary; (9) the subsidiary receives no business except that given to it by the parent; (10) the parent uses the subsidiary's property as its own; (11) the daily operations of the two corporations are not kept separate; and (12) the subsidiary does not observe the basic corporate formalities, such as keeping separate books and records and holding shareholder and board meetings." *Id.*

Specifically, after Exactech's merger with a TPG, Inc. subsidiary, TPG took three board seats on the nine-member board and filled those seats with three TPG employees—a TPG Principal, the Head of Operations of TPG, and the President and Co-Managing Partner of TPG. (*See* Compl. ¶¶ 60-65.) Three TPG advisors also took over officer positions in Exactech after the merger: Jeffrey Binder as executive Chairman in 2018 and Chief Executive Officer in 2022, Daniel Hann as Senior Vice President of Business Development in 2019, and Kerem Bolukbasi as Chief Financial Officer and Treasurer in 2020. (*Id.* ¶¶ 61-62, 146-48.)

Read generously, Plaintiffs satisfy two of the twelve *Yellow Brick* factors, common stock ownership and common directors or officers, because Exactech is a wholly owned subsidiary of TPG Defendants and TPG employees serve as directors and officers of Exactech.[14] Taken together, TPG plausibly had a large influence in Exactech's business strategy, including surrounding the decision to recall its products. But without more, that is not enough:

---

[14] Plaintiffs contend that Exactech ceded control generally over litigation strategy and settlement authority to TPG Defendants as part of the merger agreement, which could satisfy the eleventh *Yellow Brick* factor about common daily operations. (*See* Pl. Opp. at 18.) However, the relevant clause of the merger agreement reads as follows: "The Company shall give Parent the opportunity to reasonably participate in the defense or settlement of any shareholder litigation against the Company and/or its directors, officers or significant shareholders relating to the Merger and the other transactions contemplated by this Agreement." (Agreement and Plan of Merger (Dkt. 376-6) at ECF 60.)

Read plainly, the agreement to include TPG Defendants in litigation strategy related only to challenges to the merger. There is no indication that this products liability litigation is one of "the other transactions contemplated by this Agreement." *Id.* And contrary to Plaintiffs assertion, a contract to share liabilities arising out of a particular transaction does not rise to the level of "blurring of corporate lines" that is necessary to allege domination. *Tropical Paradise Resorts, LLC v. JBSHBM, LLC*, 343 F.R.D. 443, 450 (S.D. Fla. 2023). (*See also* Mot. to Dismiss at 2 ("There is also no dispute that Exactech and TPG maintain corporate formalities").)

Plaintiffs allege that TPG Defendants had three of the nine board seats, (*see* Compl. ¶¶ 126, 155), but they do not allege that Board decisions could be made with a minority of board seats, as would be required to allege complete control. (*See* Mot. to Dismiss at 18.) At least some of the non-TPG board members had to have been persuaded by TPG's board members' alleged strategy to delay the recall of defective products. Plaintiffs do not allege that TPG coerced, pressured the board, or otherwise disregarded corporate formalities to effectively control the board with a minority of the board seats.

Plaintiffs also allege that TPG Defendants directed Exactech to continue selling its devices despite knowing about significant product defects that would harm patients. (*See* Compl. ¶¶ 157-68.) But this does not create a plausible inference that Exactech's decision to not issue a voluntary recall was a result of TPG Defendants' complete control over the corporation. Exactech also knew that its polyethylene products suffered premature wear since 2008, and yet it still continued to sell the product to its customers' detriment until 2018. (*See* Compl. ¶¶ 253-69, 493-94.) Had Exactech changed its policy after becoming a TPG, Inc. subsidiary, it may provide support for an inference that "the daily operations of the two corporations are not kept separate." *Yellow Brick*, 2019 WL 5887360, at *8. But based on the allegations in the Complaint, TPG Defendants used their domination to continue Exactech's same policy of delaying a necessary voluntary recall. Plaintiffs' allegations that TPG Defendants dominated and controlled Exactech are not plausible and alone are grounds for dismissal under Florida law.

2. Improper Purpose and Injury

Plaintiffs also fail to allege that TPG Defendants improperly used Exactech's corporate form. Improper use of the corporate form must be deliberate; negligent or reckless conduct is not enough. *See Robertson-Ceco Corp. v. Cornelius*, No. 03-cv-475, 2007 WL

1020326, at \*7 (N.D. Fla. Mar. 30, 2007). "The possibility that a corporation's tort liabilities will exceed its assets is inherent in the concept of limited liability and is the principal if not sole attraction of the corporate form; veil piercing is not justified whenever this possibility materializes." *Resol. Tr. Corp. v. Latham & Watkins*, 909 F. Supp. 923, 932 (S.D.N.Y. 1995) (citing *Dania Jai-Alai Palace, Inc. v. Sykes*, 450 So. 2d 1114, 1120 (Fla. 1984)). "Absent proof of intentionally fraudulent conduct, courts simply do not pierce the corporate veil under Florida law." *Latham & Watkins*, 909 F. Supp. at 931.

Plaintiffs' Complaint fails to state how TPG Defendants deliberately used the corporate form for an improper purpose. Even if Exactech delayed its voluntary recall of its defective products at TPG Defendants' direction, as Plaintiffs allege (*see* Pl. Opp. at 21), that alone does not spell abuse of the corporate form. Exactech is insured for products liability, but Exactech's self-insured retention of $250,000 per claim means that the company faced, based on Plaintiffs' calculations as of the filing of the motion, up to $200 million in out-of-pocket payments before insurance provides coverage.[15] (Pl. Opp. at 20.) But tort liability alone is not an improper purpose—indeed, TPG, Inc. spent $737 million to buy Exactech, and would, based on the pleadings, lose that investment if tort liability completely wiped out Exactech's business. Limited liability from tort claims is indeed one of the very purposes for the creation of a corporation. *Latham & Watkins*, 909 F. Supp. at 932. Plaintiffs fail to connect TPG Defendants' use of the limited liability that the corporate form provides to improper conduct.

---

[15] Updating Plaintiffs' calculations with the approximately 1,500 cases that are currently pending, (*see* March 4, 2024 Joint Status Report at 1 (1,440 as of March 4, 2024)), Plaintiffs' estimate of liability would be approximately $400 million.

The case *Walton v. Tomax Corp.*, 632 So. 2d 178 (Fla. Dist. Ct. App. 1994) is instructive of what sort of conduct *is* deemed improper such that piercing the veil is warranted. In *Walton,* the relevant corporation—a construction company—could no longer pay its debts as of June 1990. *Id.* at 180. Nevertheless, until November 1990, the company operated and continued to receive deposits for construction projects that it knew it would be unable to complete. *Id.* And the company continued to disburse payments to shareholders during this time. *Id.* The *Walton* court found that piercing the veil was appropriate, not because debts exceeded assets but because shareholders were siphoning out the corporation's already inadequate funds, leaving creditors unable to recover their debts *as a result of* the shareholders' deliberate abuse of the corporate form. *Id.* at 180-81. *See also Dania Jai–Alai Palace*, 450 So.2d at 1120 (holding that piercing the veil is appropriate when "the corporate property was converted or the corporate assets depleted for the personal benefit of the individual stockholders.")

The depletion of company capital for personal benefit must be deliberate. In *Latham & Watkins,* a corporation liquidated $425 million in assets when the company's liabilities, including from tort claimants, "greatly exceeded its assets." 909. F. Supp. at 931-32. But the company did so gradually because a "decline in the real estate market" impaired the parent company's liquidity. *Id.* at 932. The liquidation was not a deliberate abuse of the corporate form to avoid liability. Under Florida law, transferring funds between a parent and subsidiary[16] is itself not problematic so

---

[16] Plaintiffs do not even allege that any transfer of funds occurred except for TPG Defendants' purchase of Exactech shares to consummate the merger. (*See* Compl. ¶ 102).

long as corporate formalities[17] are maintained. *See In re Hills-borough,* 176 B.R. at 253. (*See also* Mot. to Dismiss at 2 ("There is also no dispute that Exactech and TPG maintain corporate formalities").)

Comparing the present case with *Walton*, Plaintiffs failed to allege similar abuse of the corporate form. Plaintiffs do not allege that Exactech was insolvent or would be unable to pay the plaintiffs of these consolidated proceedings that are potential litigation creditors. They do not allege that despite this inability to pay off all liabilities, TPG Defendants directed Exactech to continue to sell defective products that would create further liabilities. And they do not allege that TPG Defendants siphoned out funds or otherwise benefited from saddling Exactech with liabilities that Exactech would not be able to pay. The threadbare allegations do not leave the court with any indication of how TPG Defendants benefit from increasing Exactech's short-term profits at the expense of increasing tort liabilities. In short, based on the Complaint, Plaintiffs fail to plead that TPG Defendants used the corporate form to create liabilities that they knew their subsidiary would not be able to repay. And because they fail to allege that TPG Defendants' improper use of the corporate form created liabilities, they fail to allege that Plaintiffs suffered an injury stemming from the abuse of the corporate form.

Because Plaintiffs did not adequately plead that TPG Defendants had requisite control over Exactech and that they used this control to abuse the privilege of corporate law's limited liability,

---

[17] Examples of corporate formalities include a "cash management system." In *Hillsborough*, a cash management system that showed consistent transfers between a parent and a subsidiary was not evidence of comingled funds; it was instead "an accurate accounting of the moneys belonging to each of its subsidiaries." *In re Hillsborough,* 176 B.R. at 252-53 (collecting cases). Therefore, even if the 2018 Agreement and Plan of Merger were indicative of comingling of funds as Plaintiffs allege, (*see* Pl. Opp. at 18), that is not enough to warrant veil-piercing under Florida law.

Plaintiffs have failed to demonstrate that piercing the corporate fail to hold TPG Defendants liable for Exactech's conduct is warranted.

## IV. CONCLUSION

For the foregoing reasons TPG Defendants' motion to dismiss is GRANTED. TPG Defendants are DISMISSED from all personal injury actions originally filed in Alabama, Arkansas, California, Colorado, Connecticut, Florida, Kentucky, Louisiana, Maine, New Jersey, New York, North Carolina, Ohio, Pennsylvania, South Carolina, Tennessee, Texas, and Virginia that named TPG, Inc. and its non-Exactech affiliates as defendants.

Plaintiffs are DIRECTED to cure any short-form complaints that currently do not have a listed original jurisdiction. Plaintiffs and TPG Defendants are DIRECTED to confer and submit to the court a list of all currently active cases against TPG Defendants by May 1, 2024. This list shall include whether the case was directly filed or was transferred pursuant to a Conditional Transfer Order, the filing and, if applicable, transfer date, and the original district where the case would have been filed or was filed before being transferred to this court. The submission shall also include a proposed briefing schedule for claims against TPG Defendants filed in states not addressed in this Order, including Missouri and Wyoming.

Finally, Plaintiffs and TPG Defendants are DIRECTED to confer and submit a joint proposal for modification of the Direct Filing Order to govern future filings.

SO ORDERED.


Dated:      Brooklyn, New York
            March 7, 2024


                                    s/Nicholas G. Garaufis
                                    NICHOLAS G. GARAUFIS
                                    United States District Judge